EXHIBIT C

# THE BAYARD FIRM

A   T   T   O   R   N   E   Y   S

222 DELAWARE AVENUE, SUITE 900
P.O. Box 25130
WILMINGTON, DE 19899
ZIP CODE FOR DELIVERIES: 19801

ꟼꟼ MERITAS LAW FIRMS WORLDWIDE

www.bayardfirm.com

302-655-5000
(FAX) 302-658-6395

WRITER'S DIRECT ACCESS

302-429-4213
bwik@bayardfirm.com

August 2, 2004

***CERTIFIED MAIL/***
***RETURN RECEIPT REQUESTED***

Internal Revenue Service Center
Cincinnati, OH 45999-0048

INTERNAL REVENUE SERVICE
RECEIVED

AUG 0 6 2004

SERVICE CENTER DIRECTOR
COVINGTON, KY
MAIL UNIT #19

    Re:    Estate of Barbara A. Bandurski

        DOD: 08/07/98

Dear Sir or Madam:

    Enclosed is Form 843, Claim for Refund and Request for Abatement, for the above referenced Estate. Also enclosed is a Form 2848, Power of Attorney and Declaration of Representative, executed by the Executor, authorizing me to execute the Form 843 on behalf of the Estate.

    **This claim for a refund is based only on a contested estate tax issue considered in a previously examined United States Estate (and Generation-Skipping Transfer) Tax Return, Form 706. The Estate does not want to appeal the issue within the IRS. Therefore, I request that the claim be immediately rejected so that a notice of claim disallowance can be sent to the Estate at which time the Estate will file a refund suit in the appropriate Court.**

    Please acknowledge receipt of this letter and its enclosures on the photocopy of this letter enclosed for that purpose, and return it to the undersigned in the envelope provided.

    Very truly yours,

Beverly J. Wik

BJW/lck/#22629-4
Enclosures
DICTATED BUT NOT READ

549263v1

THE BAYARD FIRM

Internal Revenue Service Center
August 2, 2004
Page 2

cc:    Cheryl A. Murphy, Executor (w/ enclosures)
       Mertie L. Mills, Attorney (Estate Tax) (w/ enclosures)

Certified Mail/RRR No. –7003 1010 0003 0406 0670

549263v1

Form **843**
(Rev. November 2002)
Department of the Treasury
Internal Revenue Service

## Claim for Refund and Request for Abatement

➤ See separate instructions.

OMB No. 1545-0024

*Use Form 843 only if your claim involves (a) one of the taxes shown on line 3a or (b) a refund or abatement of interest, penalties, or additions to tax on line 4a.*
*Do not use Form 843 if your claim is for—*
- *An overpayment of income taxes;*
- *A refund for nontaxable use (or sales) of fuel; or*
- *An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.*

| Name of claimant | Your SSN or ITIN |
|---|---|
| Estate of Barbara A. Bandurski | |
| Address (number, street, and room or suite no.) | Spouse's SSN or ITIN |
| c/o Beverly J. Wik, Esquire/The Bayard Firm/P.O. Box 25130 | — — ; — — ; — — — |
| City or town, state, and ZIP code | Employer identification number (EIN) |
| Wilmington, DE  19899 | — — ; — — — — — — — — |
| Name and address shown on return if different from above | Daytime telephone number |
| Cheryl A. Murphy, Executrix/5768 North DuPont Highway | |
| Smyrna, DE  19977 | (302 )659-3514 |

**1** Period. Prepare a separate Form 843 for each tax period — Claim is for
From DOD: 08/07/98 federal estate tax, not relating to
~~a tax period~~

**2** Amount to be refunded or abated
$See Attachment 1

**3a** Type of tax, penalty, or addition to tax:
☐ Employment  XX Estate  ☐ Gift  ☐ Excise (see instructions)
☐ Penalty—IRC section ➤ _____
**b** Type of return filed (see instructions):
XX 706  ☐ 709  ☐ 940  ☐ 941  ☐ 943  ☐ 945  ☐ 990-PF  ☐ 4720  ☐ Other (specify)

**4a** Request for abatement or refund of:
XX Interest as a result of IRS errors or delays.  Error based on improper value of asset by IRS
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.
**b** Dates of payment ➤  08/02/02

**5** Explanation and additional claims. Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

See Attachment No. 2

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

_____    08/02/04
Signature (Title, if applicable. Claims by corporations must be signed by an officer)    Date

_____    _____
Signature    Date

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.    Cat. No. 10180R    Form **843** (Rev. 11-2002)

ATTACHMENT 1

FORM 843, CLAIM FOR REFUND AND REQUEST FOR ABATEMENT

ESTATE OF BARBARA A. BANDURSKI

DOD 08/07/98

**Line 2**        *Amount to be refunded or abated*

As of the date this Form 843 is filed, based on the federal estate tax liability for the taxable estate of Barbara A. Bandurski (the "Decedent"), reflected on a Form 1273, Report of Estate Tax Examination Changes dated 5/10/2002 enclosed with a letter 922 (DO) (Rev. 1-79), the Estate requests a refund of at least $124,141.26, which amount was increased by interest of 17,312.27 on the Report (copy enclosed), plus an additional refund reflecting further reductions in federal estate taxes and interest thereon as a result of increases in deductions for administrative expenses (legal, accounting and additional costs) incurred to complete the administration of the Estate and resolution of this Claim for Refund.

The refund is claimed because the Examiner reported an item on the Report of Estate Tax Examination Changes on Schedule F, Item 8 at a value of $315,617, while the Estate asserts that item has a  value of less than One Dollar ($1.00) as of the Decedent's date of death on August 7, 1998.  See Attachment 2 and its Exhibit A.

Internal Revenue Service                    Department of the Treasury
Area Director

Date: JUL 0 2 2002                          Estate of:
                                            Barbara A. Bandurski
                                            Date of Death:
                                            August 7, 1998
                                            Person to Contact:
Cheryl A. Murphy                            CUSTOMER SERVICE
PERSONAL REPRESENTATIVE                     Contact Telephone Number:
5768 North DuPont Parkway                   1 (800) 829-1040
Smyrna, DE. 19977


DEAR MADAM:

    Enclosed is a copy of our examination report showing adjustments you
agreed to for the above estate. We have also enclosed the letter checked
below. If letter 628(DO) is enclosed, please provide the information it
requests.

    If you overpaid the estate tax, a refund will be sent to you, provided
you owe no other taxes. The refund will include any interest due. If you
underpaid the estate tax, we will bill you for any additional amount due,
plus interest.

    If you have any questions, please contact the person whose name and
telephone number are shown above.

    You may want to tell your attorney that you received this letter.

    Thank you for your cooperation.


                            Sincerely yours,


                            Joel Goverman
                            Joel Goverman
                            Area 4 Director, Small Business Compliance


Enclosures:
Examination Report
[ v ] Letter 627(DO)
[ ] Letter 628(DO)
  ] Envelope


P.O. Box 583, Baltimore, MD  21203          Letter 922(DO)(Rev. 1-79)

Form **1273**
(Rev.   ) (CG)

**Department of the Treasury - Internal Revenue Service**
## Report of Estate Tax Examination Changes

| Name of Decedent | Social Security Number | Date of Death |
|---|---|---|
| Barbara A. Bandurski | | 8/ 7/1998 |

Name of Person With Whom Findings Were Discussed:

Agreement Secured
[x] Yes   [ ] No

| | Shown on Return | As Corrected |
|---|---|---|
| 1. Taxable estate shown on return or as previously adjusted | | 1,931,584.00 |
| 2. Increase <decrease> in taxable estate | | 194,582.49 |
| 3. Taxable estate as corrected (line 1 plus (less) line 2) | | 2,126,166.49 |
| 4. Adjusted Taxable Gifts | 0.00 | 0.00 |
| 5. Total | 1,931,584.00 | 2,126,166.49 |
| 6. Tentative Tax | 750,012.80 | 842,621.58 |
| 7. Aggregate gift taxes payable (after Dec. 31, 1976) | 0.00 | 0.00 |
| 8. Subtract the amount on line 7 from the amount on line 6 | 750,012.80 | 842,621.58 |
| 9. Unified Credit against estate tax | 202,050.00 | 202,050.00 |
| 10. Adjustment to unified credit | 0.00 | 0.00 |
| 11. Subtract the amount on line 10 from the amount on line 9 | 202,050.00 | 202,050.00 |
| 12. Subtract the amount on line 11 from the amount on line 8 (not less than zero) | 547,962.80 | 640,571.58 |
| 13. Credit for State death taxes     108,893.32  Tentatively allowed  Submit evidence by (date) | 94,674.05 | 108,893.32 |
| 14. Subtract the amount on line 13 from the amount on line 12 | 453,288.75 | 531,678.26 |
| 15. Credit for Federal gift taxes on pre-1977 gifts | 0.00 | 0.00 |
| 16. Credit for foreign death taxes (Statutory) | 0.00 | 0.00 |
| 17. Credit for tax on prior transfers | 0.00 | 0.00 |
| 18. Credit for foreign death taxes (Special Treaty) | 0.00 | 0.00 |
| 19. Total Credits (add the amounts on lines 15, 16, 17, and 18) | 0.00 | 0.00 |
| 20. Net estate tax payable | 453,288.75 | 531,678.26 |
| 21. Generation-skipping transfer taxes (Schedule R, Part 2, line 12) | 0.00 | 0.00 |
| 22. Section 4980A - increased estate taxes (Schedule S) | 0.00 | 0.00 |
| 23. Total transfer taxes (add the amounts on lines 20, 21 and 22) | 453,288.75 | 531,678.26 |
| 24. Total transfer tax previously assessed | | 453,288.75 |
| 25. Total transfer tax - Increase <decrease> (difference between line 23 and line 24) | | 78,389.51 |
| 26. Penalty previously assessed | | 0.00 |
| 27. Penalties as corrected | | 0.00 |
| 28. Net penalties - Increase <decrease> (difference between line 26 and line 27) | | 0.00 |
| 29. Net tax and penalties payable - Increase <decrease> (add line 25 and line 28) | | 78,389.51 |

| Examiner's Signature | Area | Date |
|---|---|---|
| *Mertie L. Mills* (signature)  Mertie L. Mills | Delaware-Maryland | 5/10/2002 |

| Form **3228** (Rev. Oct. 1980) (CG) | Department of the Treasury - Internal Revenue Service<br>Adjustments to Taxable Estate | Schedule |
|---|---|---|
| Estate of<br>Barbara A. Bandurski | Social Security Number | Date of Death<br>8/ 7/1998 |

| | | | | |
|---|---|---|---|---|
| Gross estate reported on return | | | | 2,179,747.00 |
| Increase <decrease> to gross estate | | | | |
| B | Stocks and Bonds | | 49.00 | |
| D | Insurance on Decedent's Life | | 1,077.00 | |
| E | All Other Joint Interests | | 82,300.00 | |
| F | Other Miscellaneous Property | | 320,721.00 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| Net changes to gross estate | | | | 404,147.00 |
| Corrected gross estate (line 1 & line 3) | | | | 2,583,894.00 |
| Total deductions reported on return | | | 248,163.00 | |
| Increase <decrease> to deductions | | | | |
| J | Funeral & Administration Ex. | | 192,764.51 | |
| K | Debts of Decedent | | 16,800.00 | |
| | | | | |
| | | | | |
| | | | | |
| Net changes to deductions | | | 209,564.51 | |
| Corrected total deductions (line 5 + line 7) | | | | 457,727.51 |
| Corrected taxable estate (line 4 less line 8) | | | | 2,126,166.49 |

| Form **886-A**<br>(Rev. April 1968) (CG) | **EXPLANATION OF ITEMS** | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Estate of Barbara A. Bandurski | | YEAR/PERIOD ENDED<br>8/ 7/1998 |

|  | Returned | Corrected |
|---|---|---|
| **Sch. B, Stocks and Bonds** | | |
| Item 1 - 1111.60 shs. MFS Total Return | 16,191.00 | 16,240.00 |
| Total of these items | 16,191.00 | 16,240.00 |
|  |  | 16,191.00 |
| Increase to schedule | | 49.00 |

Estate determined that decedent held an additional 3.397 shares.
These items, representing the fair market value on valuation date
of securities not previously included, are added to the gross
estate pursuant to Section 2033 of the Internal Revenue Code.

Stock shares are valued at the mean between the highest and
lowest quoted selling prices on the valuation date. Section
20.2031-2 of the Federal Estate Tax Regulations.

|  | Returned | Corrected |
|---|---|---|
| **Sch. D, Insurance on Decedent's Life** | | |
| Item 2 - John Hancock Life Insurance | 0.00 | 1,077.00 |
| Total of these items | 0.00 | 1,077.00 |
|  |  | 0.00 |
| Increase to schedule | | 1,077.00 |

Evidence supports the fact that the decedent held ownership interest
in the John Hancock Mutual Life Insurance Policy #7 272 329. John
Hancock Mutual Life Insurance Company completed its conversion to a
stock company. The conversion was approved 11/30/99 and the Company
issued a check to the decedent on February 1, 2000. The transactions
by the Company indicate that the decedent was the owner of the
policy.

|  | Returned | Corrected |
|---|---|---|
| **Sch. E, All Other Joint Interests** | | |
| Item 1B - 50% Interest 2630 Marsh Road | 0.00 | 79,500.00 |
| Item 3A - 1995  Cadillac Deville | 17,750.00 | 20,550.00 |
| Total of these items | 17,750.00 | 100,050.00 |
|  |  | 17,750.00 |
| Increase to schedule | | 82,300.00 |

Item 1B is increased to fair market value as of date of death for the 50%
interest held by the decedent. Decedent held legal title to the real
property as joint tenant with a right of survivorship and had the
right to use and reside in such property for life.

| Form 886-A<br>(Rev. April 1968) (CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Estate of Barbara A. Bandurski | | YEAR/PERIOD ENDED<br>8/ 7/1998 |

Sch. E, All Other Joint Interests (Continued)

One-half of the full fair market value of property (as of the
applicable valuation date) which the decedent held as a qualified joint
interest, is included in her gross estate.  Code section
2040(a) and 2031 of the Internal Revenue Code.

Item 3A - increased to fair market value per Kelley Blue Book.

|  | Returned | Corrected |
|---|---|---|
| Sch. F, Other Miscellaneous Property | | |
| Item 2 - Jewelry | 1,890.00 | 5,230.00 |
| Item 3 - 1998 Delaware Income Tax Refund | 7,021.00 | 8,257.00 |
| Item 7 - John Hancock Proceeds | 0.00 | 528.00 |
| Item 8 - Class Action Proceeds | 0.00 | 315,617.00 |
| Total of these items | 8,911.00 | 329,632.00 |
|  |  | 8,911.00 |
| Increase to schedule |  | 320,721.00 |

Item 2 is increased to fair market value per appraisal.
Item 3 - the value of gross estate has been adjusted to reflect the
inclusion of the State income tax refund for the year 1998 to which
the decedent's estate was entitled on account of the payments made by
the decedent prior to her death.  Code section 2033.
Item 7 is the actual proceeds received by the estate.
Item 8 is the proceeds received from a class action claim that was not
included on the 706.  Decedent was a member of a class action claim
filed against Delaware Solid Waste Authority on May 21, 1998.  The
claim resulted in a settlement of the class action January 2000 with
$900,000 distributed to Walter S. Bandurski, Inc.  The amount paid
in respect of the decedent was $360,000.
May 21, 1998, class action complaint filed by Sylvester Jenifer T/A
Vernon's Home Improvements, on behalf of itself and all other similarly
situated against Delaware Solid Waste Authority seeking declaratory
and monetary relief to redress the harm resulting from enforcement of
an unambiguously protectionist and facially unconstitutional regulation
promulgated by the Delaware Solid Waste Authority that prohibits out-
of-state disposal of solid waste generated within the State of
Delaware at solid waste facilities, not operated by, on behalf of, or
under contract with DSWA.  The action brought for injunctive relief
and to recover damages for injuries suffered due to the deprivation
of plaintiff's rights, privileges or immunities as secured by the
United States Constitution.  Complaint in Paragraph 10 states the
plaintiff brings this action on its own behalf and an behalf of all
members of a Class consisting of all persons in the State of Delaware
who delivered and transported solid waste generated within the State
for disposal at solid waste facilities operated by, on behalf of, or
under contract with DSWA and paid tipping fees to DSWA during the
period May 21, 1995, until the restrictions imposed by DSWA are
abrogated.  Complaint states plaintiff does not know the exact size
of the Class since such information is in the hands of the defendant.

Complaint states tipping fees at DSWA were recently reported to be around $58.50/ton and that out-of-state facilities had the capacity to accept for disposal solid waste generated within Delaware for tipping fees considerably lower than those charged by DSWA Facilities.  Complaint states there is no valid State health, safety or welfare purpose for DSWA Regulation that prohibits out-of-State disposal of solid waste generated within the State at out-of-State non-DSWA Facilities.  Complaint states DSWA has intentionally and unconstituionally interfered with interstate commerce by eliminating competition in the solid waste disposal market.

Attorney David Staats, who filed the class action complaint, states in his October 17, 2000, letter that "Walter S. Bandurski, Inc., was not a named plaintiff in the Complaint filed May 22, 1998, but was a member of the class."  Mr. Statts further states in his letter that he did not speak with any representative of Walter S. Bandurski, Inc., until after the first complaint was filed.  Mr. Staats in his October 17, 2000, letter states that a "retainer agreement was signed by a represenative of Walter S. Bandurski, Inc. on September 28, 1998."  October 2, 1998, Walter S. Bandurski, Inc., joined the second class action.  The Federal Estate Tax was filed November 26, 1999.  Mr. Staats in his December 6, 2000, letter states that the "fair market value of an asset does not depend on whether the owner of the asset is aware that he owns it."

Representative's letter of December 13, 2000, states the claim was unknown to the decedent at the time of his death. The ownership of that inchoate claim was effectively distributed to the stockholders by Walter S. Bandurski, Inc. when Walter S. Bandurski, Inc. was liquidated and disssolved.  The claim was effectively included in the transfer to the decedent's revocable grantor trust upon the transfer of his distribution rights to that trust.

For purposes of Federal estate taxes, the value of a gross estate is determined by including the value, as of the date of death, of a decedent's interest in all property.  Internal Revenue Code Sections 2031(a), 2033.  The value of property included in the gross estate is the fair market value of the property on the date of death, defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts."  Section 20.2031-1(b), Estate Tax Regs.; United States v. Cartwright, 411 U.S. 546, 551 (1973); Estate of Watts v. Commissioner, 823 F.2d483, 485 (11th Cir. 1987_, affg. T.C. Memo. 1985-595.  The willing buyer and willing seller who are considered in the determination of fair market value are hypothetical, objective participants in a hypothetical sale of the property.  Estate of Watt v. Commissioner, supra at 486.  Valuation is to be based on facts reasonably known at the date of valuation.  Subsequent events are not considered in fixing fair market value except to the extent that they were reasonably foreseeable on the date of valuation.  Estate of Gilford v. Commissioner, 88 T.C. 38, 52 (1987).

Section 2033 provides that the value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.  As used in such sections, the term "property" encompasses all choses in action, and the fact that the decedent's claim was contingent does not preclude the inclusion of such claim in his gross estate.  United States v. Simmons, 346 F.2d 213 (5th Cir. 1965); Bank of California v. Commissioner, 133 F.2d 428 (9th Cir. 1943), affg. in part and revg. in part Estate of Barneson v. Commissioner, a Memorandum Opinon of this Court dated May 27, 1941; Estate of Curry v. Commissioner, 74 T.C. 540 (1980); Duffield v. United States, 136 F.Supp. 944 (E.D. Pa.

In Estate of Jeanne M. Houston v. Commissioner, 44 T.C.M. 284 (1982),
the Court found that the decedent's interest in a wrongful death
action that was contingent upon future recovery by her deceased
spouse's estate did not preclude inclusion of the wrongful death
action in her gross estate.  Decedent's previously deceased spouse
died in 1972 as a result of being struck by an automobile while in
Michigan.  Decedent died March 17,1974, and her executor on December
16, 1974, filed suit for her deceased spouse's wrongful death.
Action was settled prior to trial and proceeds were distributed to
deceased spouse's surviving children.  Estate did not include any
amount in the estate tax return representing the value of the
decedent's interest in the wrongful death claim arising out of husband's
death.  The court noted that "her rights of action accrued at the time
of her husband's death and continued in existence, through her estate,
beyond her own death some 14 months later."

The decedent's cause of action accrued prior to his death; and under
Section 2031, 2033 and Estate Tax Regs. section 20.2033-1, the gross
estate shall include the date of death value of all property, whether
real or personal, tangible or intangible, beneficially owned by the
decedent.  This includes the date of death values of all existing
claims and choses in action of the decedent that pass to the
estate, notwithstanding that they may be contingent and/or uncertain
as to amount.  Estate of Curry v. Commissioner, 74 T.C. 540 (1980).
The decedent at the time of his death did have a claim against Delaware
Solid Waste Authority which should have been reported on the
decedent's Federal Estate Tax Return.  The Tax Court has said that
ignorance of an asset at date of death does not determine that the
asset is valueless or should not be included as an asset of the
estate:

> Even if the executors were totally ignorant of the claim, we do
> not agree that it would for that reason be without value.  An estate
> may possess many assets, tangible and intangible, of which the
> deceased's representative or even the deceased himself may be
> unaware, and which may not become apparent until the lapse of a
> substantial period of time after death.  Such property is for that
> reason no less an asset of the estate, nor can it necessarily be said
> to be valueless at the date of death.  This is particularly true
> where, as here, the asset is one which by its nature is discoverable
> in the ordinary course of administration of the estate.  Estate of
> I. W.  Baldwin, 1959, P-H. T.C. Memo P59, 203.

In this case, the decedent's company was included in the class action
before the Federal Estate Tax Return was filed and should have been
disclosed on the Return.  "(I)gnorance of the value of an asset at
the time of a decedent's death does not justify treating the asset
as valueless, any more than ignorance of the existence of an
asset, discovered after the date of death, justifies exclusion of
the asset from the decedent's gross estate."  Simmons at 217.

The fact that the settlement of the lawsuit resulted in a payment of
$900,000 to Walter S. Bandurski, Inc., is highly indicative of the fact
that the claim had value at the time of decedent's death.

The cases hold that unsettled litigation is an asset of the estate
and is to be included in the gross estate at its estimated fair market
value at date of death, notwithstanding that it may be contingent
and/or uncertain as to amount.

To determine the proper valuation, all the facts and circumstances
surrounding the claim must be examined.  Since the value of the claim
was not fixed as of date of death, subsequent events may be used as

evidence of value. Estate of Curry v. Commissioner, supra.  The court
in the Houston case found the fair market value of the claim was
$75,000.  The claim was settled for $132,500 with net proceeds of
$48,133.31.  The court stated "(W)hile it may seem anomalous that the
amount to be included in the gross estate exceeds the actual net
recovery from the wrongul death action, the latter is not controlling
in the determination of date of death value."  Id. at 288.

In Estate of Davis v. Commissioner, 65 T.C.M. 2365 (1993), the Tax
Court addressed the issue of how to value a cause of action which
remained unsettled at the decedent's death.  In Davis, the decedent
initiated a lawsuit against Merrill Lynch for churning her account.
The Court stated that subsequent events are not considered in fixing
fair market value, except to the extent that they were reasonably
foreseeable at the date of valuation.  The court began with the
amount of the claim as if there were no contest and then discounted
the claim for 1) costs of litigation, 2) hazards of litigation, and
3) time delay in receiving the funds.  The court used only a limited
discount for the hazards of litigation because of the relative ease of
proving the churning would result only in negligible risks or hazards
of success in litigating.

The subject case is similar for the facts show that Delaware Solid Waste
Authority was guilty of charging exorbitant and uncompetitive tipping
fees and restricted the free flow of commerce amongst the States.
Further evidence of the fact that the plaintiffs had a good case is
the fact that the case was settled prior to trial with a payment of
$900,000 to Walter S. Bandurski, Inc.  Costs of litigation are
included in the settlement.  The only reduction that should be made
to the settlement proceeds is the time delay in receiving the funds.

The representative of the estate is relying primarily on a line of
cases that conclude that postdeath events may not be used in
evaluating claims or deductions against an estate, Ithaca Trust Co.
v. United States, 279 U.S. 151 (1929); Ballantine v. Tomlinson, 293
F.2d 311 (5th Cir., 1961); Propstra v. United States 680 F.2d 1248
(9th Cir., 1982); and Estate of Evelyn M. McMorris v. Commissioner,
243 F.3d 1254 (10th Cir., 2001).  Section 2053 simply
provides that such claims are deductible in determining the taxable
estate if they are legally enforceable, i.e., are as allowable by the
laws of the jurisdiction, whether within or without the United States,
in which the estate is being administered.  Treasury regulation section
20.2053-4 states the amounts that may be deducted as claims against
a decedent's estate are such only as represent personal obligations
of the decedent existing at the time of his death, whether or not
then matured, and interest thereon which had accrued at the time of
death. The Court of Appeals has acknowledged that the "law is clear
that post-death events are relevant when computing the deduction to be
taken for disputed or contingent claims."  Propstra v. United States,
supra at 1253.   The court held that section 2053 precludes the
consideration of post-death events in computing the value of certain
and enforceable claims against an estate.  This line of cases is not
applicable when valuing assets of the estate.

Unsettled litigation which is an asset of the estate is included in the
gross estate at its estimated fair market value at date of death,
notwithstanding that it may be contingent and/or uncertain as to
amount.  See IRC sections 2032 and 2033..  In contrast see Reg.
Section 20.2053-1(b)(3) which disallows a deduction from the estate
that is taken upon the basis of a vague or uncertain estimate.  The
date-of-death valuation rule applies to a deduction for a claim
against the estate under IRC section 2053-1(a)(3).  As a a result,
events which occur after the decedent's death may not be considered
in valuing that deduction.  The cases hold that in valuing assets of

a decedent, subsequent events can be used to determine fair market value particularly when valuing the fair market value of a pending lawsuit as of date of death.

Estate is relying on Welch v. Commisisoner, 6th Cir. No. 98-2007, March 2, 2000, in which the court held that potential built-in capital gains tax liability should be considered in valuing an asset. This tax in reality may never be paid; therefore, it is an estimate and not a certain event.  The estate also relied on First National Bank of Kenosha v. United States, 763 R.2d 891 (7th Cir., 1985) in which the court allowed  evidence of actual sales prices received 21 months after the date of death so long as the sale occurred within a reasonable time after death and no intervening events drastically changed the value of the property.  Settlement of the subject claim within 20 months of the filing of the lawsuit is certainly a reasonable length of time.  There were no intervening events that drastically changed the value of the asset.  The lawsuit is not a subsequent event but was ongoing as of date of death.  It was not beyond the contemplation of the parties on the relevant valuation date.

Estate is also relying on Estate of Mary B. Bull v. Commissioner, T.C. Memo 2001-92 (April 13, 2001).  The Bull case can be distinguished based on the fact that at date of death the estate had no right to insurance reimbursement and no obligation to pay to complete the decedent's residence which was destroyed by fire and was being retored at the time of her death. The court stated that the situation is unlike the situation "where a contingent legal fee was includable in an estate based on the rationale that it had been earned and a claim existed at the time of death."  In the subject case, the claim existed at date of death and is includible in the decedent's estate at its fair market value.

The estate has not presented any evidence as to the fair market value of the class action claim as of date of death of the decedent.  The class action claim is included at the present value based on a 6.800% rate which is the applicable federal rate for August 1998, see Revenue Ruling 98-36.  The present value for proceeds of $360,000 received 17 months after date of death is $315,617.

| Form 886-A<br>(Rev. April 1968) (CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|

| NAME OF TAXPAYER | YEAR/PERIOD ENDED |
|---|---|
| Estate of Barbara A. Bandurski | 8/ 7/1998 |

|  | Returned | Corrected |
|---|---|---|
| Sch. J, Funeral & Administration Ex. |  |  |
| B.1 - Executrix's Commissions | 45,315.00 | 109,472.61 |
| B.2 - Attorney fees | 35,000.00 | 135,000.00 |
| B.4 - The Bayard Firm | 625.00 | 7,600.00 |
| B.11 - Moving Personal Property | 4,868.00 | 3,417.00 |
| B.20 - Interest on the Deficiency | 0.00 | 15,976.74 |
| B.21 - Phase II Environmental Eval. | 0.00 | 6,216.16 |
| B.22 - James Dalle Pazze, Esquire | 0.00 | 890.00 |
| | -------------- | -------------- |
| Total of these items | 85,808.00 | 278,572.51 |
| | | 85,808.00 |
| | | -------------- |
| Increase to schedule | | 192,764.51 |
| | | ============== |

The amounts deductible from a decedent's gross estate as
"administration expenses" are limited to such expenses as are actually
incurred in the administration of the decedent's estate; that is, in
the collection of assets, payment of debts, and distribution of
property to the persons entitled to it.  The expenses contemplated in
the law are such only as attend the settlement of an estate and the
transfer of the property to individual beneficiaries or to a trustee.
Expenditures not essential to the proper settlement of the estate, but
incurred for the individual benefit of the heir, legatees, or
devisees, may not be taken as deductions.  Treas. Reg. 20.2053-3(a).

An adjustment has been provided to allow a deduction for Federal
interest computed to be due and owing on the Estate tax deficiency,
pursuant to the provisions of Revenue Ruling 79-252, 1979-2 C.B. 333.

This deduction is only allowable in AGREED issue cases.

Your letter of May 9, 2002, included an additional expense of a
finder's fee of $36,000 paid to Michael Bandurski for his services in
identifying and collecting the Wilmington Solid Waste Authority
settlement.  I am not allowing this expense because it is too late
to consider additional issues for the statute of limitations runs
November 8, 2002.  I have discussed this issue with the Acting Group
Manager.  Furthermore, Michael Bandurski was notified of the claim when
Walter S. Bandurski, Inc., was added to the case upon the filing of
Amended Complaint in October 1998.  The 706 was filed November 8,
1999, and the class action was not disclosed.  Expenditures not
essential to the proper settlement of the estate, but
incurred for the individual benefit of the heir, legatees, or
devisees, may not be taken as deductions.  Treas. Reg. 20.2053-3(a).

| Form 886-A<br>(Rev. April 1968)(CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR<br>EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Estate of Barbara A. Bandurski | | YEAR/PERIOD ENDED<br>8/ 7/1998 |

| | Returned | Corrected |
|---|---|---|
| **Sch. K, Debts of Decedent** | | |
| Item 38 - WSB Corp. Income Taxes | 0.00 | 16,800.00 |
| | ------------------ | ------------------ |
| Total of these items | 0.00 | 16,800.00 |
| | | 0.00 |
| | | ------------------ |
| Increase to schedule | | 16,800.00 |
| | | ================== |

Estate paid $16,800 of $42,000 settlement as former stockholder of
Walter S. Bandurski, Inc., to the U.S. Department of Justice Tax
Division for income taxes.

Estate of: BB,  DD:  8  7 1998
File Name: C:\Program Files\EST3\Bb.et3
Inter-Est Version 3.00, Release 78, (Standard Output) (#1373)
Date and time of run: Friday, May 10, 2002, 10:59 AM

## MAIN PRINTOUT SECTION

| | | |
|---|---:|---:|
| Gross Estate | | 2,583,894.00 |
| Sch. JK&L (before interrelated) | 441,750.77 | |
| Int, Federal | 15,976.74 | |
| Debts & Expenses | | 457,727.51 |
| Marital Deduction | | 0.00 |
| Charitable Deduction | | 0.00 |
| Total Deductions | | 457,727.51 |
| Taxable Estate | | 2,126,166.49 |
| Adjusted Taxable Gifts | | 0.00 |
| Total Amount Drawing Tax | | 2,126,166.49 |
| Tentative Tax | | 842,621.58 |
| Aggregate Gift Tax Payable | | 0.00 |
| Tax before Unified Credit | | 842,621.58 |
| Unified Credit from Table | | 202,050.00 |
| Adjustment to Unified Credit | | 0.00 |
| Net Unified Credit | | 202,050.00 |
| Tax before SDTC | | 640,571.58 |
| State Death Tax Credit | | 108,893.32 |
| Net Tax after State Death Tax Credit | | 531,678.26 |
| Gift Tax Credit | 0.00 | |
| Foreign Death Tax Credit (Statutory) | 0.00 | |
| Prior Transfer Credit | 0.00 | |
| Foreign Death Tax Credit (Treaty) | 0.00 | |
| Total Credits | | 0.00 |
| Estate Tax | | 531,678.26 |
| Generation Skipping Transfer Tax | | 0.00 |
| Total Federal Tax | | 531,678.26 |

## FEDERAL INTEREST OPTION SELECTED

Interest Table File: C:\Program Files\EST3\Federal.IT4
Interest Table Description: Federal (RProc 95-17)(12/01)
Special Interest Rate Used (old):    4.0000000 %
Special Interest Rate Used (new):    2.0000000 %
INTEREST FACTORS USED

| | Regular (100%) | Special (old) | Refund |
|---|---|---|---|
| Pd # 1  c | 5.1006181 % | 2.5187322 % | 5.1006181 % |
| Pd # 2  c | 21.1852403 % | 10.2684955 % | 21.1852403 % |

PART 1

| | Date | Tax Pmt. | Int. Pmt. | |
|---|---|---|---|---|
| Due Date | 5  7 1999 | 590,000.00 | 0.00 | P |
| Pd # 1 | 12 20 1999 | <136,711.00> | 0.00 | |
| Pd # 2 | 5 31 2002 | ———— | ———— | |

P = Period entry for Interest on Penalty Computation

PART 2

| | Starting Balance | Tax Paid | Interest Balance | Applied To Balance |
|---|---|---|---|---|
| Due Date | 531,678.26 | 590,000.00 | 0.00 | 590,000.00 |

Estate of: BB, DD: 8 7 1998                                              Page 2

| | | | | |
|---|---|---|---|---|
| Pd # 1 | <58,321.74> | <136,711.00> | <2,974.77> | <133,736.23> |
| Pd # 2 | 75,414.49 | 0.00 | 15,976.74 | 0.00 |

PART 3

| | Interest Drawing Int. | Total Amount Drawing Int. | Interest Factor | Interest |
|---|---|---|---|---|
| Pd # 1 | 0.00 | <58,321.74> | 5.1006181 % | 0.00 |
| Pd # 2 | 0.00 | 75,414.49 | 21.1852403 % | 15,976.74 |
| Total Interest Deduction | | | | 15,976.74 |

LAST LINE OF PRINTOUT

ATTACHMENT 2

FORM 843,  CLAIM FOR REFUND AND REQUEST FOR ABATEMENT

ESTATE OF BARBARA A. BANDURSKI

DOD 08/07/98

Page 1 of 5

**Line 5**        **Explanation and additional claims.**  *Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax.  If you need more space, attach additional sheets.*

Barbara A. Bandurski ("the Decedent") died on August 7, 1998.   A little over one year prior to the Decedent's death, in July 1997,  Walter S. Bandurski, Inc.,  a closely held corporation ("Bandurski, Inc."),  sold substantially all of its assets to Waste Management, Inc., a publicly traded corporation, in exchange for stock in Waste Management, Inc.  In early 1998 the stock received by Bandurski, Inc. was distributed to the stockholders and Bandurski, Inc. was dissolved as a corporation documented by filings with the Office of the Delaware Secretary of State.  The Decedent was a minority stockholder in Bandurski, Inc., holding title to 40 percent of the shares of the outstanding stock, and had not been involved in the management of  Bandurski, Inc. at any time since her former husband, Walter S. Bandurski, and she divorced many years prior to her death.

The Decedent's former husband, Walter S. Bandurski, died on August 26, 1998.

The Federal Estate (and Generation-Skipping Transfer) Tax Return, Form 706, was timely filed by the Estate on November 8, 1999, having requested a six month extension of time to file the Form 706.

During the summer of 2000, the attorney for the  Estate of Walter S. Bandurski notified the attorney for the Decedent's Estate that it had received a check in an amount of $360,000 payable to the Estate (the "Post-Death Payment").  At that time, the Executor of the Estate and the attorney for the Estate were informed that although Bandurski, Inc. had been liquidated, the only other stockholder, and the only living former stockholder, Michael Bandurski, had received notice of a class action law suit and filed papers on behalf of Bandurski, Inc. and its former stockholders.  The $360,000 represented a 40% share of the proceeds of a settlement of a class action law suit generated by fees that the law suit alleged were improperly charged against trash haulers.  There is no evidence that the Decedent or any representative of the Decedent had any knowledge of the litigation or the possibility of a claim that might be made on behalf of Bandurski, Inc. during the Decedent's lifetime, as of decedent's date of death or until the Post-Death Payment was received, almost two years after the Decedent's date of death.

ATTACHMENT 2

FORM 843,  CLAIM FOR REFUND AND REQUEST FOR ABATEMENT

ESTATE OF BARBARA A. BANDURSKI

DOD 08/07/98


Page 2 of 5



The receipt of the Post-Death Payment proceeds was disclosed to the IRS during an examination and the examining agent proposed to include the full proceeds as the value of the settlement as of the Decedent's date of death.  During discussions with the examining agent and her supervisor, the Estate was not able to reach an agreement as to the value of the proceeds as of the Decedent's date of death.  As a result, the Report of Estate Tax Examination changes reported the value of the proceeds at $315,617 as of the Decedent's date of death – The full Post-Death Payment less a discount to reflect the present value as of the date of death two years earlier.

Attached as Exhibit A is a Valuation Report of the date of death fair market value of the Decedent's interest in the Post-Death Payment.  The Valuation Report gives its opinion that the fair market value of a interest in the potential claim through a former stockholder's interest in a liquidated corporation as of the Decedent's death is less than One Dollar ($1.00).

Based on this Valuation Report, it is the Estate's belief that there are no grounds for the IRS position that as of the Decedent's date of death the value of the proceeds of a class action law suit is the full amount of the proceeds, less a discount for the fact that the settlement proceeds were not received until almost two years after the Decedent's date of death.

Subsequent to the Report of  Estate Tax Examination Changes, on August 2, 2002, the Estate paid the tax and interest assessed on the value of the proceeds the IRS used in the Report. The Computation of the Tax Refund claimed follows.

549264v1

ATTACHMENT 2

FORM 843, CLAIM FOR REFUND AND REQUEST FOR ABATEMENT

ESTATE OF BARBARA A. BANDURSKI

DOD 08/07/98

Page 3 of 5

Computation of Tax Refund

| | |
|---|---|
| Adjusted Taxable Estate, reflecting the Corrections the IRS reported on Form 1273, Report of Estate Tax Examination of Changes dated 5/10/2002 (page 2, line 3) Taxable Estate as corrected | $2,126,166.49 |
| Reduced by | |
| Value of Post-Death Payment Schedule F, Item 8 based on IRS Correction, which value is disputed by the Estate in this Claim for Refund | (315,617.00) |
| Value of Taxable Estate, if Post-Death Payment has the value of "0" claimed by the Estate in this Claim for Refund | $1,810,549.49 |
| Tentative Federal Estate Tax on $1,810,549.49 | 695,547.00 |
| Unified Credit against estate tax | (202,050.00) |
| Credit for State death taxes | ( 85,960.00) |
| Net estate tax payable | $407,537.00 |

549264v1

ATTACHMENT 2

FORM 843, CLAIM FOR REFUND AND REQUEST FOR ABATEMENT

ESTATE OF BARBARA A. BANDURSKI

DOD 08/07/98

Page 4 of 5

Request for Refund of federal estate tax based on above

| | |
|---|---:|
| Estate Taxes paid with originally filed Estate Tax Return | $453,288.75 |
| Estate taxes paid under letter dated August 2, 2002 | 78,389.51 |
| Total estate taxes paid | 521,678.26 |
| Estate tax on taxable estate not including Post-Death Payment, reflecting a value of "0" (less than $1) for federal estate tax purposes | (407,537.00) |
| Refund of federal estate taxes | $124,141.26 |

The Estate is claiming a refund of three categories of liability

1.    Refund of federal estate taxes paid                $124,141.26

2.    Refund of interest paid August 2, 2002               $ 17,312.27

3.    Refund of as yet undetermined amount for additional reductions in federal estate taxes and interest determined when the federal estate tax liability and interest is finally agreed upon or determined in connection with the Estate's claim for refund of the amounts reflected above. Such refund will include the reduced federal estate taxes caused by increased legal and accounting expenses incurred in connection with this claim for refund, all of which are administrative expense deductible from the taxable estate for estate tax purposes.

ATTACHMENT 2

FORM 843, CLAIM FOR REFUND AND REQUEST FOR ABATEMENT

ESTATE OF BARBARA A. BANDURSKI

DOD 08/07/98

Page 5 of 5

NOTE: Since the time that the counsel for the Estate was in discussions with the Examining Agent during the first half of 2002, which resulted in the Report of the Estate Tax Examination Changes, the administrative expenses have increased significantly due not only to the discussions with the IRS during 2002 in an attempt to resolve the valuation of the proceeds, but also as a result of other issues relating to the inability of the Estate to be cleared of any liability with respect to an interest in a general partnership holding real property that is considered environmentally contaminated by state and city officials in the jurisdiction where such property is located. Therefore, an increase in the deductions beyond those reflected on the Adjustments to the Taxable Estate, Form 3228, for Schedule J, must be reflected in the computation of the Estate's final estate tax liability.