EXHIBIT F

| | |
|---|---|
| Internal Revenue Service | Department of the Treasury<br>Internal Revenue Service<br>Estate Tax<br>409 Silverside Road, Room 101<br>Wilmington, DE. 19809 |
| Date: February 19, 2002 | Person to Contact: Mertie L. Mills<br>Badge No. 51-00240<br>Telephone Number: (302)791-4542<br>Ext 239 |
| Beverly J. Wik, Esquire<br>The Bayard Firm<br>222 Delaware Avenue, Suite 900<br>P.O. Box 25130<br>Wilmington, DE  19899 | Fax Number: (302)791-4546<br>Refer Reply To: E:1704:MLM<br>RECEIVED<br>FEB 2 0 2002<br>BEVERLY J. WIK |

Re:   Estate of Barbara A. Bandurski

Dear Ms. Wik:

Enclosed is a copy of a DISCUSSION DRAFT for the Estate of Barbara A. Bandurski showing the recomputed estate tax liability in the above matter on the basis of one (or more) of the factual assumptions and/or legal theories we recently discussed. It is being provided to you as a means of facilitating our discussions as we work towards a timely resolution of the case.

Any additional factual data or evidence in support of your positions taken or to refute the assumptions offered in my DISCUSSION DRAFT are invited.

Please note, many of the legal and valuation theories offered in my DISCUSSION DRAFT, under selected scheduled items, may have been applicable throughout, or under more than one entry, and not all authority was cited in order to conserve examination time for purposes of this DISCUSSION DRAFT.

We are scheduled to meet on March 6, 2002. Please provide at that meeting any additional assets, debts or administration expenses. In order for the Estate to preserve its appeal rights, this case must be closed 9 months prior to the Statute of Limitations date; therefore, the case must be closed immediately after our meeting. Enclosed is a Declaration of Fees Form.

Thank you for your efforts to conclude this examination in an expeditious manner. Again, please call if you have any questions.

Sincerely yours,

*Mertie L. Mills*

Mertie L. Mills
Attorney (Estate Tax)

Enclosure: Form 4421
cc: Francis J. Schanne, Esquire

Department of the Treasury
Internal Revenue Service

## Declaration

### Executor's Commissions and Attorney's Fees

Estate of:
Date of Death:

    I (We) _____ declare under penalties of perjury that my (our) total commissions of $_____ to administer this estate and total attorney's fees of $_____ have been agreed upon and have been or will be paid as follows:

| Name and Address of Payee | Social Security Number of Payee | Total Amount Paid or to be Paid | Date Paid or to be Paid |
|---|---|---|---|
|  |  |  |  |

Of the commission or fees shown above, only $_____ has been or will be claimed as an income tax deduction. If the amounts or dates are changed, or if an election is made to claim commissions or fees deducted on the estate tax return as an income tax deduction, the Internal Revenue Service will be notified, and any resulting estate tax will be paid. The recipients of these commissions and fees will report them for income tax purposes for the year received.

_____  Date
(Signature of Executor or Administrator)

_____  Date
(Signature of Executor or Administrator)

_____  Date
(Signature of Attorney)

_____  Date
(Signature of Attorney)

For Privacy Act and Paperwork Reduction Act Notice, see Page 2
Form 4421 (Rev. 4-87)

Privacy Act Notice

Under the Privacy Act of 1974 and the Paperwork Reduction Act of 1980, we must tell you:

* Our legal right to ask for the information and whether the law says you must give it.
* What major purposes we have in asking for it, and how it will be used.
* What could happen if we do not receive it.

The laws cover:

* Tax returns and any papers filed with them.
* Any question we need to ask you so we can:
    Complete, correct, or process your return.
    Figure your tax.
    Collect tax, interest, or penalties.

Our legal right to ask for information is Internal Revenue Code sections 6001 and 6011 and their regulations. They say that you must file a return or statement with us for any tax you are liable for. Code section 6109 and its This is so we know who you are, and can process your return and papers.

You must fill in all parts of the tax form that apply to you. But you do not have to check boxes for the Presidential Election Campaign Fund.

We ask for tax return information to carry out the Internal Revenue laws of the United States. We need it to figure and collect the right amount of tax.

We may give the information to the Department of Justice and to other Federal agencies, as provided by law. We may also give it to States, the District of Columbia, and U.S. commonwealths or possessions to carry out their tax laws. And we may give it to foreign governments because of tax treaties they have with the United States.

If a return is not filed, or if we don't receive the information we ask for, the law provides that a penalty may be charged. And we may have to disallow the exemptions, exclusions, credits, deductions, or adjustments shown on the tax return. This could make the tax higher or delay any refund. Interest may also be charged.

Please keep this notice with your records. It may help you if we ask you for other information.

If you have questions about the rules for filing and giving information, please call or visit any Internal Revenue Service office.

This is the only notice we must give you to explain the Privacy Act. However, we may give you other notices if we have to examine your return or collect any tax, interest or penalties.

Form 4421 (Rev. 4-87)

Form 1273 (Rev. ) (CG)

Department of the Treasury - Internal Revenue Service

## Report of Estate Tax Examination Changes

| Name of Decedent: Walter S. Bandurski | Social Security Number | Date of Death: 8/26/1998 |
|---|---|---|
| Name of Person With Whom Findings Were Discussed: | | Agreement Secured: [x] Yes [ ] No |

| | Shown on Return | As Corrected |
|---|---:|---:|
| 1. Taxable estate shown on return or as previously adjusted | | 2,522,852.39 |
| 2. Increase <decrease> in taxable estate | | 720,841.49 |
| 3. Taxable estate as corrected (line 1 plus (less) line 2) | | 3,243,693.88 |
| 4. Adjusted Taxable Gifts | 0.00 | 0.00 |
| 5. Total | 2,522,852.39 | 3,243,693.88 |
| 6. Tentative Tax | 1,037,911.77 | 1,424,831.63 |
| 7. Aggregate gift taxes payable (after Dec. 31, 1976) | 0.00 | 0.00 |
| 8. Subtract the amount on line 7 from the amount on line 6 | 1,037,911.77 | 1,424,831.63 |
| 9. Unified Credit against estate tax | 202,050.00 | 202,050.00 |
| 10. Adjustment to unified credit | 0.00 | 0.00 |
| 11. Subtract the amount on line 10 from the amount on line 9 | 202,050.00 | 202,050.00 |
| 12. Subtract the amount on line 11 from the amount on line 8 (not less than zero) | 835,861.77 | 1,222,781.63 |
| 13. Credit for State death taxes   Tentatively allowed  204,594.61   Submit evidence by (date) | 140,628.19 | 204,594.61 |
| 14. Subtract the amount on line 13 from the amount on line 12 | 695,233.58 | 1,018,187.02 |
| 15. Credit for Federal gift taxes on pre-1977 gifts | 0.00 | 0.00 |
| 16. Credit for foreign death taxes (Statutory) | 0.00 | 0.00 |
| 17. Credit for tax on prior transfers | 0.00 | 0.00 |
| 18. Credit for foreign death taxes (Special Treaty) | 0.00 | 0.00 |
| 19. Total Credits (add the amounts on lines 15, 16, 17, and 18) | 0.00 | 0.00 |
| 20. Net estate tax payable | 695,233.58 | 1,018,187.02 |
| 21. Generation-skipping transfer taxes (Schedule R, Part 2, line 12) | 0.00 | 0.00 |
| 22. Section 4980A - increased estate taxes (Schedule S) | 0.00 | 0.00 |
| 23. Total transfer taxes (add the amounts on lines 20, 21 and 22) | 695,233.58 | 1,018,187.02 |
| 24. Total transfer tax previously assessed | | 695,233.58 |
| 25. Total transfer tax - Increase <decrease> (difference between line 23 and line 24) | | 322,953.44 |
| 26. Penalty previously assessed | | 0.00 |
| 27. Penalties as corrected | | 64,590.69 |
| 28. Net penalties - Increase <decrease> (difference between line 26 and line 27) | | 64,590.69 |
| 29. Net tax and penalties payable - Increase <decrease> (add line 25 and line 28) | | 387,544.13 |

| Examiner's Signature: Mertie L. Mills | Area: Delaware-Maryland | Date: 2/18/2002 |
|---|---|---|

Page 1

| Form 3228 (Rev. Oct. 1980) (CG) | Department of the Treasury - Internal Revenue Service<br>**Adjustments to Taxable Estate** | Schedule |
|---|---|---|
| Estate of<br>Walter S. Bandurski | Social Security Number | Date of Death<br>8/26/1998 |

| | | | |
|---|---|---|---|
| 1. Gross estate reported on return | | | 2,868,366.10 |
| 2. Increase <decrease> to gross estate | | | |
| A | Real Estate | 12,132.61 | |
| C | Mortgages, Notes & Cash | 58,419.00 | |
| E | All Other Joint Interests | 103,610.80 | |
| F | Other Miscellaneous Property | 497,628.00 | |
| G | Transfers During Life | 87,303.06 | |
| 3. Net changes to gross estate | | | 759,093.47 |
| 4. Corrected gross estate (line 1 & line 3) | | | 3,627,459.57 |
| 5. Total deductions reported on return | | 345,513.71 | |
| 6. Increase <decrease> to deductions | | | |
| J | Funeral & Administration Ex. | 1,864.93 | |
| K | Debts of Decedent | 36,387.05 | |
| 7. Net changes to deductions | | 38,251.98 | |
| 8. Corrected total deductions (line 5 + line 7) | | | 383,765.69 |
| 9. Corrected taxable estate (line 4 less line 8) | | | 3,243,693.88 |

Form 3228 (Rev. 10-80)(CG)
PAGE 2

| Form 886-A (Rev. April 1968)(CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER Estate of Walter S. Bandurski | | YEAR/PERIOD ENDED 8/26/1998 |

|  | Returned | Corrected |
|---|---:|---:|
| Sch. A, Real Estate | | |
| Item 1 - 207 Taft Avenue | 86,367.39 | 98,500.00 |
| Total of these items | 86,367.39 | 98,500.00 |
| | | 86,367.39 |
| Increase to schedule | | 12,132.61 |

Item 1. Real property known as 207 Taft Avenue, Lancaster Village, Wilmington, DE has been adjusted to its fair market value as of the valuation date based upon a sale of the property in an arm's-length transaction within a reasonable time of the valuation date. Section 20.2031-1(b) of the Federal Estate Tax Regulations.

|  | Returned | Corrected |
|---|---:|---:|
| Sch. C, Mortgages, Notes & Cash | | |
| Item 3 - Loan Four B's Realty Co. | 0.00 | 58,419.00 |
| Total of these items | 0.00 | 58,419.00 |
| | | 0.00 |
| Increase to schedule | | 58,419.00 |

Increase is loan made by decedent to Four B's Realty Company.

|  | Returned | Corrected |
|---|---:|---:|
| Sch. E, All Other Joint Interests | | |
| Item 1A - 25 Cannon Run Drive, Newark, DE | 142,889.20 | 161,000.00 |
| Item 2A - 517 Centre Avenue, Roanoke, VA | 26,200.00 | 28,400.00 |
| Item 3A - 515 Centre Avenue, Roanoke, VA | 5,200.00 | 5,900.00 |
| Item 4A - Centre Avenue NW, Roanoke, VA | 2,600.00 | 2,900.00 |
| Item 5A - 11.17 acres, Roanoke, VA | 57,500.00 | 60,300.00 |
| Item 7C - 2630 Marsh Road, Wilmington, DE | 79,500.00 | 159,000.00 |
| Total of these items | 313,889.20 | 417,500.00 |
| | | 313,889.20 |
| Increase to schedule | | 103,610.80 |

Items are increased to fair market value on the valuation date.

Department of the Treasury - Internal Revenue Service                Form 886-A (Rev. 4-68)(CG)
                                                                     Page  3

| Form 886-A (Rev. April 1968)(CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER Estate of Walter S. Bandurski | | YEAR/PERIOD ENDED 8/26/1998 |

|  | Returned | Corrected |
|---|---|---|
| Sch. F, Other Miscellaneous Property | | |
| Item 8 - 25% Interest Four B's Realty Co. | 0.00 | 134,028.00 |
| Item 9 - Class Action Recovery | 0.00 | 363,600.00 |
| Total of these items | 0.00 | 497,628.00 |
| | | 0.00 |
| Increase to schedule | | 497,628.00 |

Item 8 which is a 25% interest in Four B's Realty Company and returned at zero value is increased to fair market value as of date of death per agent's valuation attached.

Item 9 is the proceeds received from a class action claim that was not included on the 706. Decedent was a member of a class action claim filed against Delaware Solid Waste Authority on May 21, 1998. The claim resulted in a settlement of the class action January 2000 The sum of $900,000 was distributed to Walter S. Bandurski, Inc. The amount paid in respect of the decedent was $363,600.

May 21, 1998, class action complaint filed by Sylvester Jenifer T/A Vernon's Home Improvements, on behalf of itself and all other similarly situated against Delaware Solid Waste Authority seeking declaratory and monetary relief to redress the harm resulting from enforcement of an unambiguously protectionist and facially unconstitutional regulation promulgated by the Delaware Solid Waste Authority that prohibits out-of-State disposal of solid waste generated within the State of Delaware at solid waste facilities, not operated by, on behalf of, or under contract with DSWA. The action brought for injunctive relief and to recover damages for injuries suffered due to the deprivation of plaintiff's rights, privileges or immunities as secured by the United States Constitution. Complaint in Paragraph 10 states the plaintiff brings this action on its own behalf and on behalf of all members of a Class consisting of all persons in the State of Delaware who delivered and transported solid waste generated within the State for disposal at solid waste facilities operated by, on behalf of, or under contract with DSWA and paid tipping fees to DSWA during the period May 21, 1995 until the restrictions imposed by DSWA are abrogated. Complaint states plaintiff does not know the exact size of the Class since such information is in the hands of the defendant.

Complaint states tipping fees at DSWA were recently reported to be around $58.50/ton and that out-of-state facilities had the capacity to accept for disposal solid waste generated within Delaware for tipping fees considerably lower than those charged by DSWA Solid Waste Facilities. Complaint states there is no valid State health, safety or welfare purpose for DSWA Regulation that prohibits out-of-State disposal of solid waste generated within the State at out-of-State non-DSWA Facilities. Complaint states DSWA has intentionally and unconstituionally interfered with interstate commerce by eliminating competition in the solid waste disposal market.

| Form 886-A (Rev. April 1968)(CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Estate of Walter S. Bandurski | | YEAR/PERIOD ENDED<br>8/26/1998 |

Sch. F, Other Miscellaneous Property (Continued)

Attorney David Staats, who filed the class action complaint, states in his October 17, 2000, letter that "Walter S. Bandurski, Inc., was not a named plaintiff in the Complaint filed May 22, 1998, but was a member of the class." Mr. Statts further states in his letter that he did not speak with any representative of Walter S. Bandurski, Inc., until after the first complaint was filed. Mr. Staats in his October 17, 2000, letter states that a "retainer agreement was signed by a representative of Walter S. Bandurski, Inc. on September 28, 1998." October 2, 1998, Walter S. Bandurski, Inc., joined the second class action. The Federal Estate Tax was filed November 26, 1999. Mr. Staats in his December 6, 2000, letter states that the "fair market value of an asset does not depend on whether the owner of the asset is aware that he owns it."

Representative's letter of December 13, 2000, states the claim was unknown to the decedent at the time of his death. The ownership of that inchoate claim was effectively distributed to the stockholders by Walter S. Bandurski, Inc. when Walter S. Bandurski, Inc. was liquidated and disssolved. The claim was effectively included in the transfer to the decedent's revocable grantor trust upon the transfer of his distribution rights to that trust.

For purposes of Federal estate taxes, the value of a gross estate is determined by including the value, as of the date of death, of a decedent's interest in all property. Internal Revenue Code Sections 2031(a), 2033. The value of property included in the gross estate is the fair market value of the property on the date of death, defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Section 20.2031-1(b), Estate Tax Regs.;United States v. Cartwright, 411 U.S. 546, 551 (1973); Estate of Watts v. Commissioner, 823 F.2d 483, 485 (11th Cir. 1987_, affg. T.C. Memo. 1985-595. The willing buyer and willing seller who are considered in the determination of fair market value are hypothetical, objective participants in a hypothetical sale of the property. Estate of Watt v. Commissioner, supra at 486. Valuation is to be based on facts reasonably known at the date of valuation. Subsequent events are not considered in fixing fair market value except to the extent that they were reasonably foreseeable on the date of valuation. Estate of Gilford v. Commissioner, 88 T.C. 38, 52 (1987).

Section 2033 provides that the value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death. As used in such sections, the term "property" encompasses all choses in action, and the fact that the decedent's claim was contingent does not preclude the inclusion of such claim in his gross estate. United States v. Simmons, 346 F.2d 213 (5th Cir. 1965); Bank of California v. Commissioner, 133 F.2d 428 (9th Cir. 1943), affg. in part and revg. in part Estate of Barneson v. Commissioner, a Memorandum Opinon of this Court dated May 27, 1941; Estate of Curry v. Commissioner, 74 T.C. 540 (1980); Duffield v. United States, 136 F.Supp. 944 (E.D. Pa.

In Estate of Jeanne M. Houston v. Commissioner, 44 T.C.M. 284 (1982),

| Form 886-A (Rev. April 1968)(CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER  Estate of Walter S. Bandurski | | YEAR/PERIOD ENDED 8/26/1998 |

Sch. F, Other Miscellaneous Property (Continued)

the Court found that the decedent's interest in a wrongful death action that was contingent upon future recovery by her deceased spouse's estate did not preclude inclusion of the wrongful death action in her gross estate. Decedent's previously deceased spouse died in 1972 as a a result of being struck by an automobile while in Michigan. Decedent died March 17, 1974, and her executor on December 16, 1974, filed suit for her deceased spouse's wrongful death. Action was settled prior to trial and proceeds were distributed to deceased spouse's surviving children. Estate did not include any amount in the estate tax return representing the value of the decedent's interest in the wrongful death claim arising out of husband's death. The court noted that "her rights of action accrued at the time of her husband's death and continued in existence, through her estate, beyond her own death some 14 months later."

The decedent's cause of action accrued prior to his death and under Section 2031, 2033 and Estate Tax Regs. section 20.2033-1, the gross estate shall include the date of death value of all property, whether real or personal, tangible or intangible, beneficially owned by the decedent. This includes the date of death values of all existing claims and choses in action of the decedent that pass to the estate, notwithstanding that they may be contingent and/or uncertain as to amount. Estate of Curry v. Commissioner, 74 T.C. 540 (1980). The decedent at the time of his death did have a claim against Delaware Solid Waste Authority which should have been reported on the decedent's Federal Estate Tax Return. The Tax Court has said that later discovered facts determine the value of the property at the date of death:

> Even if the executors were totally ignorant of the claim, we do not agree that it would for that reason be without value. An estate may possess many assets, tangible and intangible, of which the deceased's representative or even the deceased himself may be unaware, and which may not become apparent until the lapse of a substantial period of time after death. Such property is for that reason no less an asset of the estate, nor can it necessarily be said to be valueless at the date of death. This is particularly true where, as here, the asset is one which by its nature is discoverable in the ordinary course of administration of the estate. Estate of I. W. Baldwin, 1959, P-H. T.C. Memo P59, 203.

In this case, the decedent's company was included in the class action before the Federal Estate Tax Return was filed and should have been disclosed on the Return. "(I)gnorance of the value of an asset at the time of a decedent's death does not justify treating the asset as valueless, any more than ignorance of the existence of an asset, discovered after the date of death, justifies exclusion of the asset from the decedent's gross estate." Simmons at 217.

The fact that the settlement of the lawsuit resulted in a payment of $900,000 to Walter S. Bandurski, Inc., is highly indicative of the fact that the claim had value at the time of decedent's death.

The cases hold that unsettled litigation is an asset of the estate and is to be included in the gross estate at its estimated fair market

| Form 886-A (Rev. April 1968)(CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER Estate of Walter S. Bandurski | | YEAR/PERIOD ENDED 8/26/1998 |

Sch. F, Other Miscellaneous Property (Continued)
value at date of death, notwithstanding that it may be contingent and/or uncertain as to amount.

To determine the proper valuation, all the facts and circumstances surrounding the claim must be examined. Since the value of the claim was not fixed as of date of death, subsequent events may be used as evidence of value. Estate of Curry v. Commissioner, supra. The court in the Houston case found the fair market value of the claim was $75,000. The claim was settled for $132,500 with net proceeds of $48,133.31. The court stated "(W)hile it may seem anomalous that the amount to be included in the gross estate exceeds the actual net recovery from the wrongul death action, the latter is not controlling in the determination of date of death value." Id. at 288.

In Estate of Davis v. Commissioner, 65 T.C.M. 2365 (1993), the Tax Court addressed the issue of how to value a cause of action which remained unsettled at the decedent's death. In Davis, the decedent initiated a lawsuit against Merrill Lynch for churning her account. The Court stated that subsequent events are not considered in fixing fair market value, except to the extent that they were reasonably foreseeable at the date of valuation. The court began with the amount of the claim as if there were no contest and then discounted the claim for 1) costs of litigation, 2) hazards of litigation, and 3) time delay in receiving the funds. The court used only a limited discount for the hazards of litigation because of the relative ease of proving the churning would result only in negligible risks or hazards of success in litigating.

The subject case is similar for the facts show that Delaware Solid Waste Authority was guilty of charging exorbitant and uncompetitive tipping fees and restricted the free flow of commerce amongst the States. Further evidence of the fact that the plaintiffs had a good case is the fact that the case was settled prior to trial with a payment of $900,000 to Walter S. Bandurski, Inc. Costs of litigation are included in the settlement. The only reduction that should be made to the settlement proceeds is the time delay in receiving the funds.

The representative of the estate is relying primarily on a line of cases that conclude that postdeath events may not be used in evaluating claims or deductions against an estate, Ithaca Trust Co. v. United States, 279 U.S. 151 (1929); Ballantine v. Tomlinson, 293 F.2d 311 (5th Cir., 1961); Propstra v. United States 680 F.2d 1248 (9th Cir., 1982); and Estate of Evelyn M. McMorris v. Commissioner, 243 F.3d 1254 (10th Cir., 2001). Section 2053 simply provides that such claims are deductible in determining the taxable estate if they are legally enforceable, i.e., are as allowable by the laws of the jurisdiction, whether within or without the United States, in which the estate is being administered. Treasury reguation section 20.2053-4 states the amounts that may be deducted as claims against a decedent's estate are such only as represent personal obligations of the decedent existing at the time of his death, whether or not then matured, and interest thereon which had accrued at the time of death. The Court of Appeals has acknowledged that the "law is clear that post-death events are relevant when computing the deduction to be taken for disputed or contingent claims." Propstra v. United States,

| Form 886-A (Rev. April 1968)(CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER Estate of Walter S. Bandurski | | YEAR/PERIOD ENDED 8/26/1998 |

Sch. F, Other Miscellaneous Property (Continued)

supra at 1253. The court held that section 2053 precludes the consideration of post-death events in computing the value of certain and enforceable claims against an estate. This line of cases is not applicable when valuing assets of the estate.

Unsettled litigation which is an asset of the estate is included in the gross estate at its estimated fair market value at date of death, notwithstanding that it may be contingent and/or uncertain as to amount. See IRC sections 2032 and 2033. In contrast see Reg. Section 20.2053-1(b)(3) which disallows a deduction from the estate that is taken upon the basis of a vague or uncertain estimate. The date-of-death valuation rule applies to a deduction for a claim against the estate under IRC section 2053-(a)(3). As a a result, events which occur after the decedent's death may not be considered in valuing that deduction. The cases hold that in valuing assets of a decedent, subsequent events can be used to determine fair market value particularly when valuing the fair market value of a pending lawsuit as of date of death.

Estate is relying on Welch v. Commisisoner, 6h Cir. No. 98-2007, March 2, 2000, in which the court held that potential built-in capital gains tax liability should be considered in valuing an asset. This tax in reality may never be paid; therefore, it is an estimate and not a certain event. The estate also relied on First National Bank of Kenosha v. United States, 763 R.2d 891 (7th Cir., 1985) in which the court allowed evidence of actual sales prices received 21 months after the date of death so long as the sale occurred within a reasonable time after death and no intervening events drastically changed the value of the property. Settlement of the subject claim within 20 months of the filing of the lawsuit is certainly a reasonable length of time. There were no intervening events that drastically changed the value of the asset. The lawsuit is not a subsequent event but was ongoing at date of death. It was not beyond the contemplation of the parties on the relevant valuation date.

Estate is also relying on Estate of Mary B. Bull v. Commissioner, T.C. memo 2001-92 (April 13, 2001). The Bull case can be distinguished based on the fact that at date of death the estate had no right to insurance reimbursement and no obligation to pay to complete the decedent's residence which was destroyed by fire and was being retored at the time of her death. The court stated that the situation is unlike the situation "where a contingent legal fee was includable in an estate based on the rationale that it had been earned and a claim existed at the time of death." In the subject case, the claim existed at date of death and is includible in the decedent's estate at its fair market value.

The estate has not presented any evidence as to the fair market value of the class action claim as of date of death of the decedent. Based upon the facts in this case, the total amount of the proceeds of $363,600 received by the estate 17 months after date of death is the fair market value of class action claim.

| Form 886-A (Rev. April 1968)(CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER Estate of Walter S. Bandurski | | YEAR/PERIOD ENDED 8/26/1998 |

|  | Returned | Corrected |
|---|---|---|
| Sch. G, Transfers During Life | | |
| Item 1 - 37814 shares Waste Management | 1,849,482.74 | 1,936,785.80 |
| Total of these items | 1,849,482.74 | 1,936,785.80 |
| | | 1,849,482.74 |
| Increase to schedule | | 87,303.06 |

Item 1. Item is adjusted to the mean between the highest and lowest quoted selling prices on the valuation date. Section 20.2031-2 of the Federal Estate Tax Regulations.

|  | Returned | Corrected |
|---|---|---|
| Sch. J, Funeral & Administration Ex. | | |
| B.1 - Executor's Commissions | 60,000.00 | 60,000.00 |
| B.2 - Attorney fees | 30,000.00 | 30,000.00 |
| B.10 - Furniture Moving Expenses | 0.00 | 1,864.93 |
| B.11 - Interest on the Deficiency | 0.00 | 0.00 |
| Total of these items | 90,000.00 | 91,864.93 |
| | | 90,000.00 |
| Increase to schedule | | 1,864.93 |

Deductions for expenses incurred in the administration of the decedent's estate have been adjusted to reflect the amounts allowable under Code section 2053.

An adjustment has been provided to allow a deduction for Federal interest computed to be due and owing on the Estate tax deficiency, pursuant to the provisions of Revenue Ruling 79-252, 1979-2 C.B. 333.

This deduction is only allowable in AGREED issue cases. Refer to the detailed interrelated computation (attached as an Exhibit).

|  | Returned | Corrected |
|---|---|---|
| Sch. K, Debts of Decedent | | |
| Item 31 - CoreStates Bank | 25,126.43 | 24,770.15 |
| Item 32 - Herdeg, du Pont & Dalle Pazze | 4,160.00 | 4,160.00 |
| Item 33 - Mortgage on 27 Taft Avenue | 0.00 | 36,743.33 |
| Total of these items | 29,286.43 | 65,673.48 |
| | | 29,286.43 |
| Increase to schedule | | 36,387.05 |

Deductions for claims against the decedent's estate, the decedent's unpaid debts, mortgages and/or liens have been adjusted to reflect amounts allowable under Code section 2053.

Department of the Treasury - Internal Revenue Service                    Form 886-A (Rev. 4-68)(CG)
                                                                          Page  7

| Form 886-A (Rev. April 1968)(CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Estate of Walter S. Bandurski | | YEAR/PERIOD ENDED<br>8/26/1998 |

Sch. K, Debts of Decedent (Continued)

|  | Returned | Corrected |
|---|---:|---:|
| Penalties | | |
| Item 1 - Negligence Penalty | 0.00 | 64,590.69 |
| Total of these items | 0.00 | 64,590.69 |
|  |  | 0.00 |
| Increase to schedule |  | 64,590.69 |

(a) IMPOSITION OF PENALTY. -- If this section applies to any portion of an underpayment of tax required to be shown on a return, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which this section applies.

(b) PORTION OF UNDERPAYMENT TO WHICH SECTION APPLIES -- This section shall apply to the portion of any underpayment which is attributable to 1 or more of the following:
    (1) Negligence or disregard of rules or regulations.
    (2) Any substantial understatement of income tax.
    (3) Any substantial valuation misstatement under chapter 1.
    (4) Any substantial overstatement of pension liabilities.
    (5) Any substantial estate or gift tax valuation understatement.
This section shall not apply to any portion of an underpayment on which a penalty is imposed under section 6663.
Code Sections 6662(a), 6662(b).

(c) NEGLIGENCE -- For purposes of this section, the term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term "disregard" includes any careless, reckless, or intentional disregard. Code Section 6662(c).

Jacob B's Realty Company
Adjusted Balance Sheet
As of 12/31/97

Assets

| | |
|---|---|
| Cash | $ 81 |
| Due from Arrow Disposal | 150,101 |
| Due from BABS | 110 |
| Due from WSB, Inc. | 5,887 |
| Real Estate | 495,000 |
| Total Assets | $ 651,179 |

Liabilities

| | |
|---|---|
| Loan due Walter Bandurski | 58,419 |
| Environmental Cleanup Investigation | 56,650 |
| Environmental Cleanup Costs Estimate | |
| Total Liabilities | 115,069 |
| | |
| Fair market value | 536,110 |

page 11