# EXHIBIT G

Internal Revenue Service

Department of the Treasury
Internal Revenue Service
Estate Tax
409 Silverside Road, Room 101
Wilmington, DE. 19809

Date: May 10, 2002

Beverly J. Wik, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899

Person to Contact: Mertie L. Mills
Badge No. 51-00240
Telephone Number: (302)791-4542
Ext. 239
Fax Number: (302)791-4546

Refer Reply To: E:1704:MLM

Re: Estate of Barbara A. Bandurski

Dear Ms. Wik:

Enclosed is a copy of a DISCUSSION DRAFT for the Estate of Barbara J. Bandurski showing the recomputed estate tax liability. The corrected items are detailed in the proposed report. If you have any questions concerning this report or any matter discussed during this examination, please call. My phone number is listed above.

If you and your client agree with the proposed changes, please have the enclosed Form 890, Waiver of Restrictions on Assessment and Collection of Deficiency and Acceptance of Overassessment - Estate and Gift Tax, executed and returned to me. Also, please complete the enclosed Declaration of Fees Form 4421 and return to me.

To stop the running of interest, you may pay the additional tax shown on the draft (See Form 1273, line 29) by check made to the order of "U.S. Treasury Department"; otherwise, you will be billed. Your payment should include the additional tax plus interest from the due date of the return, to the date of payment. Interest amounts to $15,976.74, and for purposes of this DISCUSSION DRAFT has been deducted on Schedule J.

Thank you for your efforts to conclude this examination. Again, please call if you have any questions.

Sincerely yours,

*Mertie L. Mills*

Mertie L. Mills
Attorney (Estate Tax)

RECEIVED
MAY 1 5 2002
BEVERLY J. WIK

Enclosures:  as noted
Publications 1, 5 and 594
Form 4421

| Form 890 (Rev. Oct. 1988) | Department of the Treasury - Internal Revenue Service<br>**Waiver of Restrictions on Assessment and Collection of Deficiency and Acceptance of Overassessment -- Estate, Gift, and Generation-Skipping Transfer Tax**<br>(Please see the instructions on the second page of this form) | Date Received by Internal Revenue Service |
|---|---|---|

## Part 1. Consent to Assessment and Acceptance of Overassessment

I consent to the immediate assessment and collection of any deficiencies (increase in tax and penalties) and accept any overassessment (decrease in tax and penalties) shown below, plus any interest provided by law. I understand that by my signing this waiver, a petition to the United States Tax Court may not be made, unless additional deficiencies are determined.

Date of Death or Period Ending    8/ 7/1998

| Item | Increase | Decrease |
|---|---|---|
| Tax | 78,389.51 | |
| Penalty | | |
| Total | 78,389.51 | |

If the estate is required to file with the Area Director of Internal Revenue evidence of payment of estate, inheritance, legacy, succession, or generation-skipping transfer taxes to any State or the District of Columbia, I understand that such evidence must be filed by                , or the credits for these taxes will not be allowed. I also agree to the assessment and collection of the increase in estate tax and penalties of                based on the disallowed credits, plus interest figured to the 30th day after                or until this increase is assessed, whichever is earlier.

Estate of    Barbara A. Bandurski

| | | Date |
|---|---|---|
| **Executor or Administrator** | Sign \ Here / | |
| | Address | |

| | | Date |
|---|---|---|
| **Executor or Administrator** | Sign \ Here / | |
| | Address | |

| | Name | Address |
|---|---|---|
| **Donor** | | |

| | | Date |
|---|---|---|
| **Donor's Signature** | Sign \ Here / | |

Form **890** (Rev. 10-88)(CG)

## Part 2. Unified Credit Agreement

I agree to the increase or decrease in the total allowed Unified Credit by the amount shown below.

| | Increase | Decrease |
|---|---|---|
| Unified Credit | | |

| | Name | Address |
|---|---|---|
| Donor | | |

| | | Date |
|---|---|---|
| Donor's Signature | Sign \ Here / | |

## Part 3. Gift Tax Marital Deduction

I agree to the increase or decrease in the usage of the gift tax marital deduction by the amount shown below.

| | Increase | Decrease |
|---|---|---|
| Marital Deduction | | |

| | Name | Address |
|---|---|---|
| Donor | | |

| | | Date |
|---|---|---|
| Donor's Signature | Sign \ Here / | |

## Instructions

### Consent to Assessment and Acceptance of Overassessment

If you consent to the assessment of the deficiencies shown in Part 1 of the form, please sign the agreement under Part 1 and return the form to limit any interest charge and expedite the adjustment to your account. Your consent will not prevent a claim for refund from being filed (after the tax has been paid) if you later believe it is warranted, not prevent us from later determining that additional tax is owed, nor extend the time provided by law for either action.

If a claim is later filed and the Service disallows it, a suit for refund may be filed in a Federal District Court or in the United States Claims Court, but a petition may not be filed with the United States Tax Court.

We will consider this waiver a valid claim for refund or credit of any overpayment due resulting from any decrease in tax and penalties determined by the Internal Revenue Service, shown on the front of this form, provided part 1 of this form is signed and filed within the period established by law for making such a claim.

### Unified Credit Agreement

If you agree with the increase or decrease of the allowed credit shown in Part 2 of this form, please sign the agreement under Part 2 and return the form.

### Marital Deduction Agreement

If you agree with the increase or decrease in the usage of the gift tax marital deduction by the amount shown in Part 3 of this form, please sign the agreement under Part 3 and return this form.

### Signature Instructions

If the executor or administrator is a corporation, the waiver should be signed with the corporate name, followed by the signatures and titles of the corporate officers authorized to sign. An attorney or agent may sign this waiver provided the action is specifically authorized by a power of attorney which, if not previously filed, must accompany this form.

Form 890 (Rev. 10-88)(CG)

Form 1273 (Rev. ) (CG)

Department of the Treasury - Internal Revenue Service
## Report of Estate Tax Examination Changes

Name of Decedent: Barbara A. Bandurski

Social Security Number: _____

Date of Death: 8/ 7/1998

Agreement Secured: [x] Yes  [ ] No

Name of Person With Whom Findings Were Discussed: _____

| | Shown on Return | As Corrected |
|---|---|---|
| 1. Taxable estate shown on return or as previously adjusted | | 1,931,584.00 |
| 2. Increase <decrease> in taxable estate | | 194,582.49 |
| 3. Taxable estate as corrected (line 1 plus (less) line 2) | | 2,126,166.49 |
| 4. Adjusted Taxable Gifts | 0.00 | 0.00 |
| 5. Total | 1,931,584.00 | 2,126,166.49 |
| 6. Tentative Tax | 750,012.80 | 842,621.58 |
| 7. Aggregate gift taxes payable (after Dec. 31, 1976) | 0.00 | 0.00 |
| 8. Subtract the amount on line 7 from the amount on line 6 | 750,012.80 | 842,621.58 |
| 9. Unified Credit against estate tax | 202,050.00 | 202,050.00 |
| 10. Adjustment to unified credit | 0.00 | 0.00 |
| 11. Subtract the amount on line 10 from the amount on line 9 | 202,050.00 | 202,050.00 |
| 12. Subtract the amount on line 11 from the amount on line 8 (not less than zero) | 547,962.80 | 640,571.58 |
| 13. Credit for State death taxes  Tentatively allowed  108,893.32  Submit evidence by (date) | 94,674.05 | 108,893.32 |
| 14. Subtract the amount on line 13 from the amount on line 12 | 453,288.75 | 531,678.26 |
| 15. Credit for Federal gift taxes on pre-1977 gifts | 0.00 | 0.00 |
| 16. Credit for foreign death taxes (Statutory) | 0.00 | 0.00 |
| 17. Credit for tax on prior transfers | 0.00 | 0.00 |
| 18. Credit for foreign death taxes (Special Treaty) | 0.00 | 0.00 |
| 19. Total Credits (add the amounts on lines 15, 16, 17, and 18) | 0.00 | 0.00 |
| 20. Net estate tax payable | 453,288.75 | 531,678.26 |
| 21. Generation-skipping transfer taxes (Schedule R, Part 2, line 12) | 0.00 | 0.00 |
| 22. Section 4980A - increased estate taxes (Schedule S) | 0.00 | 0.00 |
| 23. Total transfer taxes (add the amounts on lines 20, 21 and 22) | 453,288.75 | 531,678.26 |
| 24. Total transfer tax previously assessed | | 453,288.75 |
| 25. Total transfer tax - Increase <decrease> (difference between line 23 and line 24) | | 78,389.51 |
| 26. Penalty previously assessed | | 0.00 |
| 27. Penalties as corrected | | 0.00 |
| 28. Net penalties - Increase <decrease> (difference between line 26 and line 27) | | 0.00 |
| 29. Net tax and penalties payable - Increase <decrease> (add line 25 and line 28) | | 78,389.51 |

Examiner's Signature: Mertie L. Mills

Area: Delaware-Maryland

Date: 5/10/2002

| Form **3228** (Rev. Oct. 1980) (CG) | Department of the Treasury - Internal Revenue Service **Adjustments to Taxable Estate** | | Schedule — |
|---|---|---|---|
| Estate of **Barbara A. Bandurski** | | Social Security Number | Date of Death 8/ 7/1998 |

| | | | |
|---|---|---|---|
| 1. Gross estate reported on return | | | 2,179,747.00 |
| 2. Increase <decrease> to gross estate | | | |
| B | Stocks and Bonds | 49.00 | |
| D | Insurance on Decedent's Life | 1,077.00 | |
| E | All Other Joint Interests | 82,300.00 | |
| F | Other Miscellaneous Property | 320,721.00 | |
| 3. Net changes to gross estate | | | 404,147.00 |
| 4. Corrected gross estate (line 1 & line 3) | | | 2,583,894.00 |
| 5. Total deductions reported on return | | 248,163.00 | |
| 6. Increase <decrease> to deductions | | | |
| J | Funeral & Administration Ex. | 192,764.51 | |
| K | Debts of Decedent | 16,800.00 | |
| 7. Net changes to deductions | | 209,564.51 | |
| 8. Corrected total deductions (line 5 + line 7) | | | 457,727.51 |
| 9. Corrected taxable estate (line 4 less line 8) | | | 2,126,166.49 |

Form 3228 (Rev. 10-80)(CG)
PAGE 2

| Form 886-A (Rev. April 1968) (CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER  Estate of Barbara A. Bandurski | | YEAR/PERIOD ENDED 8/ 7/1998 |

|  | Returned | Corrected |
|---|---|---|
| **Sch. B, Stocks and Bonds** | | |
| Item 1 - 1111.60 shs. MFS Total Return | 16,191.00 | 16,240.00 |
| Total of these items | 16,191.00 | 16,240.00 |
|  |  | 16,191.00 |
| Increase to schedule |  | 49.00 |

Estate determined that decedent held an additional 3.397 shares. These items, representing the fair market value on valuation date of securities not previously included, are added to the gross estate pursuant to Section 2033 of the Internal Revenue Code.

Stock shares are valued at the mean between the highest and lowest quoted selling prices on the valuation date. Section 20.2031-2 of the Federal Estate Tax Regulations.

|  | Returned | Corrected |
|---|---|---|
| **Sch. D, Insurance on Decedent's Life** | | |
| Item 2 - John Hancock Life Insurance | 0.00 | 1,077.00 |
| Total of these items | 0.00 | 1,077.00 |
|  |  | 0.00 |
| Increase to schedule |  | 1,077.00 |

Evidence supports the fact that the decedent held ownership interest in the John Hancock Mutual Life Insurance Policy #7 272 329. John Hancock Mutual Life Insurance Company completed its conversion to a stock company. The conversion was approved 11/30/99 and the Company issued a check to the decedent on February 1, 2000. The transactions by the Company indicate that the decedent was the owner of the policy.

|  | Returned | Corrected |
|---|---|---|
| **Sch. E, All Other Joint Interests** | | |
| Item 1B - 50% Interest 2630 Marsh Road | 0.00 | 79,500.00 |
| Item 3A - 1995 Cadillac Deville | 17,750.00 | 20,550.00 |
| Total of these items | 17,750.00 | 100,050.00 |
|  |  | 17,750.00 |
| Increase to schedule |  | 82,300.00 |

Item 1B is increased to fair market value as of date of death for the 50% interest held by the decedent. Decedent held legal title to the real property as joint tenant with a right of survivorship and had the right to use and reside in such property for life.

Department of the Treasury - Internal Revenue Service       Form 886-A (Rev. 4-68) (CG)
                                                              Page   3

| Form 886-A (Rev. April 1968) (CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER<br>Estate of Barbara A. Bandurski | | YEAR/PERIOD ENDED<br>8/ 7/1998 |

Sch. E, All Other Joint Interests (Continued)

One-half of the full fair market value of property (as of the applicable valuation date) which the decedent held as a qualified joint interest, is included in her gross estate. Code section 2040(a) and 2031 of the Internal Revenue Code.

Item 3A - increased to fair market value per Kelley Blue Book.

|  | Returned | Corrected |
|---|---|---|
| Sch. F, Other Miscellaneous Property | | |
| Item 2 - Jewelry | 1,890.00 | 5,230.00 |
| Item 3 - 1998 Delaware Income Tax Refund | 7,021.00 | 8,257.00 |
| Item 7 - John Hancock Proceeds | 0.00 | 528.00 |
| Item 8 - Class Action Proceeds | 0.00 | 315,617.00 |
| Total of these items | 8,911.00 | 329,632.00 |
|  |  | 8,911.00 |
| Increase to schedule |  | 320,721.00 |

Item 2 is increased to fair market value per appraisal.
Item 3 - the value of gross estate has been adjusted to reflect the inclusion of the State income tax refund for the year 1998 to which the decedent's estate was entitled on account of the payments made by the decedent prior to her death. Code section 2033.
Item 7 is the actual proceeds received by the estate.
Item 8 is the proceeds received from a class action claim that was not included on the 706. Decedent was a member of a class action claim filed against Delaware Solid Waste Authority on May 21, 1998. The claim resulted in a settlement of the class action January 2000 with $900,000 distributed to Walter S. Bandurski, Inc. The amount paid in respect of the decedent was $360,000.
May 21, 1998, class action complaint filed by Sylvester Jenifer T/A Vernon's Home Improvements, on behalf of itself and all other similarly situated against Delaware Solid Waste Authority seeking declaratory and monetary relief to redress the harm resulting from enforcement of an unambiguously protectionist and facially unconstitutional regulation promulgated by the Delaware Solid Waste Authority that prohibits out-of-state disposal of solid waste generated within the State of Delaware at solid waste facilities, not operated by, on behalf of, or under contract with DSWA. The action brought for injunctive relief and to recover damages for injuries suffered due to the deprivation of plaintiff's rights, privileges or immunities as secured by the United States Constitution. Complaint in Paragraph 10 states the plaintiff brings this action on its own behalf and an behalf of all members of a Class consisting of all persons in the State of Delaware who delivered and transported solid waste generated within the State for disposal at solid waste facilities operated by, on behalf of, or under contract with DSWA and paid tipping fees to DSWA during the period May 21, 1995, until the restrictions imposed by DSWA are abrogated. Complaint states plaintiff does not know the exact size of the Class since such information is in the hands of the defendant.

Complaint states tipping fees at DSWA were recently reported to be around $58.50/ton and that out-of-state facilities had the capacity to accept for disposal solid waste generated within Delaware for tipping fees considerably lower than those charged by DSWA Facilities. Complaint states there is no valid State health, safety or welfare purpose for DSWA Regulation that prohibits out-of-State disposal of solid waste generated within the State at out-of-State non-DSWA Facilities. Complaint states DSWA has intentionally and unconstituionally interfered with interstate commerce by eliminating competition in the solid waste disposal market.

Attorney David Staats, who filed the class action complaint, states in his October 17, 2000, letter that "Walter S. Bandurski, Inc., was not a named plaintiff in the Complaint filed May 22, 1998, but was a member of the class." Mr. Statts further states in his letter that he did not speak with any representative of Walter S. Bandurski, Inc., until after the first complaint was filed. Mr. Staats in his October 17, 2000, letter states that a "retainer agreement was signed by a represenative of Walter S. Bandurski, Inc. on September 28, 1998." October 2, 1998, Walter S. Bandurski, Inc., joined the second class action. The Federal Estate Tax was filed November 26, 1999. Mr. Staats in his December 6, 2000, letter states that the "fair market value of an asset does not depend on whether the owner of the asset is aware that he owns it."

Representative's letter of December 13, 2000, states the claim was unknown to the decedent at the time of his death. The ownership of that inchoate claim was effectively distributed to the stockholders by Walter S. Bandurski, Inc. when Walter S. Bandurski, Inc. was liquidated and disssolved. The claim was effectively included in the transfer to the decedent's revocable grantor trust upon the transfer of his distribution rights to that trust.

For purposes of Federal estate taxes, the value of a gross estate is determined by including the value, as of the date of death, of a decedent's interest in all property. Internal Revenue Code Sections 2031(a), 2033. The value of property included in the gross estate is the fair market value of the property on the date of death, defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Section 20.2031-1(b), Estate Tax Regs.; United States v. Cartwright, 411 U.S. 546, 551 (1973); Estate of Watts v. Commissioner, 823 F.2d 483, 485 (11th Cir. 1987_, affg. T.C. Memo. 1985-595. The willing buyer and willing seller who are considered in the determination of fair market value are hypothetical, objective participants in a hypothetical sale of the property. Estate of Watt v. Commissioner, supra at 486. Valuation is to be based on facts reasonably known at the date of valuation. Subsequent events are not considered in fixing fair market value except to the extent that they were reasonably foreseeable on the date of valuation. Estate of Gilford v. Commissioner, 88 T.C. 38, 52 (1987).

Section 2033 provides that the value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death. As used in such sections, the term "property" encompasses all choses in action, and the fact that the decedent's claim was contingent does not preclude the inclusion of such claim in his gross estate. United States v. Simmons, 346 F.2d 213 (5th Cir. 1965); Bank of California v. Commissioner, 133 F.2d 428 (9th Cir. 1943), affg. in part and revg. in part Estate of Barneson v. Commissioner, a Memorandum Opinon of this Court dated May 27, 1941; Estate of Curry v. Commissioner, 74 T.C. 540 (1980); Duffield v. United States, 136 F.Supp. 944 (E.D. Pa.

5

In Estate of Jeanne M. Houston v. Commissioner, 44 T.C.M. 284 (1982), the Court found that the decedent's interest in a wrongful death action that was contingent upon future recovery by her deceased spouse's estate did not preclude inclusion of the wrongful death action in her gross estate. Decedent's previously deceased spouse died in 1972 as a a result of being struck by an automobile while in Michigan. Decedent died March 17,1974, and her executor on December 16, 1974, filed suit for her deceased spouse's wrongful death. Action was settled prior to trial and proceeds were distributed to deceased spouse's surviving children. Estate did not include any amount in the estate tax return representing the value of the decedent's interest in the wrongful death claim arising out of husband's death. The court noted that "her rights of action accrued at the time of her husband's death and continued in existence, through her estate, beyond her own death some 14 months later."

The decedent's cause of action accrued prior to his death; and under Section 2031, 2033 and Estate Tax Regs. section 20.2033-1, the gross estate shall include the date of death value of all property, whether real or personal, tangible or intangible, beneficially owned by the decedent. This includes the date of death values of all existing claims and choses in action of the decedent that pass to the estate, notwithstanding that they may be contingent and/or uncertain as to amount. Estate of Curry v. Commissioner, 74 T.C. 540 (1980). The decedent at the time of his death did have a claim against Delaware Solid Waste Authority which should have been reported on the decedent's Federal Estate Tax Return. The Tax Court has said that ignorance of an asset at date of death does not determine that the asset is valueless or should not be included as an asset of the estate:

> Even if the executors were totally ignorant of the claim, we do not agree that it would for that reason be without value. An estate may possess many assets, tangible and intangible, of which the deceased's representative or even the deceased himself may be unaware, and which may not become apparent until the lapse of a substantial period of time after death. Such property is for that reason no less an asset of the estate, nor can it necessarily be said to be valueless at the date of death. This is particularly true where, as here, the asset is one which by its nature is discoverable in the ordinary course of administration of the estate. Estate of I. W. Baldwin, 1959, P-H. T.C. Memo P59, 203.

In this case, the decedent's company was included in the class action before the Federal Estate Tax Return was filed and should have been disclosed on the Return. "(I)gnorance of the value of an asset at the time of a decedent's death does not justify treating the asset as valueless, any more than ignorance of the existence of an asset, discovered after the date of death, justifies exclusion of the asset from the decedent's gross estate." Simmons at 217.

The fact that the settlement of the lawsuit resulted in a payment of $900,000 to Walter S. Bandurski, Inc., is highly indicative of the fact that the claim had value at the time of decedent's death.

The cases hold that unsettled litigation is an asset of the estate and is to be included in the gross estate at its estimated fair market value at date of death, notwithstanding that it may be contingent and/or uncertain as to amount.

To determine the proper valuation, all the facts and circumstances surrounding the claim must be examined. Since the value of the claim was not fixed as of date of death, subsequent events may be used as

6

evidence of value. Estate of Curry v. Commissioner, supra. The court in the Houston case found the fair market value of the claim was $75,000. The claim was settled for $132,500 with net proceeds of $48,133.31. The court stated "(W)hile it may seem anomalous that the amount to be included in the gross estate exceeds the actual net recovery from the wrongul death action, the latter is not controlling in the determination of date of death value." Id. at 288.

In Estate of Davis v. Commissioner, 65 T.C.M. 2365 (1993), the Tax Court addressed the issue of how to value a cause of action which remained unsettled at the decedent's death. In Davis, the decedent initiated a lawsuit against Merrill Lynch for churning her account. The Court stated that subsequent events are not considered in fixing fair market value, except to the extent that they were reasonably foreseeable at the date of valuation. The court began with the amount of the claim as if there were no contest and then discounted the claim for 1) costs of litigation, 2) hazards of litigation, and 3) time delay in receiving the funds. The court used only a limited discount for the hazards of litigation because of the relative ease of proving the churning would result only in negligible risks or hazards of success in litigating.

The subject case is similar for the facts show that Delaware Solid Waste Authority was guilty of charging exorbitant and uncompetitive tipping fees and restricted the free flow of commerce amongst the States. Further evidence of the fact that the plaintiffs had a good case is the fact that the case was settled prior to trial with a payment of $900,000 to Walter S. Bandurski, Inc. Costs of litigation are included in the settlement. The only reduction that should be made to the settlement proceeds is the time delay in receiving the funds.

The representative of the estate is relying primarily on a line of cases that conclude that postdeath events may not be used in evaluating claims or deductions against an estate, Ithaca Trust Co. v. United States, 279 U.S. 151 (1929); Ballantine v. Tomlinson, 293 F.2d 311 (5th Cir., 1961); Propstra v. United States 680 F.2d 1248 (9th Cir., 1982); and Estate of Evelyn M. McMorris v. Commissioner, 243 F.3d 1254 (10th Cir., 2001). Section 2053 simply provides that such claims are deductible in determining the taxable estate if they are legally enforceable, i.e., are as allowable by the laws of the jurisdiction, whether within or without the United States, in which the estate is being administered. Treasury regulation section 20.2053-4 states the amounts that may be deducted as claims against a decedent's estate are such only as represent personal obligations of the decedent existing at the time of his death, whether or not then matured, and interest thereon which had accrued at the time of death. The Court of Appeals has acknowledged that the "law is clear that post-death events are relevant when computing the deduction to be taken for disputed or contingent claims." Propstra v. United States, supra at 1253. The court held that section 2053 precludes the consideration of post-death events in computing the value of certain and enforceable claims against an estate. This line of cases is not applicable when valuing assets of the estate.

Unsettled litigation which is an asset of the estate is included in the gross estate at its estimated fair market value at date of death, notwithstanding that it may be contingent and/or uncertain as to amount. See IRC sections 2032 and 2033. In contrast see Reg. Section 20.2053-1(b)(3) which disallows a deduction from the estate that is taken upon the basis of a vague or uncertain estimate. The date-of-death valuation rule applies to a deduction for a claim against the estate under IRC section 2053-1(a)(3). As a a result, events which occur after the decedent's death may not be considered in valuing that deduction. The cases hold that in valuing assets of

a decedent, subsequent events can be used to determine fair market value particularly when valuing the fair market value of a pending lawsuit as of date of death.

Estate is relying on Welch v. Commisisoner, 6th Cir. No. 98-2007, March 2, 2000, in which the court held that potential built-in capital gains tax liability should be considered in valuing an asset. This tax in reality may never be paid; therefore, it is an estimate and not a certain event. The estate also relied on First National Bank of Kenosha v. United States, 763 R.2d 891 (7th Cir., 1985) in which the court allowed evidence of actual sales prices received 21 months after the date of death so long as the sale occurred within a reasonable time after death and no intervening events drastically changed the value of the property. Settlement of the subject claim within 20 months of the filing of the lawsuit is certainly a reasonable length of time. There were no intervening events that drastically changed the value of the asset. The lawsuit is not a subsequent event but was ongoing at date of death. It was not beyond the contemplation of the parties on the relevant valuation date.

Estate is also relying on Estate of Mary B. Bull v. Commissioner, T.C. Memo 2001-92 (April 13, 2001). The Bull case can be distinguished based on the fact that at date of death the estate had no right to insurance reimbursement and no obligation to pay to complete the decedent's residence which was destroyed by fire and was being retored at the time of her death. The court stated that the situation is unlike the situation "where a contingent legal fee was includable in an estate based on the rationale that it had been earned and a claim existed at the time of death." In the subject case, the claim existed at date of death and is includible in the decedent's estate at its fair market value.

The estate has not presented any evidence as to the fair market value of the class action claim as of date of death of the decedent. The class action claim is included at the present value based on a 6.800% rate which is the applicable federal rate for August 1998, see Revenue Ruling 98-36. The present value for proceeds of $360,000 received 17 months after date of death is $315,617.

8

| Form 886-A (Rev. April 1968) (CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT |
|---|---|---|
| NAME OF TAXPAYER  Estate of Barbara A. Bandurski | | YEAR/PERIOD ENDED  8/ 7/1998 |

|  | Returned | Corrected |
|---|---:|---:|
| Sch. J, Funeral & Administration Ex. | | |
| B.1 - Executrix's Commissions | 45,315.00 | 109,472.61 |
| B.2 - Attorney fees | 35,000.00 | 135,000.00 |
| B.4 - The Bayard Firm | 625.00 | 7,600.00 |
| B.11 - Moving Personal Property | 4,868.00 | 3,417.00 |
| B.20 - Interest on the Deficiency | 0.00 | 15,976.74 |
| B.21 - Phase II Environmental Eval. | 0.00 | 6,216.16 |
| B.22 - James Dalle Pazze, Esquire | 0.00 | 890.00 |
| Total of these items | 85,808.00 | 278,572.51 |
|  |  | 85,808.00 |
| Increase to schedule |  | 192,764.51 |

The amounts deductible from a decedent's gross estate as "administration expenses" are limited to such expenses as are actually incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. The expenses contemplated in the law are such only as attend the settlement of an estate and the transfer of the property to individual beneficiaries or to a trustee. Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heir, legatees, or devisees, may not be taken as deductions. Treas. Reg. 20.2053-3(a).

An adjustment has been provided to allow a deduction for Federal interest computed to be due and owing on the Estate tax deficiency, pursuant to the provisions of Revenue Ruling 79-252, 1979-2 C.B. 333.

This deduction is only allowable in AGREED issue cases.

Your letter of May 9, 2002, included an additional expense of a finder's fee of $36,000 paid to Michael Bandurski for his services in identifying and collecting the Wilmington Solid Waste Authority settlement. I am not allowing this expense because it is too late to consider additional issues for the statute of limitations runs November 8, 2002. I have discussed this issue with the Acting Group Manager. Furthermore, Michael Bandurski was notified of the claim when Walter S. Bandurski, Inc., was added to the case upon the filing of Amended Complaint in October 1998. The 706 was filed November 8, 1999, and the class action was not disclosed. Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heir, legatees, or devisees, may not be taken as deductions. Treas. Reg. 20.2053-3(a).

| Form 886-A<br>(Rev. April 1968)(CG) | EXPLANATION OF ITEMS | SCHEDULE NO. OR EXHIBIT<br>-- |
|---|---|---|
| NAME OF TAXPAYER<br>Estate of Barbara A. Bandurski | | YEAR/PERIOD ENDED<br>8/ 7/1998 |

|  | Returned | Corrected |
|---|---|---|
| **Sch. K, Debts of Decedent** | | |
| Item 38 - WSB Corp. Income Taxes | 0.00 | 16,800.00 |
| Total of these items | 0.00 | 16,800.00<br>0.00 |
| Increase to schedule | | 16,800.00 |

Estate paid $16,800 of $42,000 settlement as former stockholder of Walter S. Bandurski, Inc., to the U.S. Department of Justice Tax Division for income taxes.

Estate of: BB,  DD:  8  7 1998
File Name: C:\Program Files\EST3\Bb.et3
Inter-Est Version 3.00, Release 78, (Standard Output) (#1373)
Date and time of run: Friday, May 10, 2002, 10:59 AM

## MAIN PRINTOUT SECTION

| | | |
|---|---:|---:|
| Gross Estate | | 2,583,894.00 |
| Sch. JK&L (before interrelated) | 441,750.77 | |
| Int, Federal | 15,976.74 | |
| Debts & Expenses | | 457,727.51 |
| Marital Deduction | | 0.00 |
| Charitable Deduction | | 0.00 |
| Total Deductions | | 457,727.51 |
| Taxable Estate | | 2,126,166.49 |
| Adjusted Taxable Gifts | | 0.00 |
| Total Amount Drawing Tax | | 2,126,166.49 |
| Tentative Tax | | 842,621.58 |
| Aggregate Gift Tax Payable | | 0.00 |
| Tax before Unified Credit | | 842,621.58 |
| Unified Credit from Table | 202,050.00 | |
| Adjustment to Unified Credit | 0.00 | |
| Net Unified Credit | | 202,050.00 |
| Tax before SDTC | | 640,571.58 |
| State Death Tax Credit | | 108,893.32 |
| Net Tax after State Death Tax Credit | | 531,678.26 |
| Gift Tax Credit | 0.00 | |
| Foreign Death Tax Credit (Statutory) | 0.00 | |
| Prior Transfer Credit | 0.00 | |
| Foreign Death Tax Credit (Treaty) | 0.00 | |
| Total Credits | | 0.00 |
| Estate Tax | | 531,678.26 |
| Generation Skipping Transfer Tax | | 0.00 |
| Total Federal Tax | | 531,678.26 |

## FEDERAL INTEREST OPTION SELECTED

Interest Table File: C:\Program Files\EST3\Federal.IT4
Interest Table Description: Federal (RProc 95-17)(12/01)
Special Interest Rate Used (old):   4.0000000 %
Special Interest Rate Used (new):   2.0000000 %
INTEREST FACTORS USED

| | Regular (100%) | Special (old) | Refund |
|---|---|---|---|
| Pd # 1  c | 5.1006181 % | 2.5187322 % | 5.1006181 % |
| Pd # 2  c | 21.1852403 % | 10.2684955 % | 21.1852403 % |

PART 1

| | Date | Tax Pmt. | Int. Pmt. | |
|---|---|---|---|---|
| Due Date | 5  7 1999 | 590,000.00 | 0.00 | P |
| Pd # 1 | 12 20 1999 | <136,711.00> | 0.00 | |
| Pd # 2 | 5 31 2002 | ———— | ———— | |

P = Period entry for Interest on Penalty Computation

PART 2

| | Starting Balance | Tax Paid | Interest Balance | Applied To Balance |
|---|---|---|---|---|
| Due Date | 531,678.26 | 590,000.00 | 0.00 | 590,000.00 |

11

Estate of: BB, DD:  8  7 1998                                                    Page 2

| | | | | |
|---|---|---|---|---|
| Pd # 1 | <58,321.74> | <136,711.00> | <2,974.77> | <133,736.23> |
| Pd # 2 | 75,414.49 | 0.00 | 15,976.74 | 0.00 |

PART 3

| | Interest Drawing Int. | Total Amount Drawing Int. | Interest Factor | Interest |
|---|---|---|---|---|
| Pd # 1 | 0.00 | <58,321.74> | 5.1006181 % | 0.00 |
| Pd # 2 | 0.00 | 75,414.49 | 21.1852403 % | 15,976.74 |
| Total Interest Deduction | | | | 15,976.74 |

LAST LINE OF PRINTOUT

12