1700 WEST 14TH STREET
WILMINGTON, DE 19806
TELEPHONE  302.655.8181
FACSIMILE  302.655.8190
WWW.GGELAW.COM

GG&E   GOLLATZ
       GRIFFIN
       & EWING

ATTORNEYS - AT - LAW

SHERIDEN T. BLACK, Esquire
sblack@ggelaw.com

July 25, 2006

Honorable Gregory M. Sleet
J. Caleb Boggs Federal Building
844 North King Street
Room 4324
Lockbox 19
Wilmington, Delaware 19801

Re:   **Bandurski v. Internal Revenue Service**
      **Case # 1:05-cv-00291-GMS**

Dear Judge Sleet:

Pursuant to Local Rule 7.1.2(c), I enclose a copy of *Stevens v. U.S.*, No. 05-03967, 2006 U.S. Dist. LEXIS 45611 (N.D. Cal. June 26, 2006) to supplement the July 14, 2006 Estate of Barbara A. Bandurski's Opposition to the United States' Motion for Partial Summary Judgment. This case discusses the informal claim doctrine and finds it applicable in the same context as the one now before the Court. The *Stevens* case just came to my attention through one of the tax subscription services, and I have been told by a representative at Lexis that it probably was not available on Lexis as of July 14, because of the one-to two-week minimum load time for new decisions from that District.

The *Stevens* court held that an estate's telephone calls to the IRS, advising of the estate's intent to seek a refund, constituted timely informal claims under 26 U.S.C. § 6511(b)(2)(A), because the estate alleged that the IRS internally documented those calls. The instant case presents a much clearer informal claim than *Stevens*, because there is no need to prove a writing. As discussed at pp. 16-20 of the Barbara Bandurski Estate's Opposition Brief, the Estate wrote a letter advising the IRS that it intended to seek a refund, of not only the deficiency amount but also of additional attorneys' fees and administrative expenses incurred in prosecuting the refund claim, within three years of filing its Estate Tax Return, Form 706, and paying the $453,289

Honorable Gregory M. Sleet
July 25, 2006
**Re:** Bandurski v. Internal Revenue Service, Case # 1:05-cv-00291-GMS
Page 2

tax. Under the holding in *Stevens*, this letter would constitute a timely informal refund claim under 26 U.S.C. § 6511(b)(2)(A).

Respectfully,

*Sheriden J. Black/hep*

Sheriden T. Black, Esquire

cc:  Mason E. Turner, Jr., Esquire
  Jennifer L. Vozne, Esquire
  Edwina L. Jones, Esquire
  David A. Breen, Esquire
  Ellen Slights, Esquire
  Gerald A. Role, Esquire

LEXSEE 2006 U.S. DIST LEXIS 45611

**RICHARD O. STEVENS, Trustee of The Gloria S. Stevens Trust, and Named Executor of the Gloria S. Keesey Stevens Estate, Plaintiff, v. UNITED STATES OF AMERICA, Defendant.**

No. 05-03967 SC

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

2006 U.S. Dist. LEXIS 45611

June 26, 2006, Decided
June 26, 2006, Filed

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant United States filed a motion for summary judgment in plaintiff taxpayer's action under 26 U.S.C.S. §§ 7422, 6511 claiming a refund in overpaid estate taxes.

**OVERVIEW:** Six months after his mother died, plaintiff submitted a Form 4768 Application for Extension to File a Return along with a check for the amount of the estimated estate taxes. Although the Internal Revenue Service (IRS) granted plaintiff a six-month extension to file the estate tax return, plaintiff did not file the return, which claimed a refund, until more than three years and eight months after submitting the estimated taxes. Defendant argued that the refund claim was too late under 26 U.S.C.S. § 6511(b)(2)(A) because it was not submitted within three years and six months after the original payment. Plaintiff argued that the three and one-half year look-back provision of § 6511(b)(2)(A) should be measured from three dates on which plaintiff made "informal claims" for refunds. The court concluded that the informal claim doctrine applied to § 6511(b)(2)(A) and that internal government documents alone could suffice as the written component of the alleged informal claims. The court found that unresolved questions of material fact precluded summary judgment because plaintiff claimed that his informal claims were documented by IRS agents in their files and by computer entries.

**OUTCOME:** The court denied defendant's motion for summary judgment without prejudice to either party's right to file a similar motion after discovery.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards > Appropriateness*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN1] Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A material fact is one that might affect the outcome of the suit under the governing law.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants*
*Civil Procedure > Summary Judgment > Evidence*
*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
[HN2] The moving party always bears the initial responsibility of informing the district court of the basis for its summary judgment motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. The non-moving party, in turn, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). However, should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment. Fed. R. Civ. P. 56(f). Further, whatever evidence the non-moving party submits is to be believed, and all justifiable inferences are to be drawn in its favor. Ultimately, summary judgment will not lie if the dispute about a material fact

Case 1:05-cv-00291-GMS    Document 33    Filed 07/25/2006    Page 4 of 11

Page 2
2006 U.S. Dist. LEXIS 45611, *

is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

***Tax Law > Federal Tax Administration & Procedure > Tax Credits & Liabilities > Credits, Overassessments & Refunds (IRC secs. 6401-6427) > Limitations on Credits & Refunds***
[HN3] See *26 U.S.C.S. § 6511(b)(2)*.

***Tax Law > Federal Tax Administration & Procedure > Tax Credits & Liabilities > Credits, Overassessments & Refunds (IRC secs. 6401-6427) > General Overview***
[HN4] In Kales, the United States Supreme Court articulated the basic rule which henceforth came to be known as the "informal claim doctrine": A notice fairly advising the Internal Revenue Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because too general or because it does not comply with formal requirements of the statute and regulations, will nevertheless be treated as a claim, where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period. In Lundy, the Supreme Court reaffirmed as a general matter that a claim that does not comply with federal regulations might suffice to toll the limitations periods under the Tax Code.

***Tax Law > Federal Tax Administration & Procedure > Tax Credits & Liabilities > Credits, Overassessments & Refunds (IRC secs. 6401-6427) > General Overview***
[HN5] The United States Court of Appeals for the Ninth Circuit has cited with approval Judge Posner's discussion in BCS Financial Corp. of the two basic policy foundations for the informal claim doctrine which guide its application. The first is to provide a means for judges to excuse harmless non-compliance with the formalities prescribed for refund claims by Treasury regulation so as to prevent an absurd rigorism that would make the taxpayer's utterly harmless mistake the basis for forfeiting a claim conceded to be substantively valid. The second basis is based on the idea of waiver. The question in an informal-claim case is when the "claim" was filed. The Tax Code does not say. The Treasury is left free to answer this question how it pleases, including by delegation to the Internal Revenue Service (IRS) to create a baseline rule, that can, in certain instances, be waived. Such a waiver is purely regulatory and so runs no risk of thwarting any legislative design, thus keeping it within the bounds set by Brockamp. In this context, however, waiver differs only a hair's breadth from estoppel, with courts using it like estoppel to prevent IRS agents from lulling taxpayers into missing the three-year deadline. Such applications of the doctrine are in tension with the rule disfavoring estoppel against the government, which suggests caution in its application.

***Tax Law > Federal Tax Administration & Procedure > Tax Credits & Liabilities > Credits, Overassessments & Refunds (IRC secs. 6401-6427) > General Overview***
***Tax Law > Federal Tax Administration & Procedure > Tax Credits & Liabilities > Credits, Overassessments & Refunds (IRC secs. 6401-6427) > Actions for Recovery of Erroneous Refunds***
***Tax Law > Federal Tax Administration & Procedure > Tax Credits & Liabilities > Credits, Overassessments & Refunds (IRC secs. 6401-6427) > Limitations on Credits & Refunds***
[HN6] Regardless whether the issue arises in the context of *26 U.S.C.S. § 6511(a)* or *26 U.S.C.S. § 6511(b)(2)(A)*, the question in an informal-claim case is when the "claim" was filed and constitutes a gloss on the text of a Treasury regulation, specifying the form and contents of a claim for a refund, and so, in either case raises the same policy issues. Therefore, the informal claim doctrine applies equally in the context of cases turning on *26 U.S.C.S. § 6511(b)(2)(A)* as it does in cases turning on *26 U.S.C.S. § 6511(a)*.

***Tax Law > Federal Tax Administration & Procedure > Tax Credits & Liabilities > Credits, Overassessments & Refunds (IRC secs. 6401-6427) > General Overview***
[HN7] Whether a taxpayer has filed an adequate informal claim is by its nature an extremely contextual question. A court that is required to determine whether an adequate informal claim has been filed should look at all the facts and circumstances.

***Tax Law > Federal Tax Administration & Procedure > Tax Credits & Liabilities > Credits, Overassessments & Refunds (IRC secs. 6401-6427) > General Overview***
[HN8] In Pala, the United States Court of Appeals for the Fifth Circuit noted that no hard and fast rules exist as to what constitutes an adequate informal claim and that whether an informal claim is adequate ultimately depends on whether under the facts constituting it, the Internal Revenue Commissioner knew, or should have known, that a claim was being made. The Fifth Circuit nonetheless articulated on the basis of past decisions a basic four part test. An informal claim is adequate if it: (1) was filed within the statutory period; (2) put the Internal Revenue Service (IRS) on notice that taxpayer believes an erroneous tax has been assessed; (3) describes the tax and year with sufficient particularity to allow the IRS to undertake an investigation; and (4) while an informal claim may include an oral communications, it must have a written component. Finally, any such informal claim must have been

followed by a formal claim which remedied any defects in the informal claim. In the absence of any standard articulated by the United States Court of Appeals for the Ninth Circuit, the United States District Court for the Northern District of California adopts this standard as the most appropriate under the law.

*Tax Law > Federal Tax Administration & Procedure > Tax Credits & Liabilities > Credits, Overassessments & Refunds (IRC secs. 6401-6427) > General Overview*

[HN9] The analysis of the adequacy of the written component of an alleged informal tax refund claim is fundamentally contextual. The proper analysis should focus on whether or not in the context of a particular case, a writing can be construed as a claim of a right. Further, as Pala makes clear, both the written and oral components of the refund claim are evaluated together as a whole to determine the adequacy of the claim. Several cases have addressed whether internal government documents alone can suffice as the written component. The consensus among them is that it can.

**COUNSEL:** [*1] For Richard O. Stevens, Trustee of the Gloria S. Stevens Trust, and Named Executor of Gloria S. Keesey Stevens Estate, Plaintiff: James Edward Stevens, San Francisco, CA.

For United States of America, Defendant: Jay R. Weill, U.S. Attorney's Office, San Francisco, CA.

**JUDGES:** Samuel Conti, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Samuel Conti

**OPINION:**

[EDITOR'S NOTE: THE ORIGINAL SOURCE CONTAINED ILLEGIBLE WORDS AND/OR MISSING TEXT. THE LEXIS SERVICE WILL PLACE THE CORRECTED VERSION ON-LINE UPON RECEIPT.]

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I. INTRODUCTION**

Plaintiff Richard O. Stevens, Trustee of the Gloria S. Stevens Trust, and Named Executor of Gloria S. Keesey Stevens Estate ("Plaintiff" or "Estate"), filed this action against Defendant United States of America ("Defendant" or "Government"), under *28 U.S.C. § 1346, 26 U.S.C. § § 7422* and *6511*, claiming a refund of $ 65,481.89 in overpaid estate taxes.

Defendant now moves for summary judgment on the sole ground that under *26 U.S.C. § 6511(b) (2) (A)*, Plaintiff submitted its refund claim to the Internal Revenue [*2] Service ("IRS") too late to reach any overpayment remitted on November 16, 1998. Defendant's Memorandum in Support of Motion for Summary Judgment at 3 ("Def.'s Mem."). For the reasons stated herein, the Court DENIES Defendant's motion WITHOUT PREJUDICE to either party's right to file a similar motion after discovery has been conducted.

**II. BACKGROUND**

The following basic facts are uncontested. On February 16, 1998, Plaintiff's mother, Gloria Stevens, passed away. Plaintiff Richard O. Stevens' Declaration in Support of Opposition to Government's Motion for Summary Judgment at 2 ("Pl.'s Decl."). Thus, unless granted an extension, the Estate was required to file a Form 706 United States Estate Tax Return by November 16, 1998. Id., Ex. A.

On that date, Plaintiff sent the IRS a completed Form 4768 Application for Extension to File a Return, along with a check for $ 162,109.58, the amount Plaintiff listed on the form's line for the "[a]mount of estate and GST taxes estimated to be due." Id. The IRS granted Plaintiff a six month extension, setting May 16, 1999 as the new deadline for filing. Id. at 2.

Plaintiff, however, did not file the return until July 30, 2002. [*3] Id., Ex. B at 1. The return claimed a "refund payable to: Richard O. Stevens, Trustee Gloria S. Stevens Trust, of $ 65,481.89." Id.

On October 3, 2003, the IRS sent a letter to Plaintiff, denying his refund claim. Id., Ex. D. The letter stated the following reason for the denial:

> You filed your return late, more than 3 years after the due date. Your return showed an overpayment. In order to claim that overpayment as a refund or credit, the law requires you to file your return on time, within 3 years from its due date.

Id. at 1. n1 On September 30, 2005, Plaintiff filed the instant complaint in this Court.

> n1 This reason misstates the law in effect at the time and currently, *Omohundro v. United States, 300 F.3d 1065, 1068 (9th Cir. 2002)*(abrogating *Miller v. United States, 38 F.3d 473 (9th Cir. 1994)*, and established that filing a return late does not foreclose a taxpayer's opportunity under *Section 6511(a)* to file a refund claim within 3 years of the date the return was filed). The reason no longer forms a basis for the

Case 1:05-cv-00291-GMS   Document 33   Filed 07/25/2006   Page 6 of 11

Page 4
2006 U.S. Dist. LEXIS 45611, *

Government's arguments. Def.'s Mem.

[*4]

In addition to the uncontested official contacts between the IRS and Plaintiff detailed above, Plaintiff also asserts a series of less formal contacts between himself or another in his family and the IRS, Complaint of Richard O. Stevens, Trustees of The Gloria S. Stevens Trust, and Named Executor of Gloria S. Keesey Stevens Estate at 2 ("Compl."), which the Government denies. Answer of the United States of America at 2 ("Answer"). For the purpose of evaluating Defendant's motion, the Court accepts as true evidence Plaintiff presents in these assertions' support. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*.

The first informal contact occurred on May 13, 1999, three days before the Official Extension expired; Plaintiff's wife, Joan Stevens, called "Mr. Richmond (IRS employee ID #4163)." Pl.'s Decl. at 2. In the course of the conversation, Ms. Stevens told Mr. Richmond that the Estate "had largely overpaid the tax on 11/16/98, and fully expected a refund." Id. Mr. Richmond told her in response "that the estate would not suffer any loss in any way so long as the total tax due had already been paid." Id. Notes taken by Ms. Stevens during the call [*5] appear to reflect further statements by Mr. Richmond that while no additional extensions of the filing deadline were supposed to be allowed, the estate could try sending a letter "to Fresno office," explaining the circumstances and requesting more time. Id., Ex. E. There is no indication the Estate ever sent such a letter.

On January 28, 2002, Plaintiff received a letter "from IRS Revenue Officer Nancy Wong Identification No. 68-11603 . . . asking to meet with [Plaintiff] to discuss [Plaintiff's] failure to yet file the 706 return." Id. at 3. n2

n2 Plaintiff's Declaration lists two other written communications from the IRS that the Estate received prior to the Official Extension's expiration. Both informed the Estate that it had a "credit balance of $ 162,109" and attached forms on which the Estate was asked to indicate how it would like to deal with the credit. Pl.'s Decl. at 2. The forms included an option for the taxpayer to choose that stated: "I want a refund of the credit balance." Id., Exs. F-1B, F-2B. Plaintiff did not complete and return either form because he could not find an option on the forms which reflected his intent to file a return later, have part of the credit applied to satisfy his then determined liability, and the remainder refunded. Id. at 3.

[*6]

In response to the letter, Plaintiff made two calls to IRS Officer Wong, on February 11, 2002 and April 25, 2002. Id. at 3-4. In the course of these calls, Plaintiff explained to Officer Wong that the family had experienced a string of tragic events, including the sequential deaths of "our father, mother, sister, and uncle (each of whom lived in our family home)," all of whom "had very long term healthcare cancer problems preceding their deaths" and were cared for at home. Id. at 4. Plaintiff also explained how, in addition, his "brother had prostate cancer and surgery therefor," part of the family's business had suffered a "major fire" and thus had closed, while the business's other part "was in severe decline." Id. Plaintiff further informed Officer Wong that "the estate had greatly overpaid any estate tax that would ultimately be found due . . . and we were expecting a refund for any unused credit which the estate had paid on account." Id. On these bases, Plaintiff "requested additional time to file the 706 with its formal refund claim." Id. In response, "Ms. Wong acknowledged [Plaintiff's] statements and said she would wait until 5/31/02 to receive the 706 return. [*7] " Id.

On May 29, 2002, Plaintiff sent Officer Wong a letter in which he thanked her for "extending the time to file the death tax return . . . to May 31, 2002," but, as a result of the recent death of Plaintiff's sister, requested a further extension to July 31, 2002. Id., Ex. C. The letter also stated: "Please remember that we have already made substantial prepayment on account and anticipate receiving a refund." Id. Officer Wong sent a postcard in response, acknowledging that she would "wait for form 706 until 7/31/02." Id., Ex. G.

In light of this series of communications with Mr. Richmond and Officer Wong, Plaintiff states that he was "surprised," when he subsequently received the IRS's denial of his refund claim. Id. at 5. In particular, he notes "previous assurances . . . [by] IRS employees . . . that there would be no penalties whatsoever for filing a late return so long as the estate had already fully paid its tax liability," the agreement worked out with Officer Wong "to obtain extensions until 7/31/2002 to file the 706 return," and the failure by both Officer Wong and Mr. Richmond to "advise[] [the Estate] that the estate had a right to refund claim [*8] only if filed within 3 years of the return due date." Id. at 5-6. Together these actions, Plaintiff states, "lulled [him] into a sense of complacency and lack of urgency." Id.

Regarding all of the oral communications between the Estate and IRS employees just described, Plaintiff states each was "contemporaneously documented in writing by the IRS agents, in their files, both formal and informal, and by computer entries, during our telephone conversations." Id. at 1.

### III. STANDARD OF REVIEW

[HN1] Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *F.R.C.P. 56(c)*. A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson, 477 U.S. at 247-48 (1986)*.

[HN2] The moving party "always bears the initial responsibility of informing the District Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to [*9] interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. The non-moving party, in turn, "must set forth specific facts showing that there is a genuine issue for trial." *F.R.C.P. 56(e)*. However, "[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment." *F.R.C.P. 56(f)*. Further, whatever evidence the non-moving party submits "is to be believed, and all justifiable inferences are to be drawn in its favor." *Anderson, 477 U.S. at 255*. Ultimately, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id. at 248*.

## IV. DISCUSSION

Both parties agree that the sole issue in this case is the application [*10] of the look-back provision of *Section 6511(b)(2)(A)*. See Def.'s Mem. at 3; Plaintiff's Memorandum in Opposition to Government's Motion for Summary Judgment at 2 ("Pl.'s Mem."). n3

---

n3 Though neither party has raised the issue, the court notes the Ninth Circuit Court of Appeals has held *Section 6511(b)(2)(A)* "is jurisdictional." *Zeier v. IRS, 80 F.3d 1360, 1364 (9th Cir. 1996)*. Zeier does not discuss the basis for this holding except a citation to *Comm'r v. Lundy, 516 U.S. 235, 238-241, 116 S. Ct. 647, 650-51, 133 L. Ed. 2d 611 (1996)*, and the court's only subsequent holding in accord, an unpublished opinion, is similarly opaque. *Bhatacharya v. Internal Revenue Comm'r, No. CV-04-01563, 2006 WL 1381608 (9th. Cir., May 15, 2006)*.

---

In Comm'r of Internal Revenue v. Lundy, the Supreme Court noted, with reference to 26 U.S. § 7422(a), that "provisions governing refund suits in United States District Court or United States Court of Claims . . . make timely filing of a refund claim a jurisdictional prerequisite to bringing suit. *516 U.S. 235, 241, 116 S. Ct. 647, 133 L. Ed. 2d 611 (1996)* (emphasis added). Section 7422(a) states: "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax . . . until a claim for refund or credit has been duly filed with the Secretary." *26 U.S.C. § 7422(a)*.

*Internal Revenue Code, Sections 6511(a)* and *6532* govern whether a claim for refund or credit taxes paid is timely filed. *26 U.S.C. § 6511(a)* ("Claim for credit or refund of an overpayment of any tax . . . shall be filed by the taxpayer within 3 years from the time the return was filed or two years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within two years from the time the tax was paid."); *26 U.S.C. § 6532(a)(1)* ("No suit or proceeding under *section 7422(a)* for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of the filing the claim under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.")

In contrast, *6511(b)(2)(A)* addresses the "[l]imit on the amount of credit or refund" that such a claim can demand, rather than when a refund claim must be filed in order to be timely. *26 U.S.C. 6511(b)(2)*.

The Government does not argue to the Court that Plaintiff has failed to timely file its refund claim under *Section 6511(a)* or *Section 6532(a)(1)*, and the Court on its own finds that Plaintiff has met the requirements of both. Regarding *Section 6511(b)(2)(A)*, as the discussion below makes clear, whether Plaintiff will be able reach any overpayment paid on November 16, 1998 will depend on whether the Estate made an adequate informal refund claim. It is well established that an adequate informal refund claim can satisfy jurisdictional requirements of timely filing. *Lundy, 516 U.S. at 250*. Thus, accepting that *Section 6511(b)(2)(A)* creates a jurisdictional bar to Plaintiff's case, Plaintiff may clear that bar with proof that the estate submitted an adequate informal claim, the same thing it will need to prevail on the merits.

[*11]

Case 1:05-cv-00291-GMS    Document 33    Filed 07/25/2006    Page 8 of 11

Page 6
2006 U.S. Dist. LEXIS 45611, *

*Section 6511(b)(2)(A)* limits the amount of money a refund claim timely filed under *Section 6511(a)* may seek, according to how long after an overpayment the refund claim is filed:

> [HN3] If the claim was filed by the taxpayer during the 3-year period prescribed by section (a), the amount of the credit or refund shall not exceed the portion of tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return.

*26 U.S.C. § 6511(b)(2)*.

The Government argues application of this provision to Plaintiff's refund claim is quite simple: The Estate made its payment on November 16, 1998 and filed its claim for refund on July 30, 2002. The Estate was granted a six month extension to file, so it could look back three and half years in its refund claim. The Estate's refund claim, however, was filed more than three and a half years after its payment on November 16, 1998, so the refund claim cannot reach any overpayment made at that time. Def.'s Mem. at 3.

Plaintiff argues, however, that these are not the only two relevant dates; rather, also relevant are "informal claims" for [*12] a refund made by the Estate on May 13, 1999, February 11, 2002, and April 25, 2002. The three and a half year look back period of should be measured from these dates, which would entitle the Estate to a refund of any overpayment made on November 16, 1998. Pl.'s Mem. at 2.

Because the Court finds that the "informal claim doctrine" could apply to this case and that a reasonable jury could find, on the basis of the evidence presented by Plaintiff and the evidence which Plaintiff claims exists but to which it does not have access, that Plaintiff made an adequate informal claim within three and a half years of the Estate's November 16, 1998 payment, the Court finds that there are unresolved questions of material fact which preclude summary judgment at this time.

*Informal claim Doctrine: Basic Rule and Policy Bases*

[HN4] In United States v. Kales, the Supreme Court articulated the basic rule which henceforth came to be known as the "informal claim doctrine":

> [A] notice fairly advising the Commissioner of the [ILLEGIBLE SENTENCE] comply with formal regulations, nevertheless will be treated as a claim where formal defects and lack of specificity have been remedied by amendment [*13] filed after the lapse of the statutory period.

*314 U.S. 186, 194, 62 S. Ct. 214, 86 L. Ed. 132, 1941-2 C.B. 214 (1941)*; see also *Lundy, 516 U.S. at 250* (reaffirming as a general matter "that a claim that does not comply with federal regulations might suffice to toll the limitations periods under the Tax Code.").

[HN5] The Ninth Circuit Court of Appeals has cited with approval Judge Posner's discussion in *BCS Fin. Corp. v. United States, 118 F.3d 522, 524-526 (7th Cir. 1997)* of the two basic policy foundations for the doctrine which guide its application. *Comm'r v. Ewing, 439 F.3d 1009, 1015 (9th. Cir. 2006)*.

The first is to provide a means for judges to "excus[e] harmless non-compliance with the formalities prescribed for refund claims by Treasury regulation," so as to prevent an "absurd rigorism" that would "make the taxpayer's utterly harmless mistake the basis for forfeiting a claim conceded to be substantively valid." *Id. at 524*; see also *Tucker v. Alexander, 275 U.S. 228, 231, 48 S. Ct. 45, 72 L. Ed. 253 (1927)* (stating that the tax code and regulations "are devised, not as traps for the unwary, but for the convenience of government officials in [*14] passing upon claims for refund and in preparing for trial.")

The second basis (related to the quoted sentiment in Tucker above) is based on the idea of waiver. As Judge Posner explains:

> The question in an informal-claim case is when the "claim" was filed. The tax code does not say. Congress has left the question to be answered by the Treasury.

*Id. at 525*. The Treasury is left free to answer this question how it pleases, including by delegation to the IRS to define circumstantially in certain cases, or, in other words, to create a baseline rule that can, in certain instances, be waived. Id. Such a waiver is purely regulatory and so runs no risk of thwarting any "legislative design," thus keeping it within the bounds set by *United States v. Brockamp, 519 U.S. 347, 117 S. Ct. 849, 136 L. Ed. 2d 818 (1997)* and related decisions. Id.

Judge Posner cautions, however, that in this context "[w]aiver . . . differs only a hair's breadth from estoppel," with courts "us[ing] it like estoppel to prevent IRS agents

Case 1:05-cv-00291-GMS    Document 33    Filed 07/25/2006    Page 9 of 11

Page 7
2006 U.S. Dist. LEXIS 45611, *

from lulling taxpayers into missing the three-year deadline." *Id. at 526*. Such applications of the doctrine are in tension with the rule disfavoring estoppel against [*15] the government, "especially when it results . . . in an unauthorized expenditure of government monies," *id.* (citing *OPM v. Richmond, 496 U.S. 414, 110 S. Ct. 2465, 110 L. Ed. 2d 387 (1990)*, which suggests caution in its application.

*Standard for Determining Adequacy of an Informal Claim* n4

n4 While the Court is not aware of any Ninth Circuit case in which the informal claim doctrine was applied in the context of *Section 6511(b)(2)(A)*, as opposed to *Section 6511(a)*, its applicability in the former has been recognized in other circuits. See, e.g., *Kaffenberger v. United States, 314 F.3d 944, 954-56 (8th Cir. 2003)*(cited by the Ninth Circuit Court of Appeals with approval in *Ewing. 439 F.3d 1009, 1015)*; *Willis v. Dep't of Treasury, 848 F. Supp. 1127, 1127 (S.D.N.Y. 1994)*; But see, *Wertz v. United States, 51 Fed.Cl. 443 (2002)*. Moreover, the Court notes that, [HN6] regardless whether the issue arises in the context of *Section 6511(a)* or *Section 6511(b)(2)(A)*, "[t]he question in an informal-claim case is when the 'claim' was filed," *BCS Fin. Corp., 118 F.3d at 525*, and constitutes "a gloss on the text of a Treasury regulation, specifying the form and contents of a claim for a refund," and so, in either case raises the same policy issues discussed above. *Id. at 527*. The Court, therefore, finds that the informal claim doctrine applies equally in the context of cases turning on *Section 6511(b)(2)(A)* as it does in cases turning on *Section 6511(a)*.

[*16]

As might be expected, [HN7] whether a taxpayer has filed an adequate informal claim is by its nature an extremely contextual question. *Estate of Hale v. United States, 876 F.2d 1258, 1262 (6th Cir. 1989)* ("A court required to determine whether an adequate informal claim has been filed should look at all the facts and circumstances."); *United States v. Commer. Nat'l Bank, 874 F.2d 1165, 1171 (7th Cir. 1989)*. Indeed, at least one court has gone so far as to state "no set rules can be elucidated as to what constitutes an adequate informal claim; rather, each case must be determined based on its own unique set of facts." *New England Elec. Sys. v. United States, 32 Fed. Cl. 636 (Ct. Cl. 1995)*. That said, a review of cases in which courts found adequate informal claims to have been made reveals some basic contours of a standard, best summarized by the Fifth Circuit in *PALA, Inc. Emples. Profit Sharing Plan v. United States,* *234 F.3d 873 (5th. Cir. 2000)*.

[HN8] The court in Pala, as an initial matter, noted that "no 'hard and fast rules'" exist, and that whether an [*17] informal claim is adequate ultimately depends on whether under the facts constituting it, "the Commissioner knew, or should have known, that a claim was being made." *Id. at 877*. It nonetheless articulated on the basis of past decisions a basic four part test. An informal claim is adequate if it: 1) was "filed within the statutory period;" 2) "put the IRS on notice that taxpayer believes an erroneous tax has been assessed;" 3) "describes the tax and year with sufficient particularity to allow the IRS to undertake an investigation;" and 4) while an informal claim "may include an oral communications, it must have a written component." *Id.* Finally, "any such informal claim 'must have been followed by a formal claim which remedied any defects in the informal claim." *Ewing, 439 F.3d at 1015* (quoting *Kaffenberger, 314 F.3d at 954*). In the absence of any standard articulated by the Ninth Circuit Court of Appeals, the Court adopts this standard as the most appropriate under the law.

*Adequacy of Written Component*

Before getting to the application of this standard to the evidence presented by Plaintiff, there is one part of the standard [*18] that bears further discussion: the adequacy of the written component of an alleged informal claim. Not surprisingly, [HN9] the analysis again is fundamentally contextual. "[T]he proper analysis should focus on whether or not in the context of a particular case, a writing can be construed as a claim of a right." *New England Elec. Sys., 32 Fed. Cl. 636*. Further, as Pala makes clear, both the written and oral components of the refund claim are evaluated together as a whole to determine the adequacy of the claim. *Id. at 1175*.

Fortunately, however, several cases have addressed one of the specific questions which faces the Court in evaluating the evidence presented by Plaintiff: whether internal government documents alone can suffice as the written component. The consensus among them is that it can. See, e.g., *BCS Fin. Corp., 118 F.3d at 527* (rejecting the contention "that the doctrine is never satisfied when the only written evidence of a potential claim is an internal governmental document," and noting hypothetically that a "strong case for application for the doctrine" would be presented if "a taxpayer makes a detailed and unequivocal [*19] oral claim to an IRS agent who writes it down verbatim and without showing it to the taxpayer and files it as a claim for a refund."); *New England Elec. Sys., 32 Fed. Cl. 636* ("[W]hen oral statements of a taxpayer are documented in written form by IRS personnel, the cases suggest that the requirement of a written component is satisfied.") *Estate of Tinari v. United States, 1998 U.S. Dist. LEXIS 14945, 1998 WL*

*720156, \*4 (1998)* (finding that an oral refund demand which is "documented and supported by a writing that was contemporaneously generated by the Revenue Officer" is adequate.). n5

> n5 The Court notes that Plaintiff argues inter alia that its May 29, 2002 letter to Officer Wong might satisfy the written component of the standard. Compl. at 2. While there may be law to support this proposition, see, e.g., *Tinari, 1998 U.S. Dist. LEXIS 14945, 1998 WL at \*6*, it is not necessary to resolve for this order and has not been sufficiently briefed by either party. The Court therefore declines to rule on the issue at this time.

*Plaintiff Has* [\*20] *Presented Sufficient Evidence for Application of the Informal Claim Doctrine*

In light of the law defining the informal claim doctrine just discussed, Plaintiff has stated facts in its sworn declaration that, in combination with documentary evidence which Plaintiff states exists but to which Plaintiff has no current access, are "such that a reasonable jury could return a verdict for [Plaintiff]." *Anderson, 477 U.S. at 248*. Defendant denies these facts, Answer at 2, creating a genuine issue of material fact, foreclosing summary judgment.

Plaintiff states in its Declaration that on three separate occasions, following its payment of estimated taxes on November 16, 1998, the Estate's representatives contacted IRS personnel. Pl.'s Decl. at 1. Plaintiff states, specifically, that these contacts occurred by phone on May 13, 1999, February 11, 2002, and April 25, 2002, and that during each a refund claim was made on behalf of the Estate. Id. Plaintiff further states that each of these calls was "contemporaneously documented in writing by the IRS agents, in their files, both formal and informal and by computer entries." Id.

Each of these contacts was made within [\*21] three and a half years of November 16, 1998, the date on which Plaintiff sent the IRS its payment. And the Court finds that based on the evidence stated by Plaintiff a reasonable jury could find that one or more of these contacts, viewed separately or as a whole in the context of the other facts which Plaintiff describes, constituted an adequate informal claim. If the jury did make such a finding, the corollary finding would be that Plaintiff made a refund claim within three and a half years of its payment of taxes, and so, under *Section 6511(b)(2)(A)*, could demand that the Government refund any overpayment made at that time. The Government's motion for summary judgment is therefore denied without prejudice.

*Plaintiff's Arguments in the Alternative*

Plaintiff makes two other arguments in the alternative. The Court rejects both on the grounds that they are in direct contradiction with precedent binding on this Court.

Plaintiff's first argument in the alternative appears to be that because the IRS is capable of designating something as either a deposit or payment on its forms and in its other communications with taxpayers, the IRS should be bound by the designations of remittances [\*22] as "unapplied credits" or "estimated" that it makes in those contexts. Pl.'s Mem. at 9. Plaintiff cites in support of this contention the following statement by the Ninth Circuit Court of Appeals in Zeier v. United States:

> The Code explicitly provides that absent specific designation as a deposit, remittances paid at the time the return was due constitute payments "whether precisely calculated or not."

*80 F.3d 1360, 1364 (9th Cir. 1996)*(citations omitted). It is unclear how or why Plaintiff believes that this language in Zeier supports its position, as the Court reads it to be in direct conflict of Plaintiff's position. Referring to something as an "unapplied credit" or as an "[a]mount of estate and GST taxes estimated to be due" is not a "specific designation as a deposit." *Id. at 1364*. Thus, under Zeier, remittances so labeled "constitute payments." Id. The Court therefore rejects this argument of Plaintiff.

Plaintiff next urges the Court to find that Plaintiff's remittance to the IRS was a deposit rather than a payment, not in spite of the fact that so holding would be in direct contradiction with *Ott v. United States, 141 F.3d 1306, 1310 (9th Cir. 1998)*, [\*23] but *because* it would be. Pl's Mem. at 9. Plaintiff admits the court in Ott held that "a remittance with a request for extension of time to file a tax return is a tax payment not a deposit," but nonetheless urges the Court to hold otherwise in this case "solely to preserve the within [sic] estate's right to appeal to the U.S. Supreme Court." Id. This argument is nonsensical for several reasons, not least because Plaintiff's right to appeal a decision by the Court on this issue would depend, in the first instance, on the Court's rejecting Plaintiff's refund claim on this basis, either at this stage or at trial, not the other way around. Regardless, the decisions of the Ninth Circuit Court of Appeals are binding on the Court, and the Court refuses the invitation to disobey them. Plaintiff's argument for the Court to do so are therefore rejected.

V. CONCLUSION

For the aforementioned reasons, Defendant's Motion

for Summary Judgment is hereby DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: June 26, 2006

UNITED STATES DISTRICT JUDGE