# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ESTATE OF BARBARA A. BANDURSKI, | |
| Plaintiff, | C.A. No. 05-291 (GMS) |
| v. | CONSOLIDATED CASES. |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

| | |
|---|---|
| ESTATE OF WALTER S. BANDURSKI, Plaintiff, | |
| v. | C.A. No. 05-651 (GMS) |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## PLAINTIFFS' RULE 26(a) DISCLOSURES

PURSUANT to Federal Civil Procedure Rule 26 Plaintiffs hereby designate expert witnesses on their behalf, as follows:

1.    Fredric Etskovitz, CPA.:  His report dated November 7, 2006 is attached as Exhibit A.

2.    Michael P. Kelly, Esq.:  His report, dated November 7, 2006, is attached as Exhibit B.

These witnesses are available for deposition at any mutually convenient time. The witnesses reserve the right to alter or amend their opinions upon receipt of additional information.

PRICKETT, JONES & ELLIOTT, P.A.


/s/ Mason E. Turner, Jr.
BY: MASON E. TURNER, JR., No. 661
1310 KING STREET
P.O. BOX 1328
WILMINGTON, DE  19899-1328
(302) 888-6508
ATTORNEY FOR PLAINTIFF
ESTATE OF WALTER S. BANDURSKI
E-Mail: METurner@prickett.com


GOLLATZ, GRIFFIN & EWING, P.C.


/s/ Sheriden T. Black
SHERIDEN TALLEY BLACK, ESQ.
DELAWARE BAR ID 4382
1700 WEST 14TH ST.
WILMINGTON, DE  19806-4012
ATTORNEY FOR PLAINTIFF
ESTATE OF BARBARA A. BANDURSKI
E-Mail: sblack@ggelaw.com


Dated: November 7, 2006.

# EXHIBIT

# A

Fredric Etskovitz, CPA
607 Fulton Street
Philadelphia, PA 19147

November 7, 2006

Sheriden T. Black, Esquire
Gollatz Griffin and Ewing
1700 West 14th Street
Wilmington, DE 19806

Re:    Estates of Barbara A. Bandurski and Walter S. Bandurski

Dear Ms. Black:

This letter supplements my report submitted to Cheryl Siskin of the Bayard Firm, dated
July 24, 2003. The original report provided my opinion on the Fair Market Value of a
40% interest in the common stock of Walter S. Bandurski Inc.(the Company), a Delaware
corporation, at August 7, 1998 (Valuation Date).

## Background

The 40% interest relates to the amount of stock in the Company owned by Barbara A.
Bandurski. The Valuation Date is the date of death of Ms. Bandurski. My July 24, 2003
report valued the stock at less than one dollar.

Barbara Bandurski's former husband, Walter S. Bandurski, had also owned 40% of the
stock of the Company. He died on August 26, 1998, a few weeks after Barbara
Bandurski's death.

Although my July 24, 2003 report addressed only the Estate of Barbara A. Bandurski, the
valuation issues of the two estates are virtually identical, as are the relevant facts.
Underlying the preparation of the previous report was a settlement of $360,000 paid to
the Estate of Barbara A. Bandurski, more than 18 months after the Valuation Date based
on her 40% stock ownership in the former Company. The Estate of Walter S. Bandurski
received the same settlement.

The purpose of this supplement is to address the value of the lawsuit to the Estates of
Barbara A. Bandurski and Walter S. Bandurski as of the Valuation Dates.

## Case Background

On October 21, 1998 National Solid Waste Management Association (NSWMA), et al.
filed suit against Delaware Solid Waste Authority (C.A. No. 98-565). The claim was
similar in nature to a claim that had been filed July 21, 1998, Sylvester Jenifer v. DSWA

U.S. D. Del (C.A. No. 98-270). The Jenifer suit was dismissed because the plaintiff did not actually dispose of the type of waste that was the underlying basis for the case.

The NMSWA plaintiffs included the Association, two solid waste haulers and several former waste haulers. Included in the group of former waste haulers was the Company. However, neither the decedents nor the estates' representatives were aware that the Company had been included as a named plaintiff.

I reviewed expert reports prepared by Glassman-Oliver Economic Consultants, Inc. in 1999 for the DSWA attorneys. It is clear that these experts for the defense believed that the damages claimed in the lawsuit were excessive due to the plaintiffs' failure to account for added costs and related impacts to the marketplace. Accordingly, the defense was prepared to vigorously defend its position on the matter in question with the expectation of winning its case.

The first time either estate became aware of this lawsuit was in March 2000, when DSWA sent a preliminary incentive payment of $10,000 to the Walter S. Bandurski estate. Later, the Estate of Walter S. Bandurski learned that the DSWA had settled the case and that if documentation could be provided to prove that the Company had disposed of the specific type of waste and incurred tipping fees, the Company would receive a settlement of $900,000. Fortunately, the Walter S. Bandurski estate representative was a former employee of the Company and had retained Company documents which were sufficient to provide the required proof. Accordingly, the full settlement totaling $900,000 was paid to the former shareholders of the Company. The estates of both Walter S. and Barbara A. Bandurski each received 40% of the total, which was $360,000.

It is my understanding that DSWA did not settle the case based on its merits, but rather on an economic decision to avoid future significant legal fees and the continued uncertainty that the pendency of the lawsuit created.

**Case Valuation**

The lawsuit was filed October 21, 1998. The date of Ms. Banduski's death was August 7, 1998, two and a half months earlier. The date of death for Mr. Bandurski was August, 26, 1998, almost 2 months earlier. Neither estate representative knew that a case was going to be filed in the future, nor that the Company would be named as one of the plaintiffs.

Furthermore, based on the expert reports, there seemed to be substantial uncertainty as to the merits of the case. This case could have gone on to trial and been decided on behalf of the defense with the outcome being no award of damages.

An added risk to prevent the financial outcome was the requirement in March 2000 that the plaintiffs provide documentation that they actually transported the specified type of waste and that they incurred related tipping fees in Delaware. The Company had sold its

operations to Waste Management, Inc. in 1997. The Walter S. Bandurski, Inc. corporation was dissolved in June 1998, before the deaths of the Bandurskis. Not knowing that there was any lawsuit or possibility of a lawsuit, it is possible that all required documentation had been discarded or could not be located. It is my understanding that there were some plaintiffs that had the opportunity to share in the settlement, but did not, due to their inability to produce the required documentation.

I realize that lack of knowledge in itself is not a reason for excluding an item from being included and valued in a decedent's estate. However, the facts that the lawsuit was non-existent on the Valuation Dates and neither estate was connected with those who subsequently filed the lawsuit, makes it extremely unlikely, if not impossible under any circumstances, for anyone to know about the case. To the best of my knowledge, there are no requirements in the Internal Revenue Code that state that one should be able to predict events that will occur in the future and pay a related estate tax.

Pursuant to IRS regulation, the value of an asset includable in a person's gross estate is its fair market value at the time of the decedent's death. Fair market value is defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." I.R.C. Reg. section 20.2013-1(b). In the situation described above, it is my opinion that no willing buyer would have paid any amount for an unknown claim given the information that was available on the Valuation Dates.

Accordingly, it is my considered opinion that the value of the lawsuit as of the Valuation Date is **$0**.

Respectfully submitted,

Fredric Etskovitz, CPA

3

**Fredric Etskovitz**
**Certified Public Accountant**
**607 Fulton Street**
**Philadelphia, PA 19147**

**Employment Experience:**

June, 2000
to current

<u>Astea International Inc.</u>

Chief financial officer and Treasurer of publicly traded (NASDAQ) software company

-   Responsible for compliance with Securities and Exchange Commission requirements
-   File annual and quarterly financial statements
-   Primary liaison with independent accountants
-   Report to chief executive officer and Audit Committee
-   Manage accounting and financial operations of worldwide organization
-   Primary responsibility for shareholder relations
-   Assist with reorganization of company to reduce excess operating costs and increase operating efficiency in order to become profitable
-   Numerous presentations to outside investors

January 1, 1995
to October, 2005

<u>Shechtman, Marks, Devor & Etskovitz, P.C.</u>, Philadelphia, PA

Shareholder in firm of certified public accountants

-   Compilation, review and audit of financial statements
-   Consulting to public companies on compliance with Sarbanes-Oxley requirements
-   Personal financial planning
-   Tax planning for businesses and individuals
-   Preparation of federal, state and local income tax returns
-   Long and short-term planning for privately owned businesses
-   Valuations of closely held businesses for buy/sell agreements, estate planning and minority interests
-   Financial analysis of proposed business transactions, including start-ups, acquisitions, sales, asset purchases and financing alternatives
-   Litigation support to attorneys for assistance in civil and commercial lawsuits involving valuations of losses, analysis of transactions, forensic accounting and other matters requiring knowledge of accounting and financial issues.

1987 to 1994

<u>Heller, Etskovitz & Casterline, P.C.</u>, Norristown, Pa

Partner in firm of certified public accountants and management consultants

-   Compilation, review and audit of financial statements
-   Personal financial planning
-   Tax planning for businesses and individuals
-   Provide assistance to attorneys in support of litigation
-   Preparation of federal, state and local income tax returns

- Long and short-term planning for privately owned businesses
- Financial analysis of proposed business transactions, including start-ups, acquisitions, sales, asset purchases and financing alternatives

1980 to 1986      <u>E.I. DuPont de Nemours & Company, Inc.</u>, Wilmington, DE

Supervisor, Corporate Accounting, Finance Department

- Responsible for preparation of company's monthly, quarterly and annual consolidated financial statements

- Managed staff of accountants

1980 to 1986      <u>E.I. DuPont de Nemours & Company, Inc.</u>, Wilmington, DE (continued)

Financial Analyst, Planning Studies

- Developed corporate guidelines for analysis of investment opportunities
- Performed various analyses on potential acquisitions, divestitures and corporate restructurings

Financial Analyst, Financial Projections

- Prepared short and long term projections of corporate earnings and cash flow used in strategic planning
- Recommended dividend policy to company's Board of Directors

Financial Analyst, Employee Benefits & Compensation

- Analyzed and negotiated medical and insurance contracts with various providers throughout U.S.

1976-1978      <u>Laventhol & Horwath</u>, Philadelphia, PA

Senior accountant

- Responsible for assisting in audits of publicly traded and privately owned businesses
- Prepared federal, state, and local income tax returns

**Education:**

<u>Wharton Graduate School</u>, University of Pennsylvania, Philadelphia, PA
Masters in Business Administration - 1980
Concentration in Finance and Insurance
Instructor of accounting in Wharton Undergraduate School

<u>Pennsylvania State University</u>, State College, PA
Bachelor of Science Degree - 1976
Major - Accounting

**Professional Societies:**

> American Institute of Certified Public Accountants
> Personal Financial Planning Division, AICPA
> Pennsylvania Institute of Certified Public Accountants

**Volunteer Organizations:**

> American Israel Chamber of Commerce, Philadelphia, PA
> -    Treasurer and member of Executive Committee
>
> American Technion Society, Bala Cynwyd, PA
> -    Board of Director member

# EXHIBIT

# B

McCarter & English, LLP
Suite 1800
919 N. Market Street
P.O. Box 111
Wilmington, DE 19899
tel 302.984.6300
fax 302.984.6399
www.mccarter.com

Michael P. Kelly
Managing Partner, Wilmington Office
mkelly@mccarter.com



**M**c**CARTER
ENGLISH**

ATTORNEYS AT LAW

November 7, 2006

Mason E. Turner, Esq.
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899-1328

> *In re:*     *Barbara & Walter Bandurski Estates v. USA*
> <u>*CA. No. 05-291& 05-651-GMS (Consolidated)*</u>

Dear Mr. Turner:

You have asked me to offer an opinion as to the fair market value of inchoate legal claims purportedly possessed by the decedents, Barbara A. Bandurski and Walter S. Bandurski, as of the dates of their respective deaths. As you will note in my attached resume, I am presently the Managing Partner of the Delaware Office of McCarter and English LLP. I also serve on the Executive Committee of that firm. I have been litigating environmental matters since 1988, when I began serving as Chief Environmental Attorney for Hercules Incorporated. I have litigated environmental cases in private practice since 1991. Presently, I serve as Outside General Counsel for Stauffer Management Company LLC, which oversees numerous environmental liabilities of old Stauffer Chemical Company. As Outside General Counsel for that company I provide to management settlement values for all Stauffer Management Company claims. I presently handle over 60 environmental litigation matters in numerous jurisdictions, and I am first chair trial attorney in several major environmental cases.

I have reviewed documents and pleadings, both in the present consolidated cases *(Bandurski* v. *US,* C.A. Nos. 05-291-GMS and 05-651-GMS) as well as in the underlying lawsuits, *Jenifer* v. *Delaware Solid Waste Authority,* C.A. No. 98-270-MMS and *National Solid Waste Management Association, et. al.* v. *Delaware Solid Waste Authority,* C.A. No. 98-565MMS.

The issue in the present litigation is the fair market value of an asset includable in the decedents' estates for federal estate tax purposes. The asset at issue is the decedents' share, as former stockholders, of a corporation's share of a class action lawsuit where the corporation was dissolved long before the decedents' deaths and the decedents and their estates had no knowledge of the existence of the litigation claim as of the dates of death.

My understanding of the law is that the asset must be valued based upon the information that was available as of the dates of death, not taking into account subsequent events. *Ithaca Trust Co.* v. *United States,* 279 U.S. 151 at 153 (1929).

Mason E. Turner, Esq.
Page 2
November 7, 2006



Barbara and Walter Bandurski had been divorced for many years prior to their deaths in August, 1998, Barbara dying on August 7, 1998 and Walter on August 26, 1998. During their lifetimes, Mr. and Mrs. Bandurski had been stockholders in a family corporation, Walter S. Bandurski, Inc. ("WBI"), that was involved in the business of waste hauling. Barbara and Walter each owned 40% of the stock of WBI, the remaining 20% being owned by their son, Michael Bandurski.

In July, 1997, over a year before the decedents' dates of death, substantially all of the assets of WBI were acquired by Waste Management, Inc. ("Waste Management"), a publicly traded corporation, in a tax free reorganization. Under the Internal Revenue Code, in order to qualify for a tax free reorganization, WBI had to ensure that substantially all of its assets were being transferred to Waste Management in exchange for Waste Management stock. As of July 31, 1997, the accountant and attorney for WBI reviewed all of the operating assets to be exchanged for Waste Management stock, as well as any remaining miscellaneous non-operating assets, such as accounts receivable and personal use vehicles, to determine that the exchange would qualify as tax free under the Internal Revenue Code. The documents related to the tax free reorganization, which have been provided to the Internal Revenue Service, demonstrate that in July, 1997 neither WBI's attorney nor its accountant was aware of any potential legal claims, including the class action lawsuit that generated the ultimate settlement in 2000.

In August, 1997, in accordance with the plan of reorganization and IRS regulations, WBI distributed all of its assets, including the Waste Management stock and the very small amount of miscellaneous assets not sold to Waste Management to its stockholders and shut down its business. Those assets were reported on the company's internal records and reports to stockholders and no claim relating to the DSWA matter was shown among those assets.

On June 30, 1998, in accordance with the reorganization plan, WBI filed a certificate of dissolution with the Delaware Secretary of State and was formally dissolved. WBI filed its final corporate income tax return for the year ended December 31, 1997 on September 14, 1998, after the decedents' dates of death. The return, prepared and filed by the WBI accountant based on all relevant facts reasonably known at that time, represented that the reorganization qualified as a tax free reorganization because substantially all of WBI's assets had been exchanged for Waste Management stock and the Waste Management stock and all the remaining miscellaneous assets, of relatively insignificant value, had been distributed to WBI stockholders in liquidation of the company. Nothing in the corporate income tax return filed in September, 1998 indicates that there was any known outstanding litigation claim or potential litigation claim at that time.

Following the decedents' deaths in August 1998, each estate timely paid estimated federal estate tax due and then filed federal estate tax returns in November, 1999. Those returns included the value of the Waste Management stock (subsequently converted to stock in USA Waste, Inc. following a merger of those two publicly-traded corporations) as assets includable in the estate for federal estate tax purposes. The Internal Revenue Service ("IRS ") undertook to examine the federal estate tax returns, the Barbara Estate being examined by Stephen Del Rossi, Esq. and the Walter Estate by Mertie Mills, Esq., IRS attorneys assigned to the Wilmington, Delaware office.

Mason E. Turner, Esq.
Page 3
November 7, 2006



On September 21, 2000, Del Rossi sent an "Opening Letter" to the attorney for the Barbara Estate requesting additional information and asking, as a routine question, whether any additional assets had been received by the estate subsequent to the filing of the Form 706. On December 13, 2000, Mills sent a similar "Opening Letter" to the attorney for the Walter estate. The Opening Letter typically requests additional information and documentation.

The first knowledge that either of the estates had concerning a possible class action claim of which WBI (and through it the decedents' estates) might be the beneficiary was in late January or early February, 2000 when Michael Bandurski contacted Sue Brooks to ask her if she could assemble records and deliver them to David Staats. She first understood that it might relate to a legal claim and involve payment to the estates was when Michael sent her a $10,000.00 incentive payment in connection with a pending settlement. It was subsequently learned that a settlement had been reached and that if WBI was in a position to provide sufficient documentation, a recovery in the approximate amount of $900,000.00 would be available to WBI. The Executrix of the Walter Estate had retained WBI records and the necessary documentation was provided and in June, 2000 the payment of approximately $900,000.00 was made. Based on the decedent's ownership interests in WBI, $360,000.00 was credited to the Walter Estate and the same amount was subsequently credited to the Barbara Estate. These after-acquired funds were reported to the IRS in response to the respective Opening Letters. For federal estate tax purposes, the IRS determined that these proceeds had a value equal to the full amount received by the estates less a discount for the time factor between the decedents' deaths (August, 1998) and WBI's receipt of payment (June, 2000) and that federal estate taxes should be assessed based on such value. The estates protested this assessment and filed claims for refund. The IRS denied the claim of the Barbara Estate and did not respond to the claim of the Walter Estate.

Until its assets were acquired by Waste Management in July 1997, WBI was in the business of waste hauling, and the $900,000 settlement was from a claim related to that business. In May, 1998 a lawsuit was initiated by Sylvester Jenifer against the Delaware Solid Waste Authority ("DSWA"). The Jenifer suit, which was never certified as a class action, purported to be on behalf of Mr. Jenifer and all others similarly situated. The lawsuit challenged Delaware Solid Waste Authority regulations (known as "flow control regulations") that required the disposal of certain solid wastes generated in the State of Delaware at facilities operated by DSWA and involved the payment of "tipping fees" to DSWA for such disposal. In oversimplified form, the plaintiff claimed that the regulation requiring disposal at DSWA facilities impaired his rights under the Commerce Clause and that he should have the freedom to dispose of waste at out of state facilities where a lower fee might be available. As a result, money damages were sought.

There is no evidence that Barbara or Walter Bandurski ever knew of this lawsuit or of WBI's potential claim related to WBI's waste hauling operations before the July 31, 1997 reorganization.

Discovery in the Jenifer suit quickly revealed that Jenifer had not been damaged because he had disposed only of "construction debris" not subject to the flow control regulations. As a result, on October 2, 1998, over fifteen months after the tax-free reorganization and over two months after

Mason E. Turner, Esq.
Page 4
November 7, 2006



decedents' deaths, a second lawsuit entitled *National Solid Wastes Management Association, et. at.* v. *Delaware Solid Waste Authority,* C.A. No. 98-565 was filed setting forth claims comparable to those that had been asserted by Jenifer. Unbeknownst to the attorneys or personal representatives of the estates, the dissolved corporation, WBI, was listed as a named plaintiff in the lawsuit.

After what appears to have been an intense period of litigation between October, 1998 and March, 2000, DSWA agreed to settle the claim and in March, 2000 sent a preliminary payment of $10,000.00 to Michael who sent it on to the executrix of the Walter Estate. This payment was the first notice to either estate of the pendency of the action or of any claim that might result in payment to the estates under the terms of the settlement. The settlement conditioned payment to claimants upon their production of adequate documentation of qualified solid waste disposal and payment of challenged tipping fees. Fortunately, the personal representative of the Walter Estate was a former employee of WBI and had retained WBI documentation sufficient to permit WBI's recovery of approximately $900,000.00. The former stockholders of the dissolved corporation -- the two plaintiff estates each received approximately $360,000.00, in accordance with their percentages of former stock ownership. As noted above, this fact was disclosed to the IRS in the estates' responses to its Opening Letters, even though the payments were not received until June and July 2000.

Based upon my training and experience in evaluating environmental claims and advising clients as to their merits and value and based on my review of the materials in this action and in the underlying lawsuits which are the subject matter of this valuation claim, it is my opinion, to a reasonable legal certainty, that the value to Barbara and Walter Bandurski of the inchoate legal claims of which they had no knowledge as of their dates of death in August, 1998, was *de minimis.* There is no basis upon which a willing buyer would have paid any significant value for those claims in August 1998. I base this conclusion on the following factors, *inter alia:*

1. As of the dates of death in August, 1998, there was no legal claim pending on behalf of WBI, Barbara Bandurski, Walter Bandurski or their estates.

2. As of the dates of death, the only pending legal action was the *Jenifer* action, which was essentially worthless as of the dates of death because it was undisputed that *Jenifer* had not been damaged by the DSWA flow control regulations that were being challenged.

3. As of the dates of death, the tax free reorganization of WBI was, for all intents and purposes, complete. The tax free character of the reorganization was not challenged by the IRS. This is strong evidence that no one as of the time of the decedents' deaths believed there was any asset of material value that remained in the possession of WBI.

4. As of August, 1998, there was no legal proceeding in existence claiming damages on behalf of WBI. Moreover, it is apparent from reviewing the docket in the underlying cases that the significant legal activity in those cases that led to the settlement did not occur until

Mason E. Turner, Esq.
Page 5
November 7, 2006



1999 and thereafter. WBI did not join the class action until October 1998 and this was done by Michael Bandurski without the knowledge of either estate.

5. My review of the underlying litigation documents reveals that DSWA's liability for the flow control regulations was very much disputed, would have been hotly contested at trial and any decision adverse to DSWA might well have been challenged on appeal.

6. There was a serious dispute as to whether any of the plaintiffs named in the second lawsuit *(National Solid Waste Management Association, et. al. v. Delaware Solid Waste Authority et. al.,* C.A. No. 98-565-MMS) had suffered actual damage as a result of the challenged regulations. I have reviewed economic analyses submitted in that litigation on behalf of DS W A and while my understanding is that plaintiffs would have attempted to refute the reasoning of those experts, it is clear that damages would also have been hotly contested at trial. In effect, the plaintiffs in the underlying litigation were claiming but for the challenged regulations, they could have disposed of their waste at out-of-state facilities for lower fees than those charged by DSWA and were trying to claim damages based upon the mathematical difference between the DSWA rate and a hypothecated out-of-state fee, but DSWA was prepared to prove that such a simplistic analysis did not constitute actual damages because it failed to take into account a variety of other factors, including fuel costs, seasonal variations, the ability of out-of-state facilities to accommodate the plaintiffs and variable out-of-state fees. The end result, according to the DSWA experts, was that no significant actual damage could be shown to have been caused by the enforcement of the challenged regulations.

7. As of the dates of death, there was no way to know what documentation would be required to substantiate a claim against DSWA even if there had been a pending legal action on behalf of WBI, and hence there was no way as of August, 1998, to predict that WBI or its former shareholders would be entitled to any recovery. My understanding is that in connection with the ultimate settlement of the underlying litigation, some claimants were ultimately denied recovery because of inability to produce required documentation. The availability of documentation to enable WBI (and through it the Bandurski Estates) to substantiate a recovery in the litigation was not established until long after the decedents' dates of death.

In summary, my opinion is that the value of the inchoate legal claims to the Bandurskis as of their dates of death was, at most, *de minimis.*

Please do not hesitate to contact me if you have any questions concerning this report.

Very truly yours,

Michael P. Kelly

919 Market Street, Suite 1800    Phone: 302-984-6301
P. O. Box 111                    Fax:   302-984-6399
Wilmington, DE 19899             E-Mail: MKelly@mccarter.com

# Michael P. Kelly

**EDUCATION:**

Law School:    THE DICKINSON SCHOOL OF LAW, Carlisle, PA
               J.D., 1983
               G.P.A.  81.01
               Activities:      Elected President of the Student Body
                                Corpus Juris Society
                                Social Committee
                                Dickinson College Boxing Team

College:       COLUMBIA COLLEGE, New York, NY
               B.A. English, 1979 G.P.A.—3.37
               Activities:      Varsity Football – 3 years
                                Varsity Track – 4 years (Captain – Senior Year)
                                Writer for School Daily Newspaper
               Honors:          Dean's List Every Year
                                Gustave Jaeger Prize for Athletics
                                Selected as speaker at Columbia Sports Banquet
                                One of two students appointed to Trustee Committee

**EMPLOYMENT:**

June 1, 2000-Present    MCCARTER & ENGLISH, Managing Partner of
                        Wilmington Office; Member of Firm's Executive
                        Committee Specializes in complex, environmental ,corporate,
                        and commercial litigation. Active trial practice
                        throughout the U.S.----national counsel for numerous corporate
                        clients.  Presently Outside General Counsel for Stauffer
                        Management Company LLC.

April, 1999 –
June, 2000              MICHAEL P. KELLY, P.A., Wilmington, DE
                        Trial attorney, litigation in all Delaware Courts.  Specialized in
                        complex litigation, personal injury and environmental litigation.
                        Extensive practice in corporate and commercial litigation, as well
                        as criminal law and bankruptcy.

May, 1992 –
April, 1999             HAASE & KELLY, Partner, Wilmington, DE
                        Trial attorney.  Handled litigation in all Delaware Courts, and
                        specialized in person injury and environmental litigation. Tried
                        cases in numerous jurisdictions throughout the country. Also
                        handled commercial transactions.

January 1, 1991 –
May, 1992               MICHAEL P. KELLY, P.A., Wilmington, DE
                        Trial attorney. General practice.

| | |
|---|---|
| March, 1987 – December 31, 1990 | HERCULES INCORPORATED, Wilmington, DE Employed as Counsel and Chief Environmental Counsel. Personally handled environmental litigation involving the Company: Superfund, RCRA, Clean Water Act, etc. Also represented the Company in custom/duty litigation and in litigation filed locally, and handled broad variety of commercial transaction as well.  In 1990 received Hercules-Aqualon Triangle Achievement Award. |
| 1983-1987 | PRICKETT, JONES, ELLIOTT , KRISTOL & SCHNEE Employed as trial attorney.  Appeared in all Delaware Courts, Jury trials in Delaware Superior and U.S. District Courts. Argued six cases before the Delaware Supreme Court before 30th birthday. |
| Summer '82 | PUBLIC DEFENDER'S OFFICE, Wilmington, DE Employed in Appellate Division.  Researched legal issues in criminal matters on appeal to the Delaware Supreme Court and the U.S. Supreme Court. |
| January, 1980 – April, 1980 | NEW CASTLE COUNTY SCHOOL DISTRICT AREA II Served as a substitute teacher for high schools 5 days/wk. |
| OTHER POSITIONS: | Chairman, New Castle County Zoning Board of Adjustment 1989 – 1995 |
| | Member of Board of Managers, Central Branch YMCA 1990 - 1992 |
| | Treasurer, Delaware State Bar Association 1992 - 1994 |
| | Adjunct Professor of Law, Widener University School of Paralegal Studies. |
| | Admitted to Bars of Delaware, Pennsylvania, U.S. District of Delaware, and U.S. Third Circuit. |
| | Board of Directors, Delaware Council on Crime and Justice |
| | Delaware Volunteer Legal Services. |
| | Executive Committee, St. Thomas More Society |
| | Lector – St. Ann's Church |
| | Member – Wilmington Rotary  Club |
| | Board of Trustees, Tower Hill School |
| | Defense Counsel of Delaware, Founding Member |

Member, Delaware Trial Lawyers Association

Rodney Inns of Court

Board of Directors, Police Athletic League of Delaware, Inc.

PUBLICATIONS AND PROGRAMS:

Speaker, Delaware Trial Lawyers Association Convention 1989 – "Underinsured Motorist Insurance";

1990 Defense Counsel of Delaware Seminar – "Medico-Legal Issues"

1990 Defense Counsel of Delaware – "Arbitrating the Injury Case in Delaware"

1993 Speaker – "Land Use Issues – Delaware" NBI

June 1996 Delaware Trial Lawyers Association Convention – "The Orthopedist and the Lawyer"

November 1998 – "Trying the Automobile Injury Case in Delaware"  NBI

October 1999, Speaker – "How to Litigate Your First Civil Trial in Delaware"  NBI

June 2000 - Delaware Trial Lawyers Association Annual Convention – "Tips for Successful Arbitration and Mediation"

April 24, 2001 – "Trying the Automobile Injury Case in Delaware" NBI

April 27, 2001 – Delaware Trial Lawyers Association Spring Seminar, "Presenting Rule 16.1 Arbitrations"

Testifying Expert Witness in Legal Malpractice Litigation (Del. Super Ct.—Dec. 1999)

November 14, 2001 – "What's Happening in Delaware ADR and How It Affects Your Practice"

January 22, 2002 – "Keys to Successful Pre-Trial Preparation in Delaware"

February 22, 2002  - "What's Hot in Civil Litigation"

September 18, 2002 – "How to Successfully Make and Manage Objections at Trial"

January 23, 2003 – "Trying the Injury Case"

May 16, 2003 – "Taking and Defending Effective Depositions in Delaware"

February 4, 2004 – "Trying the Injury Case in Delaware"

May 25, 2004 - "Taking and Defending Effective Depositions in Delaware"

November 5, 2004 – "Keys to Successful Pre-Trial Preparation in Delaware"

June 22, 2005 – "Taking and Defending Effective Depositions in Delaware"

Summer Issue, 2005 *Delaware Lawyer* – "Humor in the Courtroom"

October 10, 2005 - "How to Successfully Make and Manage Objections at Trial"

## NOTABLE QUOTES AND INTERVIEWS:

November 6, 2003 – *Bloomberg News*, re Daimler Chrysler

November 20, 2003 – *The News Journal*, re Eric May v. Michael Hershey

November 23, 2003 – *The News Journal*, re Eric May v. Wilmington Trust

December 1, 2003 – *Bloomberg Radio*, re Daimler Chrysler

December 4, 2003 – *The Post-Standard,* re Skaneateles Falls

June 24, 2004 – *Bloomberg News*, re Michael Hershey's Wachovia Corp. shares

October 11, 2004 – *Barron's* re SEC v. Michael Hershey

February 18, 2005 – *The Citizen*, re Taylor Road residents

May 13, 2005 – *Los Angeles Daily News*, re Disney Board of Directors

May 18, 2005 – *Business Wire*, re Audivox Victory

May 23, 2005 – *BNA's Securities Regulation & Law Report*, re Audiovox interview

July 6, 2005 – *Delaware Corporate Litigation Reporter*, re Audiovox

July 11, 2005 – *Bloomberg News*, re Vioxx

August 9, 2005 – *Bloomberg National Radio*, re Disney Directors

August 14, 2005 – *The News Journal*, re Disney Trial

August 22, 2005 – *Kansas City Star*, re H&R Block shares

August 22, 2005 – *Bloomberg News*, re Vioxx

August 23, 2005 – *Montreal Gazette*, re Vioxx

August 23, 2005 – *Belfast Telegraph*, re Vioxx

August 23, 2005 – *The Independent*, re Vioxx

August 23, 2005 – *National Post*, re Vioxx

August 26, 2005 – *Bloomberg Radio*, re Vioxx

September 19, 2005 – *Bloomberg TV*, re Dennis Kozlowski

October 16, 2005 – *The New Journal*, re Disney Trial

November 2, 2005 – *Delaware Law Weekly*, Jane Brady

November 3, 2005 – *Bloomberg Radio*, re Vioxx

November 9, 2005 – *Delaware Law Weekly*, Audiovox Ruling

November 16, 2005 – *Bloomberg Radio*, re Vioxx

November 16, 2005 – *Delaware Law Weekly*, Audiovox

November 17, 2005 – *Montreal Gazette*, re Vioxx

November 28, 2005 – *Bloomberg Radio*, live interview re pharmaceutical litigation

December 13, 2005 – *Bloomberg Radio*, live interview re Vioxx

January 19, 2006 – *Bloomberg News*, re Tom Capano

February 1, 2006 – *Sears, Roebuck & Co. v. Midcap*, re adverse-inference instruction

February 2, 2006 – *Daily Labor Report*, re Emory v. AstraZeneca

May 15, 2006 - *Corporate Officers and Directors Liability Litigation Reporter*, John P. Gallo v. Novavax.  "The ruling makes it crystal clear that the New Jersey courts will expect a director or officer to be fully knowledgeable about the company's policies and contracts, especially the ones they approved," Kelly said.

May 31, 2006 – *Corporate Officers and Directors Liability Litigation Reporter*, John P. Gallo v. Novavax.  Kelly said, "Opposing a skilled trial lawyer like [Edwin] Jacobs brought my game to a higher level."

July 13, 2006 – *Bloomberg News*, re Vioxx.

July 14, 2006 – *The Record (Bergen Co., NJ)*, re Vioxx.

July 14, 2006 – *Los Angeles Times* re Vioxx.  "If I were a plaintiffs' attorney sitting on the fence, I would certainly be daunted by this verdict," said Mike Kelly.

July 27, 2006 – *Philadelphia Business Journal* re Michael Hershey.  "Advisory, individuals, settle SEC case."

July 28, 2006 – *The News Journal* re Michael Hershey.  "Kennett Square investment manager pays duPont heir $250,000 penalty."

July 28, 2006 – *Philadelphia Inquirer* re Michael Hershey.  "Fund adviser settles case by paying estate."

August 7, 2006 – *Barron's*, re Hershey settlement.

August 18, 2006 – *Globe and Mail*, re "Quote of the Day" on Vioxx.

August 30, 2006 – *Bloomberg News*, re Vioxx.

September 15, 2006 – *Bloomberg News*, re Wyeth hormone.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

ESTATE OF BARBARA A. BANDURSKI,

                      Plaintiff,

        v.

UNITED STATES OF AMERICA,

                    Defendant.

C.A. No. 05-291 (GMS)

CONSOLIDATED CASES.

---

ESTATE OF WALTER S. BANDURSKI,

                      Plaintiff,

        v.

UNITED STATES OF AMERICA,

                    Defendant.

C.A. No. 05-651 (GMS)

## CERTIFICATE OF SERVICE OF
## PLAINTIFFS' RULE 26(a) DISCLOSURES

    I HEREBY CERTIFY, that on November 7, A.D. 2006, I electronically filed Plaintiffs'

Rule 26(a) Disclosures, together with Certificate of Service, with the Clerk of Court using

CM/ECF which will send notification of such filing(s) to the following:

GERALD A. ROLE, ESQ.
DISTRICT OF COLUMBIA BAR NO. 415274
TRIAL ATTORNEY, TAX DIVISION
U. S. DEPARTMENT OF JUSTICE
P.O. BOX 227, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
TELE:  (202) 307-0461

JENNIFER L. VOZNE, ESQ.
FLORIDA BAR NO. 0605557
TRIAL ATTORNEY, TAX DIVISION
U. S. DEPARTMENT OF JUSTICE
P.O. BOX 227, BEN FRANKLIN STATION
WASHINGTON, D.C.  20044
TELE:  (202) 307-6555

SHERIDEN TALLEY BLACK, ESQ.
DELAWARE BAR ID 4382
GOLLATZ, GRIFFIN & EWING, P.C.
1700 WEST 14TH ST.
WILMINGTON, DE  19806-4012

     I HEREBY CERTIFY that on November 7, A.D. 2006, I have mailed by United States

Postal Service the documents to the following non-registered participants:

(None)

                             PRICKETT, JONES & ELLIOTT, P.A.

                             /s/  Mason E. Turner, Jr.
                             BY:  MASON E. TURNER, JR.,
                             DELAWARE BAR ID No. 661
                             1310 KING STREET
                             P.O. BOX 1328
                             WILMINGTON, DE  19899-1328
                             (302) 888-6508
                             ATTORNEY FOR PLAINTIFF
                             ESTATE OF WALTER S. BANDURSKI
                             E-Mail:  METurner@prickett.com

Dated:  November 7, 2006.