IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ESTATE OF BARBARA A. BANDURSKI, | |
|                                Plaintiff, | C.A. No. 05-291 (GMS) |
|          v. | CONSOLIDATED CASES. |
| UNITED STATES OF AMERICA, | |
|                                Defendant. | |

| | |
|---|---|
| ESTATE OF WALTER S. BANDURSKI, | |
|                            Plaintiff, | |
|          v. | C.A. No. 05-651 (GMS) |
| UNITED STATES OF AMERICA, | |
|                                Defendant. | |

## PLAINTIFFS' TRIAL BRIEF

Plaintiffs Estate of Barbara A. Bandurski and Estate of Walter S. Bandurski ("Plaintiff Estates" or "Plaintiffs") file this Trial Brief as required by the Court's Scheduling Order.[1]

(a)     <u>The Nature of the Case.</u>

Plaintiffs seek a refund of federal estate taxes that were improperly assessed by the Internal Revenue Service ("IRS"). The dispute between the Plaintiff Estates and the IRS is over the value of an asset includable in the Plaintiff Estates for federal estate tax purposes. The asset at issue, which is hereinafter referred to as "the unknown claim," is

---

[1]  The separate legal actions filed by the Plaintiff Estates present an identical factual and legal issue and have been consolidated for purposes of discovery and trial. Barbara A. Bandurski and Walter S. Bandurski are also referred to herein as "decedent" or "decedents".

the decedents' share, as former stockholders, of a corporation's share of a class action lawsuit settlement where the corporation was dissolved long before the decedents' deaths, and neither the decedents nor their estate representatives (executors) had knowledge of any litigation or even of a potential claim as of the decedents' dates of death.

(b)     <u>The Contested Facts</u>

Plaintiffs contend that the valuation of an inchoate legal claim, such as the unknown claim at issue, is not a matter of lay understanding and requires expert testimony. Plaintiffs timely identified two experts who have reviewed the facts related to the unknown claim and have offered opinions from the perspective of two different, but related, disciplines that the value of the unknown claim was zero or negligible. Never during the IRS examination or refund claim proceedings did the IRS obtain any valuation of the unknown claim. Not until December 19, 2006, twelve days after the Government's expert report was due under the Court's January 6, 2006 Amended Scheduling Order, did the IRS identify an expert, and not until December 21, 2006 did the IRS submit an expert report. Plaintiffs contend that because the Government's expert report was untimely, it should not be permitted to submit expert testimony as to the value of the unknown claim. In any event, the Government's expert, a fourteen - year IRS employee, never valued the unknown claim. Presumably, the IRS continues to assess federal estate taxes based upon the total proceeds received by each estate at the conclusion of the litigation almost two years after the decedents' deaths, less a discount for the time factor between the decedents' deaths (August 1998) and the receipt of the funds (June 2000). The IRS never considered the fact that neither the decedents, nor the estate representatives, had any knowledge of the potential claim as of the dates of death, the fact that a lawsuit that

ultimately benefited the estates had not been filed as of the dates of death or the manifest

uncertainty of the litigation once it was filed.  As demonstrated below, the IRS

assessment and position in this lawsuit does not meet the legal standard outlined in

section (c) I. below.

(c)    The Plaintiffs' Theory of Liability

    I.    The Value of the Unknown Claim is Negligible Because a Willing Buyer
Would Not have been Willing to Pay a Willing Seller any More than a
Negligible Amount for The Unknown Claim on the Dates of Death, and the
Law is Clear that the Valuation of an Asset Cannot be Based On Post-Death
Events.

    A. Factual Background

    i.    History

Barbara A. Bandurski and Walter S. Bandurski had been divorced for many years

prior to their deaths in August 1998, Barbara dying on August 7, 1998 and Walter on

August 26, 1998.  During their lifetimes, Mr. and Mrs. Bandurski had been stockholders

in a family corporation, Walter S. Bandurski, Inc. ("WBI"), involved in the business of

waste hauling.  Barbara and Walter each owned 40 percent of the stock of WBI, the

remaining 20 percent being owned by their son, Michael Bandurski.

In July 1997, over a year before the decedents' dates of death, substantially all of

the assets of WBI were acquired by Waste Management, Inc. ("Waste Management"), a

publicly traded corporation, in a tax-free reorganization.  Under the Internal Revenue

Code ("I.R.C."), in order to qualify for a tax-free reorganization, WBI had to ensure that

substantially all of its assets were being transferred to Waste Management in exchange

for Waste Management stock.  As of July 31, 1997, the accountant and attorney for WBI

reviewed all of the operating assets to be exchanged for Waste Management stock, as

well as any remaining miscellaneous non-operating assets, such as accounts receivable and personal-use vehicles, to determine that the exchange would qualify as a tax-free disposition of assets under the Internal Revenue Code. The documents related to the tax-free organization, which were provided to the IRS in connection with this refund claim, demonstrated that in July 1997 neither WBI's attorney nor its accountant were aware of any potential legal claims, including the class action lawsuit that generated the settlement in 2000.

On June 30, 1998, in accordance with the reorganization plan, WBI filed a Certificate of Dissolution with the Delaware Secretary of State. WBI filed its final corporate income tax return for the year ended December 31, 1997 on September 14, 1998, after the decedents' dates of death. The return, prepared and filed by the WBI accountant and signed by Michael Bandurski based on all relevant facts reasonably known at that time, represented that the reorganization qualified as a tax-free reorganization because substantially all of WBI's assets had been exchanged for Waste Management stock, and the remaining miscellaneous assets, of relatively insignificant value, had been distributed to WBI stockholders in liquidation of WBI. Nothing in the corporate income tax return filed in September 1998 indicates that WBI had any known outstanding litigation claim, potential litigation claim, or any other assets at that time.

ii.    The Federal Estate Tax and IRS Examination

Following the decedents' deaths in August 1998, each estate timely paid estimated federal estate tax due and then filed federal estate tax returns in November, 1999. Those returns included the value of the Waste Management stock (subsequently

converted to stock in USA Waste, Inc. following a merger of those two publicly-traded corporations) as assets includible in the estate for federal estate tax purposes.

The IRS undertook to examine the federal estate tax returns, the Barbara Bandurski Estate being examined by Stephen Del Rossi, Esq., and the Walter Bandurski Estate by Mertie Mills, Esq., IRS attorneys assigned to the Wilmington, Delaware office.

On September 21, 2000, Mr. Del Rossi sent an "Opening Letter" to the attorney for the Barbara Estate requesting additional information and asking, as a routine question, whether any additional assets had been received by the estate subsequent to the filing of the Form 706.  On December 13, 2000, Mills sent a similar "Opening Letter" to the attorney for the Walter estate.  The Opening Letter typically requests additional information and documentation.

The first knowledge that either of the estates had concerning a class action claim of which WBI (and, through it, the decedents' estates) might be the beneficiary was in March, 2000 when an incentive payment in connection with a pending settlement was received by the Executrix of the Walter Estate.  It was subsequently learned that a settlement had been reached and that if WBI was in a position to provide sufficient documentation, a recovery in the approximate amount of $900,000.00 would be available to WBI.  The Executrix of the Walter Bandurski Estate, a former employee of WBI, had retained WBI records and the necessary documentation was provided.  In June 2000, the payment of approximately $900,000.00 was made.  Based on the decedent's ownership interests in WBI, $360,000.00 was credited to the Walter Bandurski Estate and the same amount was subsequently credited to the Barbara Bandurski Estate.  These after-acquired funds were reported to the IRS in response to the respective Opening Letters.  For federal

estate tax purposes, the IRS determined that these proceeds had a value equal to the full amount received by the estates less a discount for the time factor between the decedents' deaths (August 1998) and WBI's receipt of payment (June 2000) and that federal estate taxes should be assessed based on such value. The estates protested this assessment and filed claims for refund. The IRS denied the claim of the Barbara Estate and did not respond to the claim of the Walter Estate. Subsequently, the Plaintiff Estates filed the instant action seeking the refunds.

   iii. The Class Action

  Until its assets were acquired by Waste Management in July 1997, WBI was in the business of waste hauling, and the $900,000 settlement was from a claim related to that business. In May 1998, a lawsuit was initiated by Sylvester Jenifer against the Delaware Solid Waste Authority ("DSWA"). The Jenifer suit, which was never certified as a class action, purported to be on behalf of Mr. Jenifer and all others similarly situated. The lawsuit challenged Delaware Solid Waste Authority regulations (known as "flow control regulations") that required the disposal of certain solid wastes generated in the State of Delaware at facilities operated by DSWA and involved the payment of "tipping fees" to DSWA for such disposal. In oversimplified form, the plaintiff claimed that the regulation requiring disposal at DSWA facilities impaired his rights under the Commerce Clause and that he should have the freedom to dispose of waste at out of state facilities where a lower fee might be available. As a result, money damages were sought.

  There is no evidence that Barbara or Walter Bandurski ever knew of this lawsuit or of WBI's potential claim related to WBI's waste hauling operations before the July 31, 1997 reorganization, nor is there evidence that the estate representatives knew of the

lawsuit or potential claim as of the decedents' dates of death. In fact, there is evidence that the WBI accountant and lawyer were unaware of the unknown claim as of September 14, 1998, the date WBI filed its final corporate income tax return.

Discovery in the Jenifer suit quickly revealed that Jenifer had not been damaged because he had disposed only of "construction debris" not subject to the flow control regulations. (As a result, on October 2, 1998, over fifteen months after the tax-free reorganization and over two months after decedents' deaths, a second lawsuit entitled National Solid Wastes Management Association, et. al. v. Delaware Solid Waste Authority, C.A. No. 98-565 was filed setting forth claims comparable to those that had been asserted by Jenifer. Unbeknownst to the attorneys or personal representatives of the estates, the dissolved corporation, WBI, was listed as a named plaintiff in the lawsuit.

After an intense period of litigation between October 1998 and March 2000, DSWA agreed to settle the claim and in March 2000 sent a preliminary payment of $10,000 to the Walter Estate. This payment was the first notice to either estate of the pendency of the action or of any claim that might result in payment to the estates under the terms of the settlement.[2] The settlement conditioned payment to claimants in the class action, including but not limited to WBI, upon their production of adequate documentation of qualified solid waste disposal and payment of challenged tipping fees. Fortunately, the executrix of the Walter Estate was a former employee of WBI and had retained WBI documentation sufficient to permit WBI's recovery of approximately $900,000.00. The two Plaintiff Estates, as former stockholders of the dissolved corporation, each received approximately $360,000.00, in accordance with their

---

[2] The Barbara Bandurski Estate did not receive a fee and did not receive notice of any claim or potential claim until July 2000 when the Walter Bandurski estate attorney informed the Barbara Bandurski Estate attorney of WBI's receipt of the class action settlement proceeds.

percentages of former stock ownership. As noted above, this fact was disclosed to the IRS in the Estates' responses to its Opening Letters, even though the payments were not received until June and July 2000.

      B.     The Legal Standard for Valuation of an Asset for Estate Tax Purposes

Section 2033 of the Internal Revenue Code provides that the gross estate of a decedent shall include the value of all property to the extent of his interest therein at the time of death. Treasury Regulation Section 20.2031-1(b) defines the value of an asset includable in a decedent's gross estate as "its fair market value at the time of the decedent's death." Treas. Reg. §20.2013-1(b). Fair market value is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Treas. Reg. §20.2013-1(b). The date of decedent's death is the relevant time for determining not only what interests must be included in the gross estate, but also the value of such interests. Treas. Regs. 20.2033-1(a) and Sec. 20.2031-1(b).

The law is clear that the valuation of an asset for federal estate tax purposes cannot be based on post-death events. In addition to the plain language of the Internal Revenue Code and supporting regulations cited above, there is a long line of cases supporting Plaintiffs' position that an asset must be valued based upon the information that was available as of the dates of death, not taking into account subsequent events or knowledge.

In *Ithaca Trust Co. v. United States,* 279 U.S. 151 (1929), the United States Supreme Court held that for federal estate tax purposes "the value of the thing to be taxed must be estimated as of the time when the act is done [when death occurs or when a gift

8

is made[3]." *Id.* at 153. "Tempting as it is to correct uncertain probabilities by the [post-date-of-death] certain fact, we are of the opinion that it cannot be done." *Id.*

Recently, the United States Court of Appeals for the Fifth Circuit confirmed this standard when it criticized a decision by the majority of the Tax Court for its "inventive methodology" in appraising an asset by relying on post-gift events. *McCord v. Commis. of Internal Revenue, 461 F.3d 614, 626 (5th Cir. 2006).* According to the Fifth Circuit, the rule is "immutable" that "fair market value is determined, snapshotlike, on the date that the donor completes the gift (or the date of death . . . in the case of a testamentary transfer)." *Id.*

That events subsequent to date of death should not be considered in determining fair market value is reiterated by the United States Tax Court in the following two cases: In *Estate of Mary B. Bull,* T.C. Memo 2001-92 (April 13, 2001), Mary Bull's house was destroyed by fire during her life. The insurance company agreed to pay the restoration costs if and when restoration of the house was completed; however, Ms. Bull died before the restoration was completed. The issue before the Tax Court was whether her estate had to include as an asset the amount the insurance company ultimately paid when the restoration was completed after Ms. Bull's death. The court ruled that while the right to the money was known as of her death, the amount could not be included in her gross estate because Ms. Bull, having failed to complete the restoration, had no contractual right to those proceeds at her death. The fact that Ms. Bull's heirs later finished the restoration and collected under the contract terms of the fire insurance policy did not change the result. See also *Estate of Biagioni*, TC Memo 1981-660 (February 17, 1975)

---

[3] The same legal standard applies to valuation of an asset for federal estate tax purposes and for federal gift tax purposes.

where the Tax Court determined the date of death fair market value of a decedent's claim for flood damage to his property to be $105,000, rejecting the estate's valuation of $69,710.49, the amount finally received by the estate as its share of a class action settlement. "The issue is the value of the claim as of decedent's date of death, not at some future date, and it is well settled that such value is not controlled by the amount of the recovery or events occurring subsequent to the decedent's date of death." *Id.* at 3.

Similarly, in *Estate of McMorris v. Comm'r*, 243 F.3d 1254 (10th Cir. 2001) the Tenth Circuit Court of Appeals ruled that post-death events may not be considered in valuing a claim against an estate. Mrs. McMorris' estate took a deduction for income taxes resulting from the redemption of closely held stock in the year of her death. Though the taxes were owed in the year of her death they were not paid as of her death. After her death, the income tax owed was eliminated and refunded to her estate due to the post-death settlement of an audit of an earlier return. The IRS argued that her estate could not take a deduction for the income taxes owed on the date of death because it eventually turned out she did not owe those taxes. The Tenth Circuit reversed, saying it was a post-death event that caused her not to owe the income taxes, that post death events are not to be considered for estate tax purposes, and that her estate was entitled to take the deduction, despite the debt being later eliminated.

The valuation of a lawsuit is an even more difficult task because "a lawsuit is not the type of asset, either tangible or intangible, which readily fits within the categories of things regularly traded in commerce." *Estate of Davis v. Comm'r*, T.C. Memo. 1993-155 at 3 (April 8, 1993) at 3. In *Davis*, the Tax Court criticized the IRS for valuing an inchoate claim in an estate by simply assigning it the value of the judgment affirmed by

the Court of Appeals four years after decedent's death.  According to the Tax Court, an

"acceptable" valuation methodology would begin with the amount of the claim and then

discount for (1) the costs of litigation; (2) hazards of litigation, and (3) the time delay in

receiving the funds.

>    C.    Plaintiff Estates have Met Their Burden of Producing Prima Facie
>          Evidence that the Value of the Unknown Claim is Zero or Negligible and
>          the IRS Has Not and Cannot Meet its Burden of Proof to the Contrary.

During the pre-litigation refund claim process, the Barbara Bandurski Estate

submitted an appraisal from Fredric Etskovitz, C.P.A. demonstrating that the fair market

value of the unknown claim was zero.[4]  In connection with the trial of this case, the

Plaintiff Estates have identified two expert witnesses, Mr. Etskovitz and Michael Kelly,

Esq., who are prepared to offer opinions from the perspective of two different, but

related, disciplines that the value of the unknown claim was zero or negligible as of

decedents' deaths in August 1998.  Never during the examination or refund claim process

did the IRS seek an expert appraisal of the unknown claim at issue in this case. Moreover,

to this date the IRS had not identified any witness to testify as to the value of the

unknown litigation claim.[5]  Instead, it simply continues to contend, without expert

support, that the value of the unknown claim is the full amount of proceeds received by

each Estate more than two years after the decedents' dates of death less the relatively

small discount applied to the time period between the decedents' deaths and the date the

estates received the litigation settlement proceeds.  Section 7491(a)(1) I.R.C. provides

that if, in any court proceeding, the taxpayer introduces credible evidence with respect to

---

[4] Although literally addressing only the value to the Barbara Bandurski Estate, conceptually the analysis is equally applicable to the Walter Bandurski Estate.
[5] As detailed at page ___ *supra*, the only report submitted by the IRS was fourteen days late and never valued for the unknown claim.

a factual issue relevant to ascertaining the taxpayer's liability for a tax, the burden of proof with respect to such a factual issue will be placed on the IRS.  *See also Estate of Deputy v. Comm.,* 2003 Tax Ct. Memo LEXIS 174.  Because the IRS has not identified a single witness that is qualified to testify as to the value of the unknown claim,  the Plaintiffs submit that the IRS cannot meet its burden of proof that the value of the unknown claim is anything other than zero.

PRICKETT, JONES & ELLIOTT, P.A.

  /s/  Mason E. Turner, Jr.
BY:  MASON E. TURNER, JR., No. 661
1310 KING STREET
P.O. BOX 1328
WILMINGTON, DE  19899-1328
(302) 888-6508
ATTORNEY FOR PLAINTIFF
ESTATE OF WALTER S. BANDURSKI
E-Mail:  METurner@prickett.com

GOLLATZ, GRIFFIN & EWING, P.C.

  /s/  Sheriden T. Black
SHERIDEN TALLEY BLACK, ESQ.
DELAWARE BAR ID 4382
1700 WEST 14TH ST.
WILMINGTON, DE  19806-4012
ATTORNEY FOR PLAINTIFF
ESTATE OF BARBARA A. BANDURSKI
E-Mail:  sblack@ggelaw.com

Dated:  January 5, 2007.