IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ESTATE OF BARBARA A. BANDURSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 05-291 & 05-651 (GMS) |
| | ) | (Consolidated) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| ESTATE OF WALTER S. BANDURSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S TRIAL BRIEF**

Walter S. Bandurski and his former wife, Barbara A. Bandurski, each owned 40-percent of Walter S. Bandurski Inc. ("WBI"), a waste disposal company. On May 21, 1998, a class action lawsuit was filed against Delaware Solid Waste Authority ("DSWA") by Sylvester Jennifer t/a Vernon's Home Improvements, on behalf of itself and all others similarly situated.

Barbara A. Bandurski died August 7, 1998, and Walter S. Bandurski died shortly after on August 28, 1998. After Walter's death, a second class action lawsuit, with WBI named as one of the plaintiffs, was filed against DSWA. This was consolidated with the

previously filed class action. In 2000, WBI received $900,000 in settlement of its claim against DSWA. Because Walter and Barbara each owned 40 percent of WBI, 40 percent of $900,000 (*i.e.*, $360,000) was distributed to each of their estates. Neither estate tax return -- both of which were filed prior to the settlement -- include any value for the class action claim. When the returns for each estate were examined, the Internal Revenue Service determined, among other things, that the class action claim should have been included as an asset of each estate, and valued the claim at $318,773.00: $360,000.00 less a discount for time between the time of the decedents' deaths in August 1998 and the time the estates received the money. On July 15, 2002, the Internal Revenue Service made assessments against each estate for additional taxes based, in part, on the settlement proceeds each estate had received. Both estates paid the additional tax and filed claims for refund.

    Both estates claim that the decedents did not have an interest in the class action claim on the dates of their deaths, and that the value of the claim on the date of death was zero.

    Plaintiffs have made much of purported issues of fact which have no legal significance. Even assuming neither decedent had knowledge of the suit at the time of their death, their shares of the WBI claim should still have been included in their gross estates. See Estate of Baldwin v. C.I.R., 18 T.C.M. (CCH) 902 (1952) ("[a]n estate may possess many assets of which ... the deceased may be unaware [of at the time of death] ... [but] such property is [still] an asset of the estate [which has] value at the date of

death"); see also United States v. Simmons, 346 F.2d 213, 217 (5th Cir. 1965) (holding that the ignorance of the existence of an asset, which is discovered after the date of death, does not justify excluding the asset from the decedent's gross estate.)

The estates also contend that the contingent nature of the claim gave it negligible value as of the dates of death. Contingency, however, is not a valid reason for exclusion of an asset from the gross estate. See 26 U.S.C. §§ 2032, 2033; see also Estate of Curry v. Commissioner, 74 T.C. 540 (1980); United States v. Simmons, 346 F.2d 213 (5th Cir. 1965); Bank of California v. Commissioner, 133 F.2d 428 (9th Cir. 1943); Duffield v. United States, 136 F. Supp. 944 (E.D. Pa. 1955). These cases hold that an asset, such as an unsettled claim, is an asset of the estate and is included in the gross estate at its estimated fair market value on the date of death. Therefore, the estimated value of the WBI claim is included in the estates.

Even though WBI apparently was not a party to the class action at the time they died, Walter and Barbara still had a property interest in the litigation when they died and their respective gross estates should include that interest. See Rubenstein v. United States, 826 F. Supp. 448, 455 (S.D. Fla. 1993) ("[m]erely because the ... litigation was not commenced until ... after the decedent's death does not prevent the claim from inclusion into the gross estate.")

Estate of Houston v. Commissioner, 44 T.C.M. (CCH) 284 (1982) also held that, notwithstanding belated litigation, a claim is still included in the decedent's gross estate. In Houston, the decedent's husband died in a car accident in 1972; and the

decedent died two years later on March, 1974.  Id.  Several months **after** decedent's death, a suit was filed claiming the husband wrongfully died.  Under Michigan state law, the decedent was one of the parties who could recover from her husband's wrongful death, since she was a "surviving spouse".  Id.  The court held that the decedent's interest began accruing upon the husband's death, not when the claim for wrongful death was actually filed.  Id. ("[the surviving spouse's/decedent's] rights of action accrued at the time of her husband's death and continued in existence, through her estate, beyond her own death some 14 months later.")  Even though the wrongful death suit was filed after the decedent's date of death, the decedent's estate was still forced to recognize the estimated value of the wrongful death claim.

The post-death settlement amount of $360,000 is highly indicative of the claim's value on the date of Walter's death.  See Simmons, 345 F.2d at 218 (the amount [of settlement] is certainly **highly indicative** of the fact that the claim had a value at the time of [the decedent's] death.") (emphasis added).  The estates claim that the post-death settlement is irrelevant when determining the value of the WBI claim as of Walter's death.  This assertion, however, is based on an inapposite line of cases which hold that post-death events are not considered when computing the value of  deductible liabilities.  See, e.g., Propstra v. United States, 680 F.2d 1248 (9th Cir. 1982).

These cases are inapposite because they only apply to deductible liabilities charged against the estate, not to assets, such as a legal claim.  See Estate of Smith v. Commissioner, 198 F.3d 515, 525 (5th Cir. 1999) (holding that when the value a legal

- 4 -

claim is contingent as of the date of death, the "[c]ommissioner [is] ... capable of determining the value of [the] pending lawsuit" by considering post-death events); see also Estate of Curry, 74 T.C. at 551 (the contingency of "claims or assets" is not an excuse for not including the value of such assets in the gross estate, and post death events are relevant in determining the estimated value.)  Simply stated, the contingent nature of the WBI claim is not a valid excuse for excluding value of the asset, and post-death events (specifically the $360,000 settlement) is highly indicative of the claim's value on the date of death.

Plaintiffs allege that 26 U.S.C. § 7491 places the burden of proof on the government.  This provision, added to the Internal Revenue Code by the IRS Restructuring and Reform Act of 1998 (Pub. L. 105-206), does not apply to a refund suit brought against the United States.  Section 7491 provides,

> If, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue.

26 U.S.C. § 7491 (a)(1).  "Secretary" is defined in the Internal Revenue Code as "the Secretary of the Treasury or his delegate."  26 U.S.C. § 7701(11)(B).  The United States is not the Secretary of the Treasury or his delegate.[1]

Even if the provision did apply, it does not undo established law with respect to refund suits.  Liability has been ascertained, and it has resulted in assessments.

---

[1] But the provision clearly would apply in the United States Tax Court, where the respondent is the Commissioner of Internal Revenue, a delegate of the Secretary of the Treasury.

Assessments are presumed to be correct, and, even if the taxpayer overcomes the presumption of correctness, she still is required to carry the ultimate burden of proof. Thomas v. United States, 56 Fed. Cl. 112, 116-17 (Fed. Cl. 2003).

DATED: January 5, 2007.

    Respectfully submitted,

    COLM F. CONNOLLY
    United States Attorney

    /s/ Gerald A. Role
    GERALD A. ROLE
    Trial Attorney, Tax Division
    U.S. Department of Justice
    P.O. Box 227
    Ben Franklin Station
    Washington, DC 20044
    (202) 307-0461
    e-mail:  gerald.a.role@usdoj.gov

    *Attorneys for Defendant*