Michael P. Kelly
Managing Partner, Wilmington Office
mkelly@mccarter.com

McCarter & English, LLP
Suite 1800
919 N. Market Street
P.O. Box 111
Wilmington, DE 19899
tel 302.984.6300
fax 302.984.6399
www.mccarter.com



# McCARTER
# ENGLISH
ATTORNEYS AT LAW

November 7, 2006

Mason E. Turner, Esq.
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899-1328

  *In re:*  *Barbara & Walter Bandurski Estates v. USA*
      <u>*CA. No. 05-291 & 05-651-GMS (Consolidated)*</u>

Dear Mr. Turner:

You have asked me to offer an opinion as to the fair market value of inchoate legal claims purportedly possessed by the decedents, Barbara A. Bandurski and Walter S. Bandurski, as of the dates of their respective deaths. As you will note in my attached resume, I am presently the Managing Partner of the Delaware Office of McCarter and English LLP. I also serve on the Executive Committee of that firm. I have been litigating environmental matters since 1988, when I began serving as Chief Environmental Attorney for Hercules Incorporated. I have litigated environmental cases in private practice since 1991. Presently, I serve as Outside General Counsel for Stauffer Management Company LLC, which oversees numerous environmental liabilities of old Stauffer Chemical Company. As Outside General Counsel for that company I provide to management settlement values for all Stauffer Management Company claims. I presently handle over 60 environmental litigation matters in numerous jurisdictions, and I am first chair trial attorney in several major environmental cases.

I have reviewed documents and pleadings, both in the present consolidated cases *(Bandurski v. US,* C.A. Nos. 05-291-GMS and 05-651-GMS) as well as in the underlying lawsuits, *Jenifer* v. *Delaware Solid Waste Authority,* C.A. No. 98-270-MMS and *National Solid Waste Management Association, et. al.* v. *Delaware Solid Waste Authority,* C.A. No. 98-565MMS.

The issue in the present litigation is the fair market value of an asset includable in the decedents' estates for federal estate tax purposes. The asset at issue is the decedents' share, as former stockholders, of a corporation's share of a class action lawsuit where the corporation was dissolved long before the decedents' deaths and the decedents and their estates had no knowledge of the existence of the litigation claim as of the dates of death.

My understanding of the law is that the asset must be valued based upon the information that was available as of the dates of death, not taking into account subsequent events. *Ithaca Trust Co.* v. *United States,* 279 U.S. 151 at 153 (1929).

| HARTFORD | STAMFORD | NEW YORK CITY | NEWARK | PHILADELPHIA | WILMINGTON | BALTIMORE |
|---|---|---|---|---|---|---|
| 860.275.6700 | 203.324.1800 | 212.609.6800 | 973.622.4444 | 215.979.3800 | 302.984.6300 | 410.659.8500 |

ME1\5947656.1

EXHIBIT A

Mason E. Turner, Esq.
Page 2
November 7, 2006



Barbara and Walter Bandurski had been divorced for many years prior to their deaths in August, 1998, Barbara dying on August 7, 1998 and Walter on August 26, 1998. During their lifetimes, Mr. and Mrs. Bandurski had been stockholders in a family corporation, Walter S. Bandurski, Inc. ("WBI"), that was involved in the business of waste hauling. Barbara and Walter each owned 40% of the stock of WBI, the remaining 20% being owned by their son, Michael Bandurski.

In July, 1997, over a year before the decedents' dates of death, substantially all of the assets of WBI were acquired by Waste Management, Inc. ("Waste Management"), a publicly traded corporation, in a tax free reorganization. Under the Internal Revenue Code, in order to qualify for a tax free reorganization, WBI had to ensure that substantially all of its assets were being transferred to Waste Management in exchange for Waste Management stock. As of July 31, 1997, the accountant and attorney for WBI reviewed all of the operating assets to be exchanged for Waste Management stock, as well as any remaining miscellaneous non-operating assets, such as accounts receivable and personal use vehicles, to determine that the exchange would qualify as tax free under the Internal Revenue Code. The documents related to the tax free reorganization, which have been provided to the Internal Revenue Service, demonstrate that in July, 1997 neither WBI's attorney nor its accountant was aware of any potential legal claims, including the class action lawsuit that generated the ultimate settlement in 2000.

In August, 1997, in accordance with the plan of reorganization and IRS regulations, WBI distributed all of its assets, including the Waste Management stock and the very small amount of miscellaneous assets not sold to Waste Management to its stockholders and shut down its business. Those assets were reported on the company's internal records and reports to stockholders and no claim relating to the DSWA matter was shown among those assets.

On June 30, 1998, in accordance with the reorganization plan, WBI filed a certificate of dissolution with the Delaware Secretary of State and was formally dissolved. WBI filed its final corporate income tax return for the year ended December 31, 1997 on September 14, 1998, after the decedents' dates of death. The return, prepared and filed by the WBI accountant based on all relevant facts reasonably known at that time, represented that the reorganization qualified as a tax free reorganization because substantially all of WBI's assets had been exchanged for Waste Management stock and the Waste Management stock and all the remaining miscellaneous assets, of relatively insignificant value, had been distributed to WBI stockholders in liquidation of the company. Nothing in the corporate income tax return filed in September, 1998 indicates that there was any known outstanding litigation claim or potential litigation claim at that time.

Following the decedents' deaths in August 1998, each estate timely paid estimated federal estate tax due and then filed federal estate tax returns in November, 1999. Those returns included the value of the Waste Management stock (subsequently converted to stock in USA Waste, Inc. following a merger of those two publicly-traded corporations) as assets includable in the estate for federal estate tax purposes. The Internal Revenue Service ("IRS") undertook to examine the federal estate tax returns, the Barbara Estate being examined by Stephen Del Rossi, Esq. and the Walter Estate by Mertie Mills, Esq., IRS attorneys assigned to the Wilmington, Delaware office.



On September 21, 2000, Del Rossi sent an "Opening Letter" to the attorney for the Barbara Estate requesting additional information and asking, as a routine question, whether any additional assets had been received by the estate subsequent to the filing of the Form 706. On December 13, 2000, Mills sent a similar "Opening Letter" to the attorney for the Walter estate. The Opening Letter typically requests additional information and documentation.

The first knowledge that either of the estates had concerning a possible class action claim of which WBI (and through it the decedents' estates) might be the beneficiary was in late January or early February, 2000 when Michael Bandurski contacted Sue Brooks to ask her if she could assemble records and deliver them to David Staats. She first understood that it might relate to a legal claim and involve payment to the estates was when Michael sent her a $10,000.00 incentive payment in connection with a pending settlement. It was subsequently learned that a settlement had been reached and that if WBI was in a position to provide sufficient documentation, a recovery in the approximate amount of $900,000.00 would be available to WBI. The Executrix of the Walter Estate had retained WBI records and the necessary documentation was provided and in June, 2000 the payment of approximately $900,000.00 was made. Based on the decedent's ownership interests in WBI, $360,000.00 was credited to the Walter Estate and the same amount was subsequently credited to the Barbara Estate. These after-acquired funds were reported to the IRS in response to the respective Opening Letters. For federal estate tax purposes, the IRS determined that these proceeds had a value equal to the full amount received by the estates less a discount for the time factor between the decedents' deaths (August, 1998) and WBI's receipt of payment (June, 2000) and that federal estate taxes should be assessed based on such value. The estates protested this assessment and filed claims for refund. The IRS denied the claim of the Barbara Estate and did not respond to the claim of the Walter Estate.

Until its assets were acquired by Waste Management in July 1997, WBI was in the business of waste hauling, and the $900,000 settlement was from a claim related to that business. In May, 1998 a lawsuit was initiated by Sylvester Jenifer against the Delaware Solid Waste Authority ("DSWA"). The Jenifer suit, which was never certified as a class action, purported to be on behalf of Mr. Jenifer and all others similarly situated. The lawsuit challenged Delaware Solid Waste Authority regulations (known as "flow control regulations") that required the disposal of certain solid wastes generated in the State of Delaware at facilities operated by DSWA and involved the payment of "tipping fees" to DSWA for such disposal. In oversimplified form, the plaintiff claimed that the regulation requiring disposal at DSWA facilities impaired his rights under the Commerce Clause and that he should have the freedom to dispose of waste at out of state facilities where a lower fee might be available. As a result, money damages were sought.

There is no evidence that Barbara or Walter Bandurski ever knew of this lawsuit or of WBI's potential claim related to WBI's waste hauling operations before the July 31, 1997 reorganization.

Discovery in the Jenifer suit quickly revealed that Jenifer had not been damaged because he had disposed only of "construction debris" not subject to the flow control regulations. As a result, on October 2, 1998, over fifteen months after the tax-free reorganization and over two months after

Mason E. Turner, Esq.
Page 4
November 7, 2006



decedents' deaths, a second lawsuit entitled *National Solid Wastes Management Association, et. at.* v. *Delaware Solid Waste Authority,* C.A. No. 98-565 was filed setting forth claims comparable to those that had been asserted by Jenifer. Unbeknownst to the attorneys or personal representatives of the estates, the dissolved corporation, WBI, was listed as a named plaintiff in the lawsuit.

After what appears to have been an intense period of litigation between October, 1998 and March, 2000, DSWA agreed to settle the claim and in March, 2000 sent a preliminary payment of $10,000.00 to Michael who sent it on to the executrix of the Walter Estate. This payment was the first notice to either estate of the pendency of the action or of any claim that might result in payment to the estates under the terms of the settlement. The settlement conditioned payment to claimants upon their production of adequate documentation of qualified solid waste disposal and payment of challenged tipping fees. Fortunately, the personal representative of the Walter Estate was a former employee of WBI and had retained WBI documentation sufficient to permit WBI's recovery of approximately $900,000.00. The former stockholders of the dissolved corporation -- the two plaintiff estates each received approximately $360,000.00, in accordance with their percentages of former stock ownership. As noted above, this fact was disclosed to the IRS in the estates' responses to its Opening Letters, even though the payments were not received until June and July 2000.

Based upon my training and experience in evaluating environmental claims and advising clients as to their merits and value and based on my review of the materials in this action and in the underlying lawsuits which are the subject matter of this valuation claim, it is my opinion, to a reasonable legal certainty, that the value to Barbara and Walter Bandurski of the inchoate legal claims of which they had no knowledge as of their dates of death in August, 1998, was *de minimis*. There is no basis upon which a willing buyer would have paid any significant value for those claims in August 1998. I base this conclusion on the following factors, *inter alia:*

    1. As of the dates of death in August, 1998, there was no legal claim pending on behalf of WBI, Barbara Bandurski, Walter Bandurski or their estates.

    2. As of the dates of death, the only pending legal action was the *Jenifer* action, which was essentially worthless as of the dates of death because it was undisputed that *Jenifer* had not been damaged by the DSWA flow control regulations that were being challenged.

    3. As of the dates of death, the tax free reorganization of WBI was, for all intents and purposes, complete. The tax free character of the reorganization was not challenged by the IRS. This is strong evidence that no one as of the time of the decedents' deaths believed there was any asset of material value that remained in the possession of WBI.

    4. As of August, 1998, there was no legal proceeding in existence claiming damages on behalf of WBI. Moreover, it is apparent from reviewing the docket in the underlying cases that the significant legal activity in those cases that led to the settlement did not occur until

Mason E. Turner, Esq.
Page 5
November 7, 2006



1999 and thereafter. WBI did not join the class action until October 1998 and this was done by Michael Bandurski without the knowledge of either estate.

5. My review of the underlying litigation documents reveals that DSWA's liability for the flow control regulations was very much disputed, would have been hotly contested at trial and any decision adverse to DSWA might well have been challenged on appeal.

6. There was a serious dispute as to whether any of the plaintiffs named in the second lawsuit *(National Solid Waste Management Association, et. al. v. Delaware Solid Waste Authority et. al.,* C.A. No. 98-565-MMS) had suffered actual damage as a result of the challenged regulations. I have reviewed economic analyses submitted in that litigation on behalf of DSWA and while my understanding is that plaintiffs would have attempted to refute the reasoning of those experts, it is clear that damages would also have been hotly contested at trial. In effect, the plaintiffs in the underlying litigation were claiming but for the challenged regulations, they could have disposed of their waste at out-of-state facilities for lower fees than those charged by DSWA and were trying to claim damages based upon the mathematical difference between the DSWA rate and a hypothecated out-of-state fee, but DSWA was prepared to prove that such a simplistic analysis did not constitute actual damages because it failed to take into account a variety of other factors, including fuel costs, seasonal variations, the ability of out-of-state facilities to accommodate the plaintiffs and variable out-of-state fees. The end result, according to the DSWA experts, was that no significant actual damage could be shown to have been caused by the enforcement of the challenged regulations.

7. As of the dates of death, there was no way to know what documentation would be required to substantiate a claim against DSWA even if there had been a pending legal action on behalf of WBI, and hence there was no way as of August, 1998, to predict that WBI or its former shareholders would be entitled to any recovery. My understanding is that in connection with the ultimate settlement of the underlying litigation, some claimants were ultimately denied recovery because of inability to produce required documentation. The availability of documentation to enable WBI (and through it the Bandurski Estates) to substantiate a recovery in the litigation was not established until long after the decedents' dates of death.

In summary, my opinion is that the value of the inchoate legal claims to the Bandurskis as of their dates of death was, at most, *de minimis*.

Please do not hesitate to contact me if you have any questions concerning this report.

Very truly yours,

Michael P. Kelly

919 Market Street, Suite 1800  Phone: 302-984-6301
P. O. Box 111  Fax: 302-984-6399
Wilmington, DE 19899  E-Mail: MKelly@mccarter.com

# Michael P. Kelly

EDUCATION:

    Law School:   THE DICKINSON SCHOOL OF LAW, Carlisle, PA
                              J.D., 1983
                              G.P.A. 81.01
                              Activities:     Elected President of the Student Body
                                                  Corpus Juris Society
                                                  Social Committee
                                                  Dickinson College Boxing Team

    College:       COLUMBIA COLLEGE, New York, NY
                              B.A. English, 1979 G.P.A.—3.37
                              Activities:     Varsity Football – 3 years
                                                  Varsity Track – 4 years (Captain – Senior Year)
                                                  Writer for School Daily Newspaper
                              Honors:       Dean's List Every Year
                                                  Gustave Jaeger Prize for Athletics
                                                  Selected as speaker at Columbia Sports Banquet
                                                  One of two students appointed to Trustee Committee

EMPLOYMENT:

    June 1, 2000-Present     MCCARTER & ENGLISH, Managing Partner of
                                          Wilmington Office; Member of Firm's Executive
                                            Committee Specializes in complex, environmental ,corporate,
                                            and commercial litigation. Active trial practice
                                            throughout the U.S.—national counsel for numerous corporate
                                            clients. Presently Outside General Counsel for Stauffer
                                            Management Company LLC.
    April, 1999 –
    June, 2000                 MICHAEL P. KELLY, P.A., Wilmington, DE
                                            Trial attorney, litigation in all Delaware Courts. Specialized in
                                            complex litigation, personal injury and environmental litigation.
                                            Extensive practice in corporate and commercial litigation, as well
                                            as criminal law and bankruptcy.
    May, 1992 –
    April, 1999                HAASE & KELLY, Partner, Wilmington, DE
                                            Trial attorney. Handled litigation in all Delaware Courts, and
                                            specialized in person injury and environmental litigation. Tried
                                            cases in numerous jurisdictions throughout the country. Also
                                            handled commercial transactions.
    January 1, 1991 –
    May, 1992                 MICHAEL P. KELLY, P.A., Wilmington, DE
                                            Trial attorney. General practice.

| | |
|---|---|
| March, 1987 – December 31, 1990 | **HERCULES INCORPORATED, Wilmington, DE** Employed as Counsel and Chief Environmental Counsel. Personally handled environmental litigation involving the Company: Superfund, RCRA, Clean Water Act, etc. Also represented the Company in custom/duty litigation and in litigation filed locally, and handled broad variety of commercial transaction as well. In 1990 received Hercules-Aqualon Triangle Achievement Award. |
| 1983-1987 | **PRICKETT, JONES, ELLIOTT, KRISTOL & SCHNEE** Employed as trial attorney. Appeared in all Delaware Courts, Jury trials in Delaware Superior and U.S. District Courts. Argued six cases before the Delaware Supreme Court before 30th birthday. |
| Summer '82 | **PUBLIC DEFENDER'S OFFICE, Wilmington, DE** Employed in Appellate Division. Researched legal issues in criminal matters on appeal to the Delaware Supreme Court and the U.S. Supreme Court. |
| January, 1980 – April, 1980 | **NEW CASTLE COUNTY SCHOOL DISTRICT AREA II** Served as a substitute teacher for high schools 5 days/wk. |
| **OTHER POSITIONS:** | Chairman, New Castle County Zoning Board of Adjustment 1989 – 1995 |
| | Member of Board of Managers, Central Branch YMCA 1990 - 1992 |
| | Treasurer, Delaware State Bar Association 1992 - 1994 |
| | Adjunct Professor of Law, Widener University School of Paralegal Studies. |
| | Admitted to Bars of Delaware, Pennsylvania, U.S. District of Delaware, and U.S. Third Circuit. |
| | Board of Directors, Delaware Council on Crime and Justice |
| | Delaware Volunteer Legal Services. |
| | Executive Committee, St. Thomas More Society |
| | Lector – St. Ann's Church |
| | Member – Wilmington Rotary Club |
| | Board of Trustees, Tower Hill School |
| | Defense Counsel of Delaware, Founding Member |