Fredric Etskovitz, CPA
607 Fulton Street
Philadelphia, PA 19147

November 7, 2006

Sheriden T. Black, Esquire
Gollatz Griffin and Ewing
1700 West 14th Street
Wilmington, DE 19806

      Re:   Estates of Barbara A. Bandurski and Walter S. Bandurski

Dear Ms. Black:

This letter supplements my report submitted to Cheryl Siskin of the Bayard Firm, dated July 24, 2003. The original report provided my opinion on the Fair Market Value of a 40% interest in the common stock of Walter S. Bandurski Inc.(the Company), a Delaware corporation, at August 7, 1998 (Valuation Date).

**Background**

The 40% interest relates to the amount of stock in the Company owned by Barbara A. Bandurski. The Valuation Date is the date of death of Ms. Bandurski. My July 24, 2003 report valued the stock at less than one dollar.

Barbara Bandurski's former husband, Walter S. Bandurski, had also owned 40% of the stock of the Company. He died on August 26, 1998, a few weeks after Barbara Bandurski's death.

Although my July 24, 2003 report addressed only the Estate of Barbara A. Bandurski, the valuation issues of the two estates are virtually identical, as are the relevant facts. Underlying the preparation of the previous report was a settlement of $360,000 paid to the Estate of Barbara A. Bandurski, more than 18 months after the Valuation Date based on her 40% stock ownership in the former Company. The Estate of Walter S. Bandurski received the same settlement.

The purpose of this supplement is to address the value of the lawsuit to the Estates of Barbara A. Bandurski and Walter S. Bandurski as of the Valuation Dates.

**Case Background**

On October 21, 1998 National Solid Waste Management Association (NSWMA), et al. filed suit against Delaware Solid Waste Authority (C.A. No. 98-565). The claim was similar in nature to a claim that had been filed July 21, 1998, Sylvester Jenifer v. DSWA



EXHIBIT B

U.S. D. Del (C.A. No. 98-270). The Jenifer suit was dismissed because the plaintiff did not actually dispose of the type of waste that was the underlying basis for the case.

The NMSWA plaintiffs included the Association, two solid waste haulers and several former waste haulers. Included in the group of former waste haulers was the Company. However, neither the decedents nor the estates' representatives were aware that the Company had been included as a named plaintiff.

I reviewed expert reports prepared by Glassman-Oliver Economic Consultants, Inc. in 1999 for the DSWA attorneys. It is clear that these experts for the defense believed that the damages claimed in the lawsuit were excessive due to the plaintiffs' failure to account for added costs and related impacts to the marketplace. Accordingly, the defense was prepared to vigorously defend its position on the matter in question with the expectation of winning its case.

The first time either estate became aware of this lawsuit was in March 2000, when DSWA sent a preliminary incentive payment of $10,000 to the Walter S. Bandurski estate. Later, the Estate of Walter S. Bandurski learned that the DSWA had settled the case and that if documentation could be provided to prove that the Company had disposed of the specific type of waste and incurred tipping fees, the Company would receive a settlement of $900,000. Fortunately, the Walter S. Bandurski estate representative was a former employee of the Company and had retained Company documents which were sufficient to provide the required proof. Accordingly, the full settlement totaling $900,000 was paid to the former shareholders of the Company. The estates of both Walter S. and Barbara A. Bandurski each received 40% of the total, which was $360,000.

It is my understanding that DSWA did not settle the case based on its merits, but rather on an economic decision to avoid future significant legal fees and the continued uncertainty that the pendency of the lawsuit created.

**Case Valuation**

The lawsuit was filed October 21, 1998. The date of Ms. Banduski's death was August 7, 1998, two and a half months earlier. The date of death for Mr. Bandurski was August, 26, 1998, almost 2 months earlier. Neither estate representative knew that a case was going to be filed in the future, nor that the Company would be named as one of the plaintiffs.

Furthermore, based on the expert reports, there seemed to be substantial uncertainty as to the merits of the case. This case could have gone on to trial and been decided on behalf of the defense with the outcome being no award of damages.

An added risk to prevent the financial outcome was the requirement in March 2000 that the plaintiffs provide documentation that they actually transported the specified type of waste and that they incurred related tipping fees in Delaware. The Company had sold its

operations to Waste Management, Inc. in 1997. The Walter S. Bandurski, Inc. corporation was dissolved in June 1998, before the deaths of the Bandurskis. Not knowing that there was any lawsuit or possibility of a lawsuit, it is possible that all required documentation had been discarded or could not be located. It is my understanding that there were some plaintiffs that had the opportunity to share in the settlement, but did not, due to their inability to produce the required documentation.

I realize that lack of knowledge in itself is not a reason for excluding an item from being included and valued in a decedent's estate. However, the facts that the lawsuit was non-existent on the Valuation Dates and neither estate was connected with those who subsequently filed the lawsuit, makes it extremely unlikely, if not impossible under any circumstances, for anyone to know about the case. To the best of my knowledge, there are no requirements in the Internal Revenue Code that state that one should be able to predict events that will occur in the future and pay a related estate tax.

Pursuant to IRS regulation, the value of an asset includable in a person's gross estate is its fair market value at the time of the decedent's death. Fair market value is defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." I.R.C. Reg. section 20.2013-1(b). In the situation described above, it is my opinion that no willing buyer would have paid any amount for an unknown claim given the information that was available on the Valuation Dates.

Accordingly, it is my considered opinion that the value of the lawsuit as of the Valuation Date is **$0**.

Respectfully submitted,

Fredric Etskovitz, CPA

**Fredric Etskovitz**
**Certified Public Accountant**
**607 Fulton Street**
**Philadelphia, PA 19147**

**Employment Experience:**

June, 2000
to current

Astea International Inc.

Chief financial officer and Treasurer of publicly traded (NASDAQ) software company

- Responsible for compliance with Securities and Exchange Commission requirements
- File annual and quarterly financial statements
- Primary liaison with independent accountants
- Report to chief executive officer and Audit Committee
- Manage accounting and financial operations of worldwide organization
- Primary responsibility for shareholder relations
- Assist with reorganization of company to reduce excess operating costs and increase operating efficiency in order to become profitable
- Numerous presentations to outside investors

January 1, 1995
to October, 2005

Shechtman, Marks, Devor & Etskovitz, P.C., Philadelphia, PA

Shareholder in firm of certified public accountants

- Compilation, review and audit of financial statements
- Consulting to public companies on compliance with Sarbanes-Oxley requirements
- Personal financial planning
- Tax planning for businesses and individuals
- Preparation of federal, state and local income tax returns
- Long and short-term planning for privately owned businesses
- Valuations of closely held businesses for buy/sell agreements, estate planning and minority interests
- Financial analysis of proposed business transactions, including start-ups, acquisitions, sales, asset purchases and financing alternatives
- Litigation support to attorneys for assistance in civil and commercial lawsuits involving valuations of losses, analysis of transactions, forensic accounting and other matters requiring knowledge of accounting and financial issues.

1987 to 1994

Heller, Etskovitz & Casterline, P.C., Norristown, Pa

Partner in firm of certified public accountants and management consultants

- Compilation, review and audit of financial statements
- Personal financial planning
- Tax planning for businesses and individuals
- Provide assistance to attorneys in support of litigation
- Preparation of federal, state and local income tax returns

|            |                                                                                                                                                       |
|------------|-------------------------------------------------------------------------------------------------------------------------------------------------------|
|            | - Long and short-term planning for privately owned businesses<br>- Financial analysis of proposed business transactions, including start-ups, acquisitions, sales, asset purchases and financing alternatives |
| 1980 to 1986 | <u>E.I. DuPont de Nemours & Company, Inc.</u>, Wilmington, DE                                                                                       |

Supervisor, Corporate Accounting, Finance Department

- Responsible for preparation of company's monthly, quarterly and annual consolidated financial statements

- Managed staff of accountants

1980 to 1986   <u>E.I. DuPont de Nemours & Company, Inc.</u>, Wilmington, DE (continued)

Financial Analyst, Planning Studies

- Developed corporate guidelines for analysis of investment opportunities
- Performed various analyses on potential acquisitions, divestitures and corporate restructurings

Financial Analyst, Financial Projections

- Prepared short and long term projections of corporate earnings and cash flow used in strategic planning
- Recommended dividend policy to company's Board of Directors

Financial Analyst, Employee Benefits & Compensation

- Analyzed and negotiated medical and insurance contracts with various providers throughout U.S.

1976-1978   <u>Laventhol & Horwath</u>, Philadelphia, PA

Senior accountant

- Responsible for assisting in audits of publicly traded and privately owned businesses
- Prepared federal, state, and local income tax returns

**Education:**

<u>Wharton Graduate School</u>, University of Pennsylvania, Philadelphia, PA
Masters in Business Administration - 1980
Concentration in Finance and Insurance
Instructor of accounting in Wharton Undergraduate School

<u>Pennsylvania State University</u>, State College, PA
Bachelor of Science Degree - 1976
Major - Accounting

**Professional Societies:**

    American Institute of Certified Public Accountants
    Personal Financial Planning Division, AICPA
    Pennsylvania Institute of Certified Public Accountants

**Volunteer Organizations:**

    <u>American Israel Chamber of Commerce</u>, Philadelphia, PA
    - Treasurer and member of Executive Committee

    <u>American Technion Society</u>, Bala Cynwyd, PA
    - Board of Director member