*Via Hand Delivery*

The Hon. Mary Pat Thynge
United States Magistrate
844 King St.
Lockbox 31
Wilmington, DE 19801

    *In re:*    *Barbara Bandurski Estate v. U.S., C.A. No. 05-291-GMS*
                *Walter Bandurski Estate v. U.S., C. A. No. 05-651-GMS*
                <u>*Consolidated*</u>

Dear Magistrate Thynge:

    This is the Mediation Statement on behalf of the plaintiffs, the estate of Barbara A. Bandurski (the "Barbara Estate") and the estate of Walter S. Bandurski (the "Walter Estate"). Separate civil actions were initiated by the two estates seeking refund of federal estate taxes paid which the plaintiffs contend were improperly assessed. For purposes of the mediation, the legal positions of the two estates are identical and the facts as they pertain to the two estates are virtually identical.

    Mediation is scheduled to be held before your Honor on Thursday, September 14, 2006 beginning at 10:00 a.m. In addition to the undersigned counsel, it is expected that Beverly J. Wik, Esq. (the attorney for the Barbara Estate in connection with probate and tax proceedings) and Cheryl A. Murphy (Executrix of the Barbara Estate) will be in attendance on behalf of the Barbara Estate and that James DallePazze, Esq. (the attorney for the Walter Estate in connection with probate and tax proceedings) and Susanna Brooks (Executrix of the Walter Estate) will be in attendance on behalf of the Walter Estate.

    The dispute between the plaintiff estates and the government (the Internal Revenue Service) is over the value of an asset includable in the plaintiffs' estates for federal estate tax purposes. The asset at issue is the decedents' share, as former stockholders, of a corporation's share of a class action lawsuit settlement where the corporation was dissolved long before the



EXHIBIT C

The Hon. Mary Pat Thynge            -2-            August 23, 2006

decedents' deaths and the decedents and estates had no knowledge of the existence of the litigation claim as of the dates of death. It is the position of the estates that that asset must be valued based upon the information that was available as of the dates of death, not taking into account subsequent events or knowledge. *Ithaca Trust Co. v. United States*, 279 U.S. 151 at 153 (1929).

### Background

Barbara and Walter Bandurski had been divorced for many years prior to their deaths in August, 1998, Barbara dying on August 7, 1998 and Walter on August 26, 1998. During their lifetimes, Mr. and Mrs. Bandurski had been stockholders in a family corporation, Walter S. Bandurski, Inc. ("WBI"), that was involved in the business of waste hauling. Barbara and Walter each owned 40 percent of the stock of WBI, the remaining 20 percent being owned by their son, Michael Bandurski.

In July 1997, over a year before the decedents' dates of death, substantially all of the assets of WBI were acquired by Waste Management, Inc. ("Waste Management"), a publicly traded corporation, in a tax-free reorganization. Under the Internal Revenue Code ("I.R.C."), in order to qualify for a tax-free reorganization, WBI had to ensure that substantially off of its assets were being transferred to Waste Management in exchange for Waste Management stock. As of July 31, 1997, the accountant and attorney for WBI reviewed all of the operating assets to be exchanged for Waste Management stock, as well as any remaining miscellaneous non-operating assets, such as accounts receivable and personal-use vehicles, to determine that the exchange would qualify as tax-free under the I.R.C. The documents related to the tax-free organization, which have been provided to the IRS in connection with this refund claim,

The Hon. Mary Pat Thynge                    -3-                       August 23, 2006

demonstrate that in July 1997 neither WBI's attorney nor its accountant were aware of any potential legal claims, including the class action lawsuit that generated the ultimate settlement in 2000.

On June 30, 1998, in accordance with the reorganization plan, WBI filed a Certificate of Dissolution with the Delaware Secretary of State. WBI filed its final corporate income tax return for the year ended December 31, 1997 on September 14, 1998, after the decedents' dates of death. The return, prepared and filed by the WBI accountant based on all relevant facts reasonably known at that time, represented that the reorganization qualified as a tax-free reorganization because substantially all of WBI's assets had been exchanged for Waste Management stock, and the remaining miscellaneous assets, of relatively insignificant value, had been distributed to WBI stockholders in liquidation of the company. Nothing in the corporate income tax return filed in September 1998 indicates that there was any known outstanding litigation claim or potential litigation claim at that time.

<u>The Federal Estate Tax and IRS Examination</u>

Following the decedents' deaths in August 1998, each estate timely paid estimated federal estate tax due and then filed federal estate tax returns in November, 1999. Those returns included the value of the Waste Management stock (subsequently converted to stock in USA Waste, Inc. following a merger of those two publicly-traded corporations) as assets includible in the estate for federal estate tax purposes.

The Internal Revenue Service ("IRS") undertook to examine the federal estate tax returns, the Barbara Estate being examined by Stephen Del Rossi, Esq. and the Walter Estate by Mertie Mills, Esq., IRS attorneys assigned to the Wilmington, Delaware office.

The Hon. Mary Pat Thynge           -4-           August 23, 2006

On September 21, 2000, Del Rossi sent an "Opening Letter" to the attorney for the Barbara Estate requesting additional information and asking, as a routine question, whether any additional assets had been received by the estate subsequent to the filing of the Form 706. On December 13, 2000, Mills sent a similar "Opening Letter" to the attorney for the Walter estate. The Opening Letter typically requests additional information and documentation. (See Deposition of Mertie Mills, Esq. 8/7/06, attached as Exhibit A, p.13).

The first knowledge that either of the estates had concerning a class action claim of which WBI (and through it the decedents' estates) might be the beneficiary was in March, 2000 when an incentive payment in connection with a pending settlement was received by the Executrix of the Walter Estate. It was subsequently learned that a settlement had been reached and that if WBI was in a position to provide sufficient documentation, a recovery in the approximate amount of $900,000.00 would be available to WBI. The Executrix of the Walter Estate had retained WBI records and the necessary documentation was provided and in June, 2000 the payment of approximately $900,000.00 was made. Based on the decedent's ownership interests in WBI, $360,000.00 was credited to the Walter Estate and the same amount was subsequently credited to the Barbara Estate. These after-acquired funds were reported to the IRS in response to the respective opening letters. For federal estate tax purposes, the IRS determined that these proceeds had a value equal to the full amount received by the estates less a discount for the time factor between the decedents' deaths (August, 1998) and WBI's receipt of payment (June, 2000) and that federal estate taxes should be assessed based on such value. The estates protested this assessment and filed claims for refund. The IRS denied the claim of the Barbara Estate and did not respond to the claim of the Walter Estate.

The Hon. Mary Pat Thynge               -5-                              August 23, 2006

## The Class Action

Until its assets were acquired by Waste Management in July 1997, WBI was in the business of waste hauling, and the $900,000 settlement was from a claim related to that business. In May, 1998 a lawsuit was initiated by Sylvester Jenifer against the Delaware Solid Waste Authority ("DSWA"). The Jenifer suit, which was never certified as a class action, purported to be on behalf of Mr. Jenifer and all others similarly situated. The lawsuit challenged Delaware Solid Waste Authority regulations (known as "flow control regulations") that required the disposal of certain solid wastes generated in the State of Delaware at facilities operated by DSWA and involved the payment of "tipping fees" to DSWA for such disposal. In oversimplified form, the plaintiff claimed that the regulation requiring disposal at DSWA facilities impaired his rights under the Commerce Clause and that he should have the freedom to dispose of waste at out of state facilities where a lower fee might be available. As a result, money damages were sought.

There is no evidence that Barbara or Walter Bandurski ever knew of this lawsuit or of WBI's potential claim related to WBI's waste hauling operations before the July 31, 1997 reorganization.

Discovery in the Jenifer suit quickly revealed that Jenifer had not been damaged because he had disposed only of "construction debris" not subject to the flow control regulations. (See Answering Brief of DSWA in Opposition to Plaintiff's Motion to Consolidate, dated November 2, 1998, attached as Exhibit B.) As a result, on October 2, 1998, over fifteen months after the tax-free reorganization and over two months after decedents' deaths, a second lawsuit entitled National Solid Wastes Management Association, et. al. v. Delaware Solid Waste Authority, C.A.

The Hon. Mary Pat Thynge                -6-                        August 23, 2006

No. 98-565 was filed setting forth claims comparable to those that had been asserted by Jenifer. Unbeknownst to the attorneys or personal representatives of the estates, the dissolved corporation, WBI, was listed as a named plaintiff in the lawsuit.

After what appears to have been an intense period of litigation between October, 1998 and March, 2000, DSWA agreed to settle the claim and in March, 2000 sent a preliminary payment of $10,000.00 to the Walter Estate. This payment was the first notice to either estate of the pendency of the action or of any claim that might result in payment to the estates under the terms of the settlement.[1] The settlement conditioned payment to claimants upon their production of adequate documentation of qualified solid waste disposal and payment of challenged tipping fees. Fortunately, the personal representative of the Walter Estate was a former employee of WBI and had retained WBI documentation sufficient to permit WBI's recovery of approximately $900,000.00. The former stockholders of the dissolved corporation -- the two plaintiff estates – each received approximately $360,000.00, in accordance with their percentages of former stock ownership. As noted above, this fact was disclosed to the IRS in the estates' responses to its Opening Letters, even though the payments were not received until June and July 2000.

The value of an asset includable in a person's gross estate is "its fair market value at the time of the decedent's death." I.R.C. Reg. §20.2013-1(b). Fair market value is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." I.R.C. Reg. §20.2013-1(b). It has long been a principle of tax law that "the value of the thing to be taxed must be estimated as of the time when the act is done [when death occurs]."

The Hon. Mary Pat Thynge                -7-                    August 23, 2006

Ithaca Trust Co. v. United States, 279 U.S. 151 at 153 (1929). See also, Ballantine v. Tomlinson, 293 F.2d 311 (5th Cir. 1961); Estate of Bright v. United States, 619 F.2d 407 (5th Cir. 1981); Propstra v. United States, 680 F.2d 1248 (9th Cir. 1982); First National Bank of Kenosha v. United States, 763 F.2d 891 (7th Cir. 1985). The corollary of the rule established by Ithaca Trust is that post-death events cannot be utilized in determining the fair market value as of the date of death of an asset included in a decedent's taxable estate. In the words of Justice Holmes: "Tempting as it is to correct uncertain probabilities by the now certain fact, we are of the opinion that it cannot be done." Ithaca, 279 U.S. at 153.

Contrary to this well established law, the IRS in this case simply utilized the after-the-fact payment and declined to discount it for its obviously unknown and uncertain value as of the dates of death. (See generally Deposition of Mertie Mills attached as Exhibit A pp. 18-19, 34-36). (Note[2])

### The Refund Claim

Each estate timely filed a Claim for Refund (Form 843), having paid the amount of tax that Mills determined was due because of the subsequently received lawsuit proceeds, with only a time-value discount. The IRS denied the claim of the Barbara Estate and never responded to the claim of the Walter Estate. These actions were timely filed in this court pursuant to the

---

[1] The Barbara Estate did not receive a preliminary payment and did not receive notice of any claim or potential claim until July 2000 when the Walter estate attorney informed the Barbara Estate attorney of WBI's receipt of the class action settlement proceeds.

[2] The Barbara Estate was originally handled by Stephen Del Rossi, Esq. However, he subsequently retired and the responsibility for the examination of that estate fell to Ms. Mills who applied the same reasoning to both estates in determining the value of the litigation claim on which federal estate taxes would be assessed. It is worth noting that prior to his retirement, Del Rossi had expressed the view to the attorney for the Barbara Estate that for purposes of federal estate tax valuation, the Class Action claim "may or may not have had value as of the death of Barbara Bandurski in August 1998." See letter of Beverly Wik, Esq., to representatives of the Walter Bandurski estate, dated November 22, 2000, attached as Exhibit C.

The Hon. Mary Pat Thynge                -8-                        August 23, 2006

Internal Revenue Code §§6532(a)(1) and 7522(a). In connection with the claims for refund, the Barbara Estate submitted an appraisal from Rick Etskovitz, C.P.A., demonstrating that the fair market value of a former stockholder's share of an unknown litigation claim in a dissolved corporation as of the stockholder's date of death was negligible. (Appraisal dated 7/24/03 attached as Exhibit D). Although literally addressing only the value to the Barbara Estate, conceptually the analysis is equally applicable to the Walter Estate and the testimony of Mr. Etskovitz will be proffered at trial to establish that the fair market value as of decedents' dates of death of an interest in a dissolved company with a litigation claim was *de minimis* for both estates.

Never, during the examination or since the submission of an appraisal in connection with the refund claim, has the IRS submitted an appraisal or had such an appraisal performed. (See Mills' deposition, Exhibit A pp. 39-42). Likewise, the IRS has conducted no analysis of the underlying litigation as of the dates of death in August, 1998 (Mills deposition) to justify its determination that the date of death value of the decedents' interests is the full value of the payment, less a minor time-value discount. At trial, the plaintiffs will present testimony concerning the status of that litigation, primarily through the testimony of the attorney for DSWA, F. Michael Parkowski, Esq., which will establish, *inter alia*, the following facts:

(1) As of the dates of death in August 1998, there was no legal claim pending on behalf of WBI or the plaintiff estates;

(2) The Jenifer claim, the only claim pending as of the dates of death, was essentially worthless as of the dates of death because it was undisputed that Jenifer had not been damaged by the flow control regulations that were being challenged;

The Hon. Mary Pat Thynge -9- August 23, 2006

(3) Liability had been very much disputed throughout the litigation and would have been hotly contested at trial;

(4) DSWA was prepared to prove at trial that the named plaintiffs had sustained little to no damage as a result of the challenged regulations. In effect, the plaintiffs in the underlying litigation were claiming that but for the challenged regulations, they could have disposed of their waste at out-of-state facilities for lower fees than those charged by DSWA and were trying to claim damages based upon the mathematical difference between the DSWA and a hypothecated out-of-state fee, but DSWA was prepared to prove that such a simplistic analysis did not constitute actual damages because it failed to take into account a variety of factors including fuel costs, seasonal variations, the ability of the out-of-state facilities to accommodate the plaintiffs and variable out-of-state fees. The end result, according to the DSWA experts, was that no significant actual damage could be shown to have been caused by the enforcement of the challenged regulations;

(5) The DSWA's decision to settle was not based on the merit of plaintiffs' underlying claims but rather on the expense that would be associated with the litigation and the continued uncertainty that the pendency of the lawsuit created. Mr. Parkowski will testify that the lawsuit presented novel legal issues and that if the case had gone to trial, it was almost certain that appeals would have been taken ultimately to the United States Supreme Court.

In addition, the evidence of the plaintiffs herein will establish the following:

(1) As of their dates of death, neither decedent was aware of any pending legal claim of a company in which they previously held stock, nor were they aware of the possibility of such a claim;

The Hon. Mary Pat Thynge                    -10-                         August 23, 2006

    (2)    The personal representatives of the Walter Estate and the Barbara Estate were unaware of the pending lawsuits until approximately March 2000 and July 2000, respectively;

    (3)    As of the dates of death, there was no way to know what documentation would be required to substantiate a claim against the DSWA, even if there had been awareness of the pending legal actions, and hence there was no way to predict that WBI or its former stockholders would be entitled to any recovery. In that regard, there will be evidence that other claimants in the class action were ultimately denied recovery because of their inability to produce the required documentation. The availability of documentation to enable WBI to substantiate a recovery in the litigation was not established until long after the decedents' dates of death.

While the plaintiffs herein acknowledge that the estates received the decedents' shares, as former stockholders, of WBI's recovery, they maintain that under clearly established law no more than minimal value may be ascribed to the inchoate legal claims as of the dates of death. Clearly no willing buyer would pay more than a *de minimis* amount for such claim given the status of the underlying litigation at that time and the "reasonable knowledge of relevant facts" as of the dates of death.

Legal costs incurred by the Barbara Estate to date are approximately $110,380.00 while those incurred by the Walter Estate are approximately $27,000.00. The plaintiffs estimate that the costs through trial in the case, which is scheduled for February 5, 2007 would be approximately $30,000.00 to each estate.

The Hon. Mary Pat Thynge -11- August 23, 2006

Respectfully submitted,

*[signature]*

MASON E. TURNER, JR., No. 661
PRICKETT, JONES & ELLIOTT, P.A.
1310 KING STREET
P.O. BOX 1328
WILMINGTON, DE 19899-1328
(302) 888-6508
ATTORNEY FOR PLAINTIFF
ESTATE OF WALTER S. BANDURSKI
E-Mail: METurner@prickett.com

*[signature]*

SHERIDEN TALLEY BLACK, No. 4382
GOLLATZ, GRIFFIN & EWING, P.C.
1700 WEST 14TH ST.
WILMINGTON, DE 19806-4012
(302) 655-8181
ATTORNEY FOR PLAINTIFF
ESTATE OF BARBARA BANDURSKI
E-MAIL: SBLACK@GGELAW.COM

Enc.  Exhibit A: Deposition of Mertie Mills, Esq., 8/7/06
      Exhibit B: Answering Brief of DSWA in Opposition to Plaintiff's Motion to Consolidate, dated November 2, 1998
      Exhibit C: Letter of Beverly Wik, Esq. to Sue Brooks and Michael Bandurski, dated November 22, 2000.
      Exhibit D: Appraisal dated 7/24/03
      Exhibit E: *McCord v. Commissioner of Internal Revenue*, No. 03-6070 (8/22/06)

P.S. – Since preparing this Mediation Statement, I learned just this morning of a decision last week by the United States Court of Appeals for the Fifth Circuit in *McCord v. Commissioner of Internal Revenue*, No. 03-6070 (8/22/06) which reaffirms the legal principle upon which plaintiffs are relying in this case that valuation must be based on events as they existed at the date of death, as opposed to post-death events. Therefore, I am taking the liberty of including this advance sheet decision as Exhibit E to our submission.